**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

IN RE:                                          Case No.

ADAMS STREET LOFTS, LLC                         Chapter 11 Case

       Debtor.

_____/

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF ORDER (A) APPROVING COMPETITIVE BIDDING AND SALE PROCEDURES; (B) APPROVING FORM AND MANNER OF NOTICES; (C) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (D) SCHEDULING DATES TO CONDUCT AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE, INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) AUTHORIZING SALE OF SUBSTANTIALLY ALL THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (F) GRANTING RELATED RELIEF**

ADAMS STREET LOFTS, LLC (the "Debtor"), by and through undersigned counsel and pursuant to (i) sections 105, 363, 364 and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and (ii) Bankruptcy Rules 2002(A)(2), 6004, 6006 and 9014, file this *Emergency Motion For Entry Of Order (A) Approving Competitive Bidding And Sale Procedures; (B) Approving Form And Manner Of Notices; (C) Approving Form Of Asset Purchase Agreement; (D) Scheduling Dates To Conduct Auction And Hearing To Consider Final Approval Of Sale, Including Treatment Of Executory Contracts And Unexpired Leases; (E) Authorizing Sale Of Substantially All The Debtor's Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests; And (F) Granting Related Relief* (The "Bidding Procedures Motion").  In support of the Bidding Procedures Motion, the Debtor respectfully states as follows:

## CONCISE STATEMENT

Below is a summary[1] of the nature of the Debtor's request.

- Identity of the Purchaser.  Because the sale of the Acquired Assets[2] (the "Sale") is subject to an absolute auction, the identity of the purchaser is currently unknown.

- The Sale Terms.

    o The Sale Price:  Unknown at this time/Absolute Auction.

    o Closing Date: Not later than 20 days after the conclusion of the auction.

    o Closing Conditions:  The Sale Order becomes a Final Order.

- The Auction Terms.

    o Proposed Auction Date: Two Business Days prior to the Sale Approval Hearing.

    o Proposed Bid Deadline: One Business Day prior to the Auction.

    o Minimum Incremental Bid (after Initial Bid):  $10,000.00, subject to incremental bids being higher in the auctioneer's discretion.

- Requirements of Competing Bidders.

    o Minimum Deposit:  10% of the bidder's proposed purchase price.

    o Documentation Requirements:  Executed Marked Agreement in clean and redline, marked to show changes to the Agreement.

    o Other Qualifying Conditions: Evidence demonstrating appropriate corporate authority to consummate the transaction; proof of financial ability to perform in form and substance acceptable to the Debtor and Centennial Bank.

- Identity of all Known Lienholders.

    o Centennial Bank.

    o The Adams Street Lofts Condominium Association, Inc.

- Statement Requesting Dates for Hearings and Auction.  The Debtor is seeking expedited relief in connection with the bid procedures.  The Debtor proposes an Auction on

---

[1] To the extent that there is an inconsistency between the terms of this summary and any provision of the Bidding Procedures Order, the terms of Bidding Procedures shall control.

[2] Capitalized terms used in this Motion and not otherwise defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement.  A copy of the Asset Purchase Agreement is attached hereto as Exhibit A.

October 15, 2014 and a Sale Approval Hearing as soon as practical after the Auction.

## I.  JURISDICTION

1.      This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.  BACKGROUND

2.      On August 22, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4.      The Debtor is a Florida Limited Liability Company which was formed on December 1, 2005.  The Debtor's members are Steven Leoni and Jonathan Leoni.  The Debtor operates pursuant to an Operating Agreement dated October 3, 2006.  The Debtor is in the real estate business and developed and sells condominium units located at 420 North Adams Street, Tallahassee, Florida (the "Project").   The Project consists of 31 units of which, 17 units have not been sold and are owned by the Debtor, and these units are presently being rented.  The Debtor has a Licensing Agreement with Gemini Parking Deck for covered parking.  The Adams Street Lofts Condominium Association, Inc. (the "HOA") is paid certain dues and is liable for the payment of certain expenses associated with the Project.  Each unit, except for unit 103, is a 1 bedroom, 1 bath and den unit.  Unit 103 is a 3 bedroom, 3 bath unit.

5.      The Debtor seeks to sell (the "Sale") substantially all of the unsold units, which comprise substantially all of the Debtor's assets and as described in the proposed form of Asset Purchase Agreement attached hereto as **Exhibit "A"** and incorporated herein by reference (collectively, the "Acquired Assets").

### III.   RECENT MARKETING EFFORTS

6.      As part of this Chapter 11 case, the Debtor retained (subject to Court approval) Sperry Van Ness Auction Services, LLC ("SVN") as its auctioneer to assist the Debtor in identifying and soliciting a potential purchaser to acquire substantially all of the assets of the Debtor and to conduct a public auction.

7.      SVN plans to market the Project both nationally and locally through print, internet, social media, email and outdoor advertising, in order to reach the maximum number of potential bidders.

### IV.   SUMMARY OF RELIEF REQUESTED

8.      The Debtor requests a hearing (the "Bid Procedures Hearing") for the Court to consider entry of an order (the "Bidding Procedures Order")[3] (i) approving the bidding procedures substantially in the form of **Exhibit 1** to the Bidding Procedures Order (the "Bidding Procedures") for bidding on the Acquired Assets, (ii) approving the form and manner of notice of the Bidding Procedures, (iii) approving the form of the Agreement to be used in conjunction with the Bidding Procedures, and (iv) scheduling a Sale Approval Hearing to approve the Sale to the Prevailing Bidder (as defined in the Bidding Procedures).

9.      The Debtor intends to consummate the Sale as promptly as possible, consistent with (i) the due process requirements of sections 363 and 365 of the Bankruptcy Code, and (ii) the sale process under the Bidding Procedures.  By this Motion, the Debtor seeks approval and implementation of a three-step sales process, as follows:

(a)      a "Bid Procedures Hearing" at which the Debtor will seek approval of the

Bidding Procedures, as described below.  The Debtor requests that the Bid Procedures

---

[3] A copy of the Bidding Procedures Order is attached hereto as **Exhibit B**, and a copy of the Bidding Procedures is attached to the Bidding Procedures Order as **Exhibit 1**.

Hearing take place within a time frame that will permit entry of an Order approving the Bidding Procedures to be entered no later than August 29, 2014;

(b)      an "Auction" to be conducted in accordance with the Bidding Procedures, following a confirmatory due diligence period for other interested parties, assuming one or more "Qualified Bids" are timely received as provided in the Bidding Procedures. The Debtor proposes to conduct the Auction on October 15, 2014; and

(c)      a Sale Approval Hearing proposed to be held as soon as practical two days after the Auction, at which time the Debtor will seek entry of an order (i) authorizing the Sale, (ii) authorizing and approving the Agreement, (iii) approving procedures and rights related to assumption and assignment of certain executory contracts and unexpired leases and (iv) granting related relief (the "Sale Order").  The Debtor requests that the Sale Approval Hearing take place within a time frame that will permit entry of the Sale Order to be entered to allow Closing to occur no later than 20 days after the sale hearing.  A form of the Sale Order is attached hereto as **Exhibit C**.

10.      The proposed time frame will appropriately balance the Debtor's objectives to quickly conclude the Sale with the need to thoroughly market the Acquired Assets and properly negotiate a transaction under the circumstances.

## V.      **RELIEF REQUESTED**

### A.      **The Bidding Procedures**

11.      In order to ensure that the Debtor's estate is able to derive maximum value from the Acquired Assets, the Debtor seeks to adopt procedures that will foster continued competitive bidding among potential buyers.

12.      The Debtor has developed a list of parties who the Debtor believes may potentially be interested in, and who the Debtor reasonably believes would have the financial

resources to, consummate a competing transaction to that of the Proposed Purchaser (a "Competing Transaction") (each, individually, a "Contact Party", and collectively, the "Contact Parties").   The Debtor has contacted the Contact Parties to explore their interest in pursuing a Competing Transaction.   The Contact Parties include parties whom the Debtor or its advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a transaction.   The Debtor will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate, and will continue to advertise the Sale.

13.    The Debtor believes that the proposed Bidding Procedures constitute the best method of maximizing the value of the Acquired Assets through the continuation of a competitive sale process that will allow for the solicitation and submission of competitive bids (as set forth in the Bidding Procedures, a competitive bid submitted in accordance with these procedures shall be deemed a "Qualifying Bid" and such bidder shall constitute a "Qualified Bidder").[4]  Accordingly, the Debtor requests that the Court enter the Bidding Procedures Order authorizing the Debtor to implement the Bidding Procedures and schedule the Auction as more fully set forth in the Bidding Procedures.

14.    As discussed in more detail below, any Qualifying Bid must include a copy of the Agreement marked to show all changes requested by the bidder.  Thus, the Debtor requests that the Court approve, by entry of the Bidding Procedures Order, the form of Agreement.

15.    To be considered a Qualifying Bid, each bid submitted must comply with the following requirements (as set forth in more detail in the Bidding Procedures):

---

[4] In the event that there is any inconsistency between the terms of this Motion and any provision in the Bidding Procedures Order or the Bidding Procedures, the Bidding Procedures Order or the Bidding Procedures, as applicable, shall control.

(a)     A bid must be on terms that, in the Debtor's business judgment, are substantially the same as, or better than, the terms of the Sale set forth in the Agreement. A bid shall include a copy of the Agreement marked to show all changes requested by the bidder (including those related to purchase price) (the "Marked Agreement"); provided, however, that the terms of the Marked Agreement must be substantially similar to or, the same or better than the terms of the Agreement.  A bid must propose a transaction involving substantially all of the Debtor's assets.  A bid will not be considered as a Qualified Bid if (i) such bid contains additional representations and warranties, covenants, closing conditions, due diligence requirements, or termination rights other than as may be included in the Agreement, (ii) such bid is not received in writing on or prior to one Business Day prior to the Auction (the "Bid Deadline"), (iii) such bid does not contain evidence that the party submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby, or (iv) such bid contains a break-up fee, expense reimbursement, or similar type of payment.  The documents shall also identify any executory contracts and unexpired leases of the Debtor that the bidder wishes to have assumed and assigned to it pursuant to the transaction.

(b)     Each bid must be accompanied by an Earnest Money Deposit in the amount of 10% of the proposed purchase price by the bidder.

(c)     Each such bidder must provide evidence satisfactory to the Debtor and Centennial Bank demonstrating the bidder's financial ability to close and to consummate a transaction, including, without limitation, evidence of the bidder's ability to provide

adequate assurance of future performance under any unexpired leases and executory contracts pursuant to Section 365 of the Bankruptcy Code;

16.     The Bidding Procedures also contain the following relevant terms:

(a)     Subject to this Court's approval of the Bidding Procedures Motion, the Auction shall take place on October 15, 2014 at 10:00 a.m. (prevailing Eastern Time) at the offices of Debtor's counsel, Berger Singerman, LLP, 125 S. Gadsden Street, Suite 300, Tallahassee, Florida 32310, or such other place and time as the Debtor shall notify all Qualifying Bidders, including the Proposed Purchaser, the Committee (if any), and other invitees.  The Debtor and its professionals, in consultation with Centennial Bank, shall direct and preside over the Auction with SPV.  At the start of the Auction, the Debtor shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (such Qualified Bid, the "Auction Baseline Bid").

(b)     An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid.  Any Overbid after the Auction Baseline Bid shall be made in increments valued at not less than $10,000.

(c)     The Auction will continue until there is only one Qualified Bid that the Debtor determines, in its reasonable business judgment, after consultation with its financial and legal advisors and Centennial Bank, is the highest and best Qualified Bid at the Auction (the bidder submitting such bid, the "Prevailing Bidder").  The party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtor in the exercise of its business judgment, will be designated as the potential backup bidder (the "Potential Backup Bidder").  In the event that a Qualified Bidder is identified by the

Debtor as the Potential Backup Bidder, such party, shall be required to serve as the backup bidder (the "Backup Bidder").

(d)    The Backup Bidder shall be required to keep its initial bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern time) on the date which is 25 days after the date of the Sale Approval  Hearing (the "Outside Backup Date"); or (ii) the date of closing of a transaction with the Prevailing Bidder or with a Backup Bidder (such transaction, an "Alternative Transaction"). Following the Sale Approval Hearing, if the Prevailing Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Prevailing Bidder, the Debtor may designate the Backup Bidder to be the new Prevailing Bidder, and the Debtor will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court.  In such case, the defaulting Prevailing Bidder's deposit shall be forfeited to the Debtor.  The deposit of the Backup Bidder shall be held by the Debtor until the earlier of 24 hours after (i) the closing of the transaction with the Prevailing Bidder and (ii) the Outside Backup Date.

17.    Except as otherwise provided in the Agreement or the Bidding Procedures Order, the Debtor, in consultation with Centennial Bank, reserves the right, as it may reasonably determine to be in the best interests of its estate, to: (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding

Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtor and its estate; (e) remove some or all of the Acquired Assets from the Auction; (f) waive terms and conditions set forth herein with respect to any or all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Approval Hearing in open court without further notice; and (j) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Bidding Procedures Motion at any time with or without prejudice.  In evaluating the foregoing, the Debtor may take into account non-price considerations, such as execution risk.

**B.**     <u>Sale of Assets</u>

     18.    This Court has the statutory authority to authorize the sale free and clear of Liens. Pursuant to section 363(f) of the Bankruptcy Code, a trustee or debtor in possession may sell all or any part of property of the estate, free and clear of any and all liens, claims, encumbrances or interests if:

     (a)    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

     (b)    such entity consents;

     (c)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

     (d)    such interest is in a bona fide dispute, or

     (e)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest;

11 U.S.C. § 363(f); <u>In re Elliot</u>, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided at least one of the subsections

is met).

19.     Property of the estate may be sold outside the ordinary course of business. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Courts interpreting section 363(b)(1) of the Bankruptcy Code have held that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of the debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith.  *See e.g.*, In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (D. Del. 1987).  Here, each of those factors is met.

20.     Subject to the terms and conditions of the Agreement, the Debtor, in the sound exercise of its business judgment, has concluded that consummation of the Sale to the highest and best bidder will best maximize the value of the Debtor's estate for the benefit of the Debtor's creditors.

21.     In order to ensure the highest possible recovery for the Debtor's estate, the Debtor proposes to hold a competitive Auction of the Acquired Assets, as set forth herein.  Accordingly, the Debtor respectfully asserts that ample business justification exists for the Sale.

22.     Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor will sell the Acquired Assets free and clear of all Lien (other than Permitted Liens).

23.     Given the Debtor's interest in proceeding expeditiously, the Debtor requests that the Court waive the ten-day stay of the effectiveness of the Sale Order consistent with Rule 6004(h) and 6006(g) of the Federal Rules of Bankruptcy Procedure.

C.      **The Sale Hearing and Manner of Notice**

24.      Subject to Court approval, the Sale Approval Hearing shall be held before the Court on October 17, 2014 or at such date as counsel and interested parties may be heard.

25.      Objections, if any, to the relief requested in this Motion must:  (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the Northern District of Florida, (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) two Business Days before the hearing on the Bidding Procedures (the "Bid Procedures Objection Deadline"); and (d) be served upon (i) counsel to the Debtor, (ii) counsel to the Committee (if any), (iii) counsel to Centennial Bank, and (iv) the Office of the United States Trustee, in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the same day.

26.      Objections, if any, to the Sale contemplated by the Agreement must:  (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court Northern District of Florida,  (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on the earlier of (i) seven days prior to the date of the Auction (the "Sale Objection Deadline"); and (d) be served upon (i) counsel to the Debtor, (ii)  counsel to the Committee (if any), (iii) counsel to Centennial Bank, and (iv) the Office of the United States Trustee, in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the same day.

27.      On or before three (3) business days after entry of the Bidding Procedures Order, the Debtor will cause a notice, substantially in the form attached as **Exhibit 2** to the Bidding Procedures Order (the "Auction and Sale Notice"), to be sent by first-class mail postage prepaid, to the following: (a) all creditors or their counsel known to the Debtor to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of

the Acquired Assets; (b) the Office of the United States Trustee; (c) all applicable federal, state and local taxing and regulatory authorities of the Debtor or recording offices or any other governmental authorities that, as a result of the Sale, may have claims, contingent or otherwise, in connection with the Debtor's ownership of the Acquired Assets or have any known interest in the relief requested by this Motion; (d) the state and local environmental agencies in the jurisdictions where the Debtor owns or leases real property; (e) the United States Attorney's office; (f) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (g) counsel to the Committee (if any); (h) all parties to any litigation involving the Debtor; (i) all counterparties to any executory contract or unexpired lease of the Debtor; (j) all other known creditors and interest holders of Debtor; and (k) all potential bidders previously identified or otherwise known to the Debtor.

**D.    Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases**

28.    In connection with the Sale, the Auction and the entry of the Sale Order, the Debtor requests this Court's approval of the following procedures for the assumption and assignment of certain executory contracts and unexpired leases:

(a)    On or before three (3) Business Days after the entry of the Bidding Procedures Order, the Debtor shall serve by first class mail or hand delivery the notice of potential assumption and assignment of the Acquired Contracts, substantially in the form attached hereto as **Exhibit 3** to the Bidding Procedures Order (the "Cure Notice"), on all non-Debtor parties to the Acquired Contracts. The Cure Notice shall identify the Acquired Contract and provide the cure amount that the Debtor believes must be paid to cure all prepetition defaults under the Acquired Contracts (the "Cure Amounts", each default a "Cure Amount").

(b)      Unless the non-Debtor party to Acquired Contract (i) files an objection (the "Cure Amount Objection") to its scheduled Cure Amount, by the Sale Objection Deadline, and (ii) serves a copy of the Cure Amount Objection so as to be received no later than the Sale Objection Deadline to the Debtor, counsel for the Debtor, counsel to the Committee, if any, counsel to Centennial Bank, and the Office of the United States Trustee, such non-Debtor party shall be deemed to consent to the Cure Amount proposed by the Debtor and shall be forever barred and estopped from objecting to the Cure Amount, and from asserting that (A) any additional amounts are due or defaults exist, (B) any conditions to assumption and assignment must be satisfied under such Acquired Contract before it can be assumed and assigned to the purchaser, or (C) any required consent to assignment has not been given.

(c)      The non-Debtor parties to the Acquired Contracts shall have until the Sale Approval Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption and assignment of such Acquired Contract solely on the issue of whether the Prevailing Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (an "Adequate Assurance Objection"); provided, however, that all objections to the assumption and assignment of Acquired Contracts that do not relate to the issue of whether the Prevailing Bidder can provide adequate assurance of future performance must be filed by the Sale Objection Deadline.

(d)      In the event of a dispute regarding:  (a) any Cure Amount with respect to any Acquired Contract; (b) the ability of the Prevailing Bidder to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Acquired Contract; or (c) any other matter pertaining to

assumption, the Cure Amounts shall be paid as soon as reasonably practicable after the closing and following the entry of a final order resolving the dispute and approving the assumption of such Acquired Contract; provided, however, that the Debtor is authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing  Bidder without any further notice to or action, order or approval of the Court.

(e)     Within two (2) Business Days after the Closing Date, the Debtor will file a complete list of the Acquired Contracts that were assumed and assigned, as of the Closing Date, to the Prevailing Bidder.

**WHEREFORE**, the Debtor respectfully requests entry of an order in the form attached hereto and identified as **Exhibit B** granting the relief requested herein, and granting such other and further relief as is fair and just.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on the 22nd day of August, 2014, by electronic transmission upon all registered users.

BERGER SINGERMAN LLP
*Proposed Counsel for Debtor*
125 South Gadsden Street, Suite 300
Tallahassee, FL 32301
Tel. (850) 561-3010
Fax (850) 561-4013

By:   /s/   *Brian G. Rich*
        Brian G. Rich
        Florida Bar No. 38229
        brich@bergersingerman.com

# **EXHIBIT A**

**Proposed form of Asset Purchase Agreement**

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "<u>Agreement</u>") is entered into as of this ____ day of _____, 2014 by and among Adams Street Lofts, LLC, a Florida limited liability corporation, a debtor in possession under chapter 11 of the United States Bankruptcy Code ( "<u>Seller</u>"), and _____, a _____ corporation ("<u>Buyer</u>").

### <u>Recitals</u>

WHEREAS, Seller is in the real estate business and developed and sells condominium units located at 420 North Adams Street in Tallahassee, Florida, consisting of 31 units (the "<u>Project</u>"); and

WHEREAS, of the 31 units, 17 units remain unsold, and are owned by Seller and are currently being rented' and

WHEREAS, on August ___, 2014 (the "<u>Petition Date</u>"), Seller filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Northern District of Florida (the "<u>Bankruptcy Court</u>"), Case No. _____ (the "<u>Bankruptcy Case</u>"), and Seller is currently operating the Project as debtor in possession thereunder; and

WHEREAS, Seller desires to sell to Buyer and Buyer desires to purchase from Seller substantially all of the assets of Seller on the terms and conditions set forth herein and as authorized under §§ 105, 363 and 365 of the Bankruptcy Code; and

WHEREAS, Seller believes, following consultations with its advisors and consideration of its alternatives, in light of the current circumstances, that a sale of all of or substantially all of its assets is necessary to maximize value and is in the best interests of Seller and its estate, creditors, and parties-in-interest; and

WHEREAS, Seller has been actively marketing and soliciting bids for the sale of Seller's assets, and has determined that the offer of Buyer for the assets to be sold pursuant to this Agreement is the highest and best offer (in accordance with §363 of the Bankruptcy Code) received for the assets and constitutes a fair and adequate purchase price for such assets;

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## ARTICLE 1
## DEFINITIONS

In addition to the terms defined elsewhere in this Agreement, for purposes of this Agreement the following terms shall have the following respective meanings:

"Acquired Assets" has the meaning set forth in Section 2.1.

"Acquired Contracts" has the meaning set forth in Section 2.1(a).

"Acquired Equipment" has the meaning set forth in Section 2.1(c).

 "Acquired Inventory" has the meaning set forth in Section 2.1(b).

"Acquired Permits" has the meaning set forth in Section 2.1(e).

"Acquired Deposits" has the meaning set forth in Section 2.1(g).

"Adjustment Date" means the last Business Day prior to Closing.

"Affiliate" means, with respect to any specified or applicable Person, any other Person who, directly or indirectly, controls, is controlled by, or is under common control with such specified or applicable Person.

"Agreement" has the meaning set forth in the opening paragraph of this document.

"Allocation" has the meaning set forth in Section 3.3.

"Applicable Law" means any statute, law, rule, regulation, or ordinance or any Order of any Governmental Entity to which a specified Person or property is subject.

"Assumed Liabilities" has the meaning set forth in Section 2.4.

"Auction" means the auction process contemplated by the Bidding Procedures.

"Bankruptcy Case" has the meaning set forth in the Recitals.

"Bankruptcy Code" and "Bankruptcy Court" have the meanings set forth in the Recitals.

"Bidding Procedures" means the procedures for the Auction of the Acquired Assets, as established by the Bidding Procedures Order.

"Bidding Procedures Order" means the Bankruptcy Court Order approving the procedures for the Auction and the provisions relating to the entry of the Sale Order by the Bankruptcy Court.

"Bill of Sale" has the meaning set forth in Section 4.2(a).

"Business" has the meaning set forth in the Recitals.

"Business Day" means a day, other than a Saturday, Sunday or federal holiday, on which major banks are open for business in Tallahassee, Florida.

2

"Buyer's Closing Certificate" has the meaning set forth in Section 4.3(c).

"Closing" means the consummation of the purchase and sale and assignment of the Acquired Assets and assumption of the Assumed Liabilities, as contemplated by this Agreement, on the Closing Date.

"Closing Date" means the date on which the Closing occurs.

"Code" means the Internal Revenue Code of 1986, as amended and in effect on the Closing Date.

"Qualifying Bid" has the meaning set forth in the Bidding Procedures Order.

"Qualifying Bidder" has the meaning set forth in the Bidding Procedures Order.

"Consents" means all consents and waivers of third parties (other than the Bankruptcy Court or Governmental Entities) that are required to be obtained prior to or in order to effect the transactions contemplated herein, including, without limitation, the valid assignment, transfer and conveyance from Seller to Buyer of any of the Acquired Contracts, in each case without causing a default, breach or loss of material rights thereunder which could reasonably be expected to have a Material Adverse Effect.

"Cure Costs" means the amount required to cure defaults under the Acquired Contracts as required for a Seller to assume and assign such Acquired Contracts to Buyer at Closing, as determined by agreement between the Seller and the applicable contracting party or by the Bankruptcy Court.

"Earnest Money Deposit" or "Deposit" has the meaning set forth in Section 3.1 with respect to Buyer, and means the amount that is ten percent (10%) of the cash purchase price set forth in its Qualifying Bid.

 "Escrow Agent" has the meaning set forth in Section 3.1.

"Excluded Accounts" has the meaning set forth in Section 2.2(a).

"Excluded Assets" has the meaning set forth in Section 2.2.

"Excluded Contracts" has the meaning set forth in Section 2.2(b).

"Excluded Liabilities" has the meaning set forth in Section 2.5.

"Execution Date" means the date of this Agreement.

"Final Order" means an Order of the Bankruptcy Court, or other court of competent jurisdiction, the operation or effect of which has not been reversed, stayed, modified, amended, vacated, or supplemented and as to which Order the time to appeal or seek review, rehearing,

reargument or certiorari has expired and as to which no appeal or petition for review, rehearing, reargment or certiorari has been timely filed and remains pending.

"Governmental Entity" means any court or tribunal in any jurisdiction (domestic or foreign) or any public, governmental, legislative or regulatory body, agency, department, commission, board, bureau, or other authority or instrumentality (domestic or foreign).

"Governmental Approvals" means those approvals, authorization and exemptions from Governmental Entities and the making of all necessary registrations and filings (including filings with Governmental Entities) and the taking of all reasonable steps as may be necessary to obtain an approval or waiver from, or to avoid an action or proceeding to prevent the Closing by, any Governmental Entity, which are required to be obtained or taken to consummate the transactions contemplated herein under Applicable Law.

"Intellectual Property" means all intellectual property owned by Seller, including, without limitation, trade names, styles, logos, copyrights, and trademarks, which are useful and necessary in operating the Project.

"Lien" means any interest (other than that of Seller), claim, encumbrance or lien relating to the Acquired Assets, as those terms are used in §§ 101(37) and 363(f) of the Bankruptcy Code.

"Material Adverse Effect" and "Material Adverse Change" means an occurrence or event that materially adversely affects the value of the Acquired Assets taken as a whole, or that materially adversely affects the ability of a party hereto to perform its obligations under this Agreement or timely consummate the transactions contemplated herein, and excludes any such effect resulting, directly or indirectly, from (i) the Bankruptcy Case and circumstances related thereto, or (ii) factors affecting the economy or financial markets or Seller's industry as a whole.

"Order" means any writ, judgment, decree, injunction or similar order, writ, ruling directive or other requirement of any Governmental Entity (in each such case whether preliminary or final).

"Permits" means all permits and licenses relating to the Project.

"Permitted Liens" means any Lien for Taxes not yet due or payable.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, enterprise, unincorporated organization, Governmental Entity, or other entity.

"Petition Date" has the meaning set forth in the Recitals.

"Purchase Price" has the meaning set forth in Section 3.2(a).

"Qualifying Bid" has the meaning set forth in Section 5.2(b)(ii).

"<u>Related Agreements</u>" means documents to be executed and delivered at Closing as contemplated hereby, including the Bill of Sale and the Assignment and Assumption Agreement.

"<u>Representative</u>" shall have the meaning set forth in Section 6.6.

"<u>Retained Liabilities</u>" shall have the meaning set forth in Section 2.3.

"<u>Rules</u>" means the Federal Rules of Bankruptcy Procedure.

"<u>Sale Approval Hearing</u>" means the hearing on the entry of the Sale Order.

"<u>Sale Motion</u>" means the motion of Seller, in form and substance acceptable to Seller and Buyer in their reasonable discretion, for, among other things, entry of an Order seeking approval and entry of the Bidding Procedures Order, approving the form of this Agreement, scheduling dates to conduct the Auction and Sale Approval Hearing, and authorizing the sale of the Acquired Assets free and clear of Liens (other than Permitted Liens).

"<u>Sale Order</u>" means an order of the Bankruptcy Court (a) authorizing Seller to close on the terms of this Agreement and the transactions contemplated <u>hereby</u>, in accordance with § 363 of the Bankruptcy Code, which finds, among other things, that Buyer is a good-faith purchaser for value and otherwise entitles Buyer to the protections of § 363(m) of the Bankruptcy Code, and which order has not been reversed or modified on appeal or, if any such appeal is pending, such order shall not have been stayed, (b) approving the sale of the Acquired Assets to Buyer free and clear of any and all Liens (other than Liens that Buyer has agreed to permit or assume hereunder or hereafter) pursuant to § 363(f) of the Bankruptcy Code; (c) determining the Cure Costs and approving the assumption and assignment to Buyer of the Acquired Contracts solely on the terms of such Acquired Contracts; (d) providing that the provisions of Rules 6004(h) and 6006(g) of the Rules are rendered inapplicable and there will be no stay of execution of the Sale Order under Rule 62(a) of the Federal Rules of Civil Procedure; (e) retaining jurisdiction of the Bankruptcy Court to interpret and enforce the terms and provisions of this Agreement; and (f) determining this Agreement (as it may be modified prior to the Sale Approval Hearing) to be the highest and best bid as a result of the Auction.  The form of Sale Order that the Seller will propose that the Bankruptcy Court enter after the Sale Approval Hearing is attached hereto as <u>Exhibit A</u>, but in any event shall be in form and substance acceptable to Buyer and Seller in their reasonable discretion.

"<u>Seller's Closing Certificates</u>" shall have the meaning set forth in Section 4.2(c).

"<u>Seller's Knowledge</u>" or "<u>Knowledge of Seller</u>" means the actual knowledge of the Persons set forth on <u>Schedule 1.1</u> without independent investigation.

"<u>Tax</u>" or "<u>Taxes</u>" means all taxes, charges, fees, duties, levies or other assessments, however denominated, imposed by any federal, territorial, state, local or foreign government or any agency or political subdivision of any such government, which taxes shall include, without limiting the generality of the foregoing, income or profit, gross receipts, net proceeds, ad valorem, turnover, real and personal property (tangible and intangible), sales, use, franchise,

excise, value added, stamp, leasing, lease, business license, user, transfer, fuel, environmental, excess profits, occupational, interest equalization, windfall profits, severance and employees' income withholding, workers' compensation, Pension Benefits Guaranty Corporation premiums, unemployment and Social Security taxes, and other obligations of the same or of a similar nature to any of the foregoing (all including any interest, penalties or additions to tax related thereto imposed by any taxing authority).

# ARTICLE 2
# PURCHASE OF ASSETS

2.1     <u>Purchase and Sale of Acquired Assets</u>.    Subject to the Bankruptcy Court's authorization of Seller to close on this Agreement and to consummate the transactions contemplated hereby pursuant to the Bidding Procedures Order and the Sale Order, and upon the terms and subject to the conditions contained in this Agreement, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase, assume and acquire from Seller, free and clear of all Liens (except for Permitted Liens) pursuant to §§ 363(b) and 363(f) of the Bankruptcy Code (including, without limitation, claims for successor liability under any theory of law or equity, and claims that Buyer is not a good faith purchaser entitled to the protections of § 363(m) of the Bankruptcy Code), all of Seller's transferable right, title and interest in and to the Acquired Assets.   "<u>Acquired Assets</u>" means all of Seller's transferable interest in assets, tangible or intangible, real, personal or mixed, of any kind and description, and wherever located, that are used in connection with operating the Project (subject to adjustments through Closing as contemplated by this Agreement), excluding the Excluded Assets, but including without limitation the following:

(a)     the agreements and contracts relating to the Project listed on <u>Schedule 2.1(a)</u> (the "<u>Acquired Contracts</u>") (and Seller shall assume in the Bankruptcy Case any Acquired Contracts set forth on Schedule 2.1(a) and assign such Acquired Contracts to Buyer at Closing, subject to the provisions of Section 5.1 hereof);

(b)     all inventory relating to the Project, wherever located, including but not limited to the inventory described in <u>Schedule 2.1(b)</u> (the "<u>Acquired Inventory</u>");

(c)     all fixtures, machinery, equipment, furniture, supplies and tangible personal property owned by Seller and used in connection with the Project, wherever located (the "<u>Acquired Equipment</u>");

(d)     all files, papers, computer files, customer lists and records, advertising materials, promotional materials, studies, reports and books and business records of Sellers in any medium relating to the Project (subject to Seller's rights to access such files and records under Section 6.3, below, and except for books and records relating to Company Plans);

(e)     all Permits listed on <u>Schedule 2.1(f)</u>, to the extent they are freely assignable (collectively, the "<u>Acquired Permits</u>");

6

(f)     all Intellectual Property used by Seller in connection with the Project and all registered trade names and trademarks held by Seller, including those described on Schedule 2.1(g), to the extent they are freely assignable (the "Acquired Intellectual Property");

(g)     subject in each case to the provisions of Section 3.2(c), all prepaid expenses related to the Acquired Assets, and, to the extent transferable, all deposits posted with utility companies, lessors, vendors or suppliers relating to the Project, including any changes in the amount of any such deposit as of the Closing (collectively, the "Acquired Deposits"); and

(h)     all rights of Seller under any insurance policies maintained by Seller relating solely to the Acquired Assets and Acquired Contracts, to the extent they are freely assignable.

2.2    Excluded Assets.  Notwithstanding anything to the contrary contained in Section 2.1 or elsewhere in this Agreement, the following assets (the "Excluded Assets") are not part of the sale and purchase contemplated hereunder, are excluded from the Acquired Assets, and shall remain the property of Seller after the Closing:

(a)     all accounts receivable arising from the operation of the Project prior to Closing, including, without limitation, those arising under the Acquired Contracts (collectively, the "Excluded Accounts");

(b)     all of Seller's interest in any agreements and contracts relating to the Project listed on Schedule 2.2(b) or subsequently designated as an Excluded Contract (A) by mutual consent of Buyer and Seller or (B) by Buyer's modification of Schedule 2.1(a) from time to time following the execution of this Agreement, by notice given to Seller at least five (5) Business Days prior to the Sale Approval Hearing, to delete any previously designated Acquired Contract therefrom; provided that no such modification shall change or affect the Purchase Price in any respect, in each case to the extent the same are not assumed by Seller and assigned to Buyer at or prior to the Closing (the "Excluded Contracts"), and including any accounts receivable arising under any Excluded Contracts;

(c)     all rights of Seller under any insurance policies maintained by Seller relating to the Project (except as otherwise provided under Section 2.1(h) and regarding casualty insurance proceeds relating to the Acquired Assets);

(d)     claims for any federal, state, local or foreign Tax refunds, rebates, abatements or other recovery for Taxes of Seller, together with any interest due thereon or penalty rebate arising therefrom, all Tax refunds, rebates, or other recoveries of Seller for any period, and all of Seller's rights and claims against third parties that have arisen or accrued at any time prior to Closing;

(e)     all of Seller's rights under this Agreement and/or the Related Agreements (including but not limited to rights relating to the Purchase Price);

(f)     all deposits, including cash deposits with vendors, utilities, and lessors that are not transferable, and any deposits related to any Excluded Assets owned or leased by Seller, and all of Seller's' prepaid expenses and deposits relating to Excluded Assets;

(g)     all bank accounts of Seller and all cash, cash equivalents, and short-term investments;

(h)     all minute books, stock records, and corporate seals;

(i)     all rights in connection with and assets of the Company Plans, and Seller shall retain and not sell or deliver to Buyer the books, records, and files relating to the Company Plans or any other confidential personnel information;

(j)     all commercial tort claims; and

(k)     all claims and avoidance recovery, subordination or other actions arising out of the commencement of the Bankruptcy Case, including without limitation those arising under §§ 506, 510, 542 - 551 and 553 of the Bankruptcy Code.

Seller expressly retains the rights to enforce and exercise their remedies pursuant to any of the Excluded Assets.

2.3     Retained Liabilities.  Seller shall retain the Retained Liabilities, and Buyer shall have no liability therefor. "Retained Liabilities" shall mean every liability of Seller other than the Assumed Liabilities.

2.4     Assumption of Liabilities.  On the terms and subject to the conditions set forth in this Agreement, at the Closing Buyer shall assume and agree to pay, perform and discharge the following liabilities and obligations of Seller (the "Assumed Liabilities"):

(a)     all payment and performance obligations arising after the Closing under the Acquired Contracts, the Acquired Permits and the Acquired Intellectual Property in accordance with the terms of the applicable Acquired Contracts, Acquired Permits and Acquired Intellectual Property;

(b)     all liabilities and obligations arising as a result of Buyer's acquisition or operation of the Acquired Assets and accruing after the Closing Date;

(c)     Cure Costs in respect of Acquired Contracts; and

(d)     any other liabilities specifically imposed upon Buyer pursuant to this Agreement.

2.5     Excluded Liabilities.  Except for the Assumed Liabilities, Buyer shall not assume any other liability of obligation of Seller of whatever nature, whether presently in existence or arising hereafter.  All such other liabilities and obligations (collectively, the "Excluded Liabilities") shall be retained by and remain liabilities and obligations of Seller, as applicable. The Excluded Liabilities include, without limitation:

8

(a)     payment and performance obligations arising or accruing in respect of periods prior to the Closing under the Acquired Contracts, the Acquired Permits and the Acquired Intellectual Property; and

(b)     any liabilities or obligations that do not relate to any Acquired Assets.

2.6     "<u>As Is</u>" <u>Transaction</u>.  Buyer hereby acknowledges and agrees that, except as otherwise expressly provided in this Agreement, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Acquired Assets, or otherwise relating to any of the transactions contemplated hereby, including without limitation any income to be derived or expenses to be incurred in connection with the Acquired Assets, the physical condition of any Acquired Assets comprising a part of the Acquired Assets or which is the subject of any Acquired Contract, the value of the Acquired Assets (or any portion thereof), the terms, amount, validity or enforceability of any Assumed Liabilities, the merchantability or fitness of the Acquired Assets or any other portion of the Acquired Assets for any particular purpose. Without in any way limiting the foregoing, subject to the representations, warranties and covenants expressly set forth in this Agreement, **Seller hereby disclaims any warranty, express or implied, relating to this transaction, including but not limited to implied warranties of merchantability or fitness for any particular purpose** as to any portion of the Acquired Assets. Buyer further acknowledges that Buyer, at Buyer's cost and expense, conducted and completed an independent inspection and investigation of the physical condition of the Acquired Assets and all such other matters relating to or affecting the Acquired Assets and the Project as Buyer deemed necessary or appropriate and that in proceeding with its acquisition of the Acquired Assets and entering into this Agreement, except for any representations and warranties, and covenants expressly set forth in this Agreement, Buyer is doing so based solely upon such independent inspections and investigations. Accordingly, subject to the representations, warranties, and covenants expressly set forth in this Agreement, Buyer will accept the Acquired Assets at the Closing ***"AS IS," "WHERE IS," AND "WITH ALL FAULTS."***

## ARTICLE 3
## PURCHASE PRICE

3.1     <u>Earnest Money Deposit</u>.  Buyer has delivered to Sellers' attorneys, Berger Singerman LLP ("<u>Escrow Agent</u>"), simultaneously with the execution of this Agreement, $_____, as and for the earnest money deposit hereunder (the "<u>Earnest Money Deposit</u>" or "<u>Deposit</u>"), to be held in escrow by Escrow Agent and to be disbursed by Escrow Agent in accordance with the terms of the Escrow Agreement and Section 10.2.

3.2     <u>Purchase Price; Purchase Price Adjustment</u>.

(a)     Upon the terms and subject to the conditions set forth in this Agreement, Buyer shall pay to Seller in cash at Closing the amount of $_____ (the "<u>Purchase Price</u>"), subject to certain adjustments as set forth in this Article 3 and elsewhere in this Agreement. At Closing, Buyer shall also assume the Assumed Liabilities. At Closing, Buyer shall pay the Purchase Price to Seller by wire transfer in immediately available U.S. funds to the account designated by Seller, and Escrow Agent

shall deliver the Earnest Money Deposit to Seller (the amount of which shall be credited against the Purchase Price payable by Buyer at Closing).

(b)     At Closing, personal property Taxes applicable to the Acquired Assets shall be pro-rated to the day preceding the Closing Date on the basis of the fiscal year for which assessed (or, if not available, based on the prior fiscal year).  If such Taxes cannot be adjusted with certainty at the Closing because of the unavailability of information as to the amounts, Seller shall estimate such adjustments at Closing.

## ARTICLE 4
## CLOSING

4.1     <u>Closing</u>.  Subject to the satisfaction or waiver of the conditions set forth in this Agreement, the Closing shall occur upon satisfaction of the conditions to Closing but not later than October 15, 2014 in the offices of Escrow Agent (or on such other date and at such other time and place as the parties shall mutually agree in writing).

4.2     <u>Seller's Deliveries at Closing</u>.  At Closing, Seller shall deliver, or cause to be delivered, to Buyer the following items:

(a)     Warranty Deed

(b)     Bill of Sale;

(c)     Assignment and Assumption Agreement and such other bills of sale, assignments, certificates of title, documents, and other instruments of transfer and conveyance as may reasonably be requested by Buyer, each in form and substance reasonably satisfactory to Buyer and Seller and duly executed by Seller; provided that each such instrument of transfer, including the Bill of Sale, shall expressly provide that Seller shall have no liability in monetary damages thereunder;

(d)     certificates, dated as of the Closing Date and signed by an officer of each Seller in a corporate capacity, stating that all conditions specified in Section 9.2 have been satisfied;

(e)     such other instruments and documents as Buyer reasonably deems necessary in connection with the transactions contemplated by this Agreement; and

(f)     physical possession and control of the Acquired Assets as soon thereafter as possible.

4.3     <u>Buyer's Deliveries at Closing</u>.  At Closing, Buyer shall deliver, or cause to be delivered, to Seller the following items:

(a)     payment of the balance of the Purchase Price specified under Section 3.1;

(b)     the Assignment and Assumption Agreement (pursuant to which Buyer shall assume the Assumed Liabilities) and the other Related Agreements to be executed by Buyer;

(c)     a certificate, dated as of the Closing Date and signed by an executive officer of Buyer in corporate capacity, stating that the conditions specified in Sections 9.1 have been satisfied;

(d)     the resolutions duly adopted by the Board of Directors of Buyer (and any stockholders or other Persons whose consent is required) authorizing the execution, delivery and performance of this Agreement, the Related Agreements and any other agreement or instruments contemplated hereby or thereby, and the consummation of the transactions contemplated herein by Buyer; and

(e)     such other instruments and documents as Seller shall reasonably deem necessary in connection with the transactions contemplated by this Agreement.

4.4     <u>Closing Costs</u>.  In addition to any other costs to be borne by Seller pursuant to this Agreement, Seller shall pay the cost of obtaining the Bidding Procedures Order and the Sale Order.  In addition to any other costs to be borne by Buyer pursuant to this Agreement, Buyer shall pay all Taxes applicable to, imposed upon or arising out of the sale or transfer of the Acquired Assets to Buyer and the other transactions contemplated by this Agreement (including, but not limited to, sales, use, gross receipts, and intangible Taxes), and all costs and expenses incurred by Buyer as a result of any financing obtained by Buyer.  Except as set forth in this Section or elsewhere in this Agreement, each of the parties shall bear its own expenses and the expenses of its counsel and other agents in connection with the transactions contemplated hereby.

## ARTICLE 5
## BANKRUPTCY CASE

5.1     <u>Consents</u>.  Seller and Buyer shall use their commercially reasonable efforts prior to Closing to obtain all required Consents of third parties whose consent is required under § 365 of the Bankruptcy Code in order for Seller to validly assign the applicable Acquired Contract to Buyer at Closing (other than those obviated by the Sale Order).  All such necessary third party consents shall be in writing and executed counterparts thereof shall be delivered to Buyer promptly after Seller's receipt thereof but in any event prior to Closing.  Notwithstanding the foregoing or anything contained herein to the contrary, this Agreement shall not constitute an agreement to assign any lease or contract or any claim or right or any benefit arising thereunder or resulting therefrom if an attempted assignment thereof, notwithstanding the Sale Order or without the consent of a third party thereto, would constitute a default thereof or in any way materially adversely affect the rights of Buyer thereunder.  If such Consent is not obtained, or if an attempted assignment thereof would be ineffective or would materially adversely affect the rights thereunder, Seller shall use its commercially reasonable efforts after Closing to provide to Buyer the benefits under any such lease or contract.  Buyer shall pay any Cure Costs relating to Acquired Contracts that Buyer elects to have Seller assume and assign to Buyer, and will pay any additional costs resulting from any requirements (acceptable to the parties hereto and the

11

third party to the applicable Acquired Contract) imposed by Buyer in connection with the assignment and assumption of any Acquired Contracts.   Buyer shall be responsible for complying with the provisions of §365(b)(1)(C)) of the Bankruptcy Code.

# ARTICLE 6
# COVENANTS

6.1    <u>Conduct and Preservation of the Acquired Assets</u>.  Except as provided in this Agreement (including this Section 6.1), or unless otherwise consented to by Buyer, which consent shall not be unreasonably delayed or withheld, and except as otherwise required, authorized or restricted pursuant to any Order of the Bankruptcy Court, during the period from the date hereof to the Closing, Seller shall cause the Project to be conducted consistent with its practice since the Petition Date and in the ordinary course of business and shall, consistent with its practice since the Petition Date, the requirements of the Bankruptcy Code and the orders of the Bankruptcy Court, (i) preserve the present business operations, organization and goodwill of the Business (but Seller shall not be required to make any payments or enter into or amend any contractual agreements, arrangements, or understandings to satisfy the foregoing obligation unless such payment or other action is required by or consistent with past practice since the Petition Date); (ii) in all material respects preserve, maintain, and protect the assets, rights, and properties included in the Acquired Assets; (iii) comply in all material respects with all post-petition contractual and other obligations applicable to the operation of the Business and the Acquired Assets; and (iv) comply in all material respects with Applicable Laws, insofar as they relate to the Acquired Assets.

6.2    <u>Access to Books and Records</u>.  For a period of five years after the Closing Date, upon the request of Seller and upon reasonable prior notice for any reasonable purpose, Buyer shall provide Seller and Seller's representatives with access during normal business hours to the books and records of the Project (reflecting operations and transactions prior to the Closing) and shall allow Seller and Seller's representatives to make copies thereof at Seller's expense, provided that such access shall be in a manner so as not unreasonably to interefere with the normal business operations of Buyer.  The provisions of this Section shall survive the Closing.

6.3    <u>No Sale or Encumbrance of Acquired Assets.</u>  Except for Liens granted to Seller's prepetition and post-petition creditors in connection with the Bankruptcy Case (all of which such Liens shall attach and be transferred to the proceeds of the sale contemplated by this Agreement), Seller will not sell or further encumber any Acquired Assets, other than the sale of inventory in the ordinary course, or as provided in this Agreement or Order of the Bankruptcy Court.

6.4    <u>Accounts Receivable; Payments Received</u>.  All amounts payable or attributable to services, goods or materials rendered, sold or provided by Seller to the customers of the Project prior to Closing under Acquired Contracts, or otherwise relating to the Project (the "<u>Pre-Closing Receivables</u>") shall be retained and remain the exclusive assets and property of Seller, after giving effect to the transactions contemplated by this Agreement.

## ARTICLE 7
## REPRESENTATIONS AND WARRANTIES OF SELLERS

Seller hereby represents and warrants to Buyer that, except as set forth in the Schedules attached hereto:

7.1     Organization, Standing, and Power.  Seller is a corporation, organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has the requisite power and authority to carry on its business as now being conducted, except where the failure to be so organized, existing or in good standing or to have such power or authority would not, individually or in the aggregate, have a Material Adverse Effect.

7.2     Authority.  Upon entry of the Bidding Procedures Order and the Sale Order, Seller will have all requisite corporate power and authority to enter into this Agreement and the Related Agreements and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Related Agreements by Seller and the consummation by Seller of the transactions contemplated hereby and thereby have been or prior to Closing will be duly authorized by all necessary corporate action on the part of Seller or by Order of the Bankruptcy Court, subject to the conditions set forth in this Agreement.  This Agreement has been duly executed and delivered by Seller and, upon entry of the Bid Procedures Order and Sale Order, will constitute the valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

7.3     No Conflict.  Subject to entry of the Bidding Procedures Order and the Sale Order by the Bankruptcy Court or as otherwise contemplated by this Agreement, neither the execution, delivery or performance of this Agreement and the Related Agreements, the consummation of the transactions contemplated by this Agreement and the Related Agreements nor the compliance with the provisions hereof or thereof will (i) contravene, conflict with, or result in a violation of any provision of the certificate of incorporation of Seller (except if permitted or authorized by Order of the Bankruptcy Court), (ii) to Seller's Knowledge,  conflict with or result in a breach of the terms, conditions or provisions of any Order of a Governmental Entity, or (iii) to Seller's Knowledge, result in the creation or imposition of any Lien on any of the Acquired Assets, except for those arising by, through or under Buyer.

7.4     Third-Party Approvals. Except for the Bidding Procedures Order and the Sale Order and as contemplated by the other provisions of this Agreement, the execution, delivery and performance by Seller of this Agreement and the Related Agreements and the transactions contemplated hereby and thereby do not require any Governmental Approvals or any consents, waivers, authorizations or approvals of, or filings with, any third parties which have not been obtained (or will not have been obtained at or prior to Closing) by Seller, except for those as to which the failure to obtain the same is not reasonably likely to have a Material Adverse Effect.

7.5     Real Property Assets.  Schedule 7.5 lists all of the real estate assets owned or leased by Seller relating to the Business.

7.6     Acquired Contracts.  To Seller's Knowledge, except for defaults caused by the commencement of the Bankruptcy Case or which are not reasonably likely to have a Material

13

Adverse Effect, each Acquired Contract is valid and binding upon Seller and is in full force and effect.

7.7     Claims, Litigation, and Disputes.  Except for the Bankruptcy Case, and Orders entered by the Bankruptcy Court, to Seller's Knowledge, there is no claim, litigation, action, grievance, arbitration, or other legal proceeding at law or equity or before any Governmental Entity or threatened against Seller, materially and adversely affecting (i) Seller's ability to perform their obligations hereunder, (ii) the rights granted under the Acquired Contracts, or (iii) the ownership, use, maintenance or operation of the Acquired Assets by Seller.

7.8     Compliance with Laws.  To Seller's Knowledge the Project is in compliance with all Applicable Laws, except in any such case where the failure to be in compliance would not be reasonably likely to have a Material Adverse Effect.  To Seller's Knowledge, the Permits set forth on Schedule 2.1(f) constitute all material permits necessary to conduct the Project, as presently conducted, in substantial compliance with Applicable Laws.

7.9     Taxes.

(a)     To the extent that under Applicable Law the failure of this representation to be true or correct could result in a lien upon or claim against the Acquired Assets or in a claim against Buyer as transferee or owner of the Acquired Assets, (i) Seller has filed or has caused to be filed on a timely basis (or have timely requested an extension of time to file) all Tax returns that are or were required to be filed with respect to the Acquired Assets and the operation of the Project; (ii) all such Tax returns accurately reflect all liabilities required to be reflected thereon; and (iii) except for Taxes the payment of which would not be required pursuant to applicable exemptions or exceptions, including those provided by the Bankruptcy Code or otherwise by reason of the commencement or pendency of the Bankruptcy Case, all Taxes due and payable by Seller with respect to the Acquired Assets and the operation of the Project as shown in such Tax returns have been paid.

(b)     To the extent that under Applicable Law the failure of this representation to be true or correct could result in a lien upon or claim against the Acquired Assets or in a claim against Buyer as transferee or owner of the Acquired Assets, (i) no material deficiency or proposed adjustment which has not been settled or otherwise resolved for any amount of Tax has been proposed, asserted or assessed by any Governmental Entity against Seller with respect to the Acquired Assets and the operation of the Project and there is no action, suit, taxing authority proceeding or audit now in progress, pending or, to Seller's Knowledge, threatened against or with respect to Seller with respect thereto; and (ii) there are no Liens for Taxes (other than for current Taxes not yet due and payable or those being contested in good faith and by appropriate proceedings) upon the Acquired Assets.

7.10     Governmental and Regulatory Consents and Approvals.  To Seller's Knowledge, other than the Bankruptcy Court, there is no Governmental Entity that must consent to the execution, delivery or performance of this Agreement by Seller, except where the failure to obtain any such consent of such Governmental Entity would not have a Material Adverse Effect

or would not materially adversely affect the ability of Seller to consummate the transactions contemplated hereby.

7.11    Brokerage Fees.  No broker, investment banker, or other Person engaged by Seller is entitled to any broker's, finder's or other similar fee or commission payable by Buyer in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

7.12    Intellectual Property.   Schedule 2.1(g) lists all material Intellectual Property owned by, registered in the name of or used by Seller in the conduct of the Business.  Except as set forth in Schedule 7.13, there are no material licenses, agreements or commitments outstanding or effective granting any other Person any right to use, operate under, license or sublicense any of the Intellectual Property.

7.13    Acquired Assets.  Seller has good title to the Acquired Assets, free and clear of all liens and encumbrances except for (a) Permitted Liens, and (b) Liens which will be released at Closing or transferred to the proceeds of sale of the Acquired Assets.

## ARTICLE 8
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that:

8.1    Organization, Standing, and Power.  Buyer is a _____ organized, validly existing, and in good standing under the laws of _____ and has the requisite power and authority to carry on its business as now being conducted and to effect the transactions contemplated hereunder.

8.2    Authority.  Buyer has all requisite corporate power and authority to enter into this Agreement and the Related Agreements and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Related Agreements by Buyer and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary action on the part of Buyer, subject to the conditions set forth in this Agreement.  This Agreement has been duly and validly executed and delivered by Buyer and this Agreement constitutes the legal, valid and binding obligation of Buyer and is enforceable against Buyer in accordance with its terms.

8.3    Consents and Approvals; No Violation.   Neither the execution, delivery or performance of this Agreement and the Related Agreements, the consummation of the transactions contemplated by this Agreement and the Related Agreements nor the compliance with the provisions hereof or thereof will, result in any violation of, or default (with or without notice or lapse of time, or both) under, or give to others a right of termination, cancellation or acceleration of any obligation or the loss of a material benefit under, or result in the creation of any Lien upon any of the properties or assets of Buyer under any provision of (i) the charter or organizational document or bylaws of Buyer, (ii) any loan or credit agreement, note, bond, mortgage, indenture, lease or other agreement, instrument, permit, concession, franchise or license applicable to Buyer or (iii) any Order or Applicable Law relating to Buyer or any of its

properties or assets, other than, in the case of clauses (ii) or (iii), any such violations, defaults or Liens that, individually or in the aggregate, would not prevent the consummation of any of the transactions contemplated hereby in accordance with the terms of this Agreement.  Except for the Governmental Approvals as set forth in Schedule 8.3, no filing or registration with, or authorization, consent or approval of, any Governmental Entity is required by or with respect to Buyer in connection with the execution and delivery of this Agreement by Buyer or is necessary for the consummation of the transactions contemplated by this Agreement.

8.4    Actions and Proceedings.  There are no actions, suits, or other litigation, legal or administrative proceedings or governmental investigations pending or threatened against Buyer which could have the effect of delaying or prohibiting the consummation of the transactions contemplated by this Agreement.

8.5    Brokers.  No broker, investment banker, or other Person engaged by Buyer is entitled to any broker's, finder's or other similar fee or commission payable by Seller in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.  This representation shall survive the Closing, and Buyer shall indemnify and hold harmless Seller for any liabilities incurred by Sellers as a result of the inaccuracy of this representation.

8.6    Financing.  Buyer has (and, to the extent Buyer assigns its rights and obligations hereunder to Buyer's Assignee in accordance with the provisions of Section 12.7, Buyer's Assignee shall have) sufficient available funds to pay the Purchase Price at Closing and to perform its obligations under this Agreement.

## ARTICLE 9
## CONDITIONS OF CLOSING

9.1    Conditions to Obligations of Buyer to Proceed on the Closing Date.    The obligations of Buyer to consummate the transactions provided for by this Agreement shall be subject to the satisfaction or waiver by Buyer, on or prior to the Closing, of each of the following conditions:

(a)    The representations and warranties of Seller herein shall be true and correct in all material respects when made and on the Closing Date with the same effect as though made at such time.  Seller shall have performed in all material respects all of its obligations set forth in this Agreement and shall have complied in all material respects with all of their covenants and conditions set forth in this Agreement prior to or as of the Closing Date;

(b)    All consents and approvals that are necessary to be obtained by Buyer in order to authorize and effect the transactions contemplated by this Agreement shall have been obtained, except where the failure to obtain the same would not have a Material Adverse Effect;

(c)    All Governmental Approvals as may be necessary in connection with the consummation of the transactions contemplated by this Agreement shall have been received;

(d)     There will have been no Material Adverse Change since the date of this Agreement;

(e)     There shall be no material pending or threatened lawsuit, proceeding or governmental action challenging the transactions contemplated by this Agreement; and

(f)     The Sale Order approving this Agreement and authorizing the transactions contemplated hereby shall have been entered by the Bankruptcy Court and shall be a Final.

9.2     <u>Conditions to Obligations of Seller to Proceed on the Closing Date</u>.   The obligations of Seller to consummate the transactions provided for by this Agreement shall be subject to the satisfaction or waiver by Seller, on or before the Closing, of each of the following conditions:

(a)     The representations and warranties of Buyer herein shall be true and correct in all material respects when made and on the Closing Date with the same effect as though made at such time.   Buyer shall have performed in all material respects all its obligations set forth in this Agreement, and shall have complied in all material respects with all its covenants and conditions set forth in this Agreement, prior to or as of the Closing Date;

(b)     All Governmental Approvals as may be necessary in connection with the consummation of the transactions contemplated by this Agreement shall have been received;

(c)     All consents and approvals that are necessary to be obtained by Seller in order to authorize and effect the transactions contemplated by this Agreement shall have been obtained, except where the failure to obtain the same would not have a Material Adverse Effect;

(d)     There shall be no material pending or threatened lawsuit, proceeding or governmental action challenging the transactions contemplated by this Agreement; and

(e)     The Sale Order approving this Agreement and authorizing the transactions contemplated hereby shall have been entered by the Bankruptcy Court.

9.3     <u>Notice of Unsatisfied Condition</u>.   On the date that is no later than three Business Days prior to the date of the Auction, each of Buyer and Seller will deliver to the other written notice of any fact, circumstance or condition of which they have actual knowledge which would cause, or which a reasonable Person would expect to have a substantial likelihood to cause, any of the conditions to Closing set forth in Sections 9.1 or 9.2 of this Agreement not to be satisfied at Closing.

## ARTICLE 10
## TERMINATION, AMENDMENT, AND WAIVER

10.1    <u>Termination</u>.  This Agreement may be terminated at any time prior to the Closing Date:

(a)    upon the mutual written consent of Buyer and Seller;

(b)    by Seller, if (i) at the execution of this Agreement or at Closing, the representations and warranties of Buyer in Article 8 shall not be true and correct in all material respects, or (ii) as of the Closing Date any of the conditions specified in Section 9.2 hereof have not been satisfied (unless such failure was solely within the control of Seller), or (iii) Buyer is in material breach of this Agreement, and such breach has not been cured within ten (10) Business Days following the delivery of written notice thereof to Buyer;

(c)    by Buyer, if (i) at the execution of this Agreement or at Closing, the representations and warranties of Seller in Article 7 shall not be true and correct in all material respects, or (ii) as of the Closing Date any of the conditions specified in Section 9.1 hereof have not been satisfied (unless such failure was primarily within the control of Buyer), or (iii) Sellers are in material breach of this Agreement, and such breach has not been cured within ten (10) Business Days following the delivery of written notice thereof to Seller;

(d)    by either Buyer or Seller if there shall be in effect a stay pending appeal or other Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated herein;

(e)    by Buyer or Seller if a motion to dismiss the Bankruptcy Case has been granted by the Bankruptcy Court;

(f)    by Buyer or Seller, if the Bankruptcy Court has not entered the Sale Order by _____, 2014, or (ii) such longer period of time as the Bankruptcy Court may require pursuant to the Bidding Procedures Order; and

(g)    by Buyer or Seller, if the Bankruptcy Court has entered the Sale Order but the Closing Date has not occurred on or before the later to occur of (i) two Business Days after entry of the Sale Order, or in all events by (ii) October 15, 2014, provided the terminating party is not in material breach of its obligations hereunder.

10.2    <u>Effect of Termination</u>.

(a)    If this Agreement is terminated pursuant to Article 10 of this Agreement (other than a termination with respect to which the Earnest Money Deposit is payable to Seller pursuant to Section 10.2(b) below), then the Earnest Money Deposit shall be returned to Buyer, provided that (i) if this Agreement is terminated by Buyer pursuant to Section 10.1(c) and Buyer is not in breach of this Agreement, Buyer's sole remedy shall be to receive a return of the Earnest Money, and (ii) if Buyer is a Backup Bidder (as

defined in the Bidding Procedures Order), the Earnest Money Deposit shall be retained by the Escrow Agent and returned to Buyer when the transaction with the Prevailing Bidder is consummated.  In no event whatsoever shall Seller be liable for monetary damages.

(b)     If (i) this Agreement is terminated by Seller pursuant to Section 10.1(b) or 10.1(i) of this Agreement, then the Earnest Money Deposit shall be delivered to Seller as liquidated damages and not a penalty. The parties recognize that the determination of damages in the event of a termination of this Agreement pursuant to Article 10 will be difficult and that the retention by Seller of the amount of the Earnest Money Deposit constitutes a reasonable estimate of such actual damages, and therefore liquidated damages and not a penalty.  Payment of the Earnest Money Deposit to Seller in the event of a termination of this Agreement by Seller pursuant to Section 10.1(b) or 10.1(i) shall be Seller's exclusive remedy under this Agreement in connection with any termination hereof.

(c)     If this Agreement is validly terminated in accordance with this Article 10, this Agreement shall terminate, Escrow Agent shall deliver the Earnest Money Deposit as provided herein, and each of the parties shall be relieved of their respective obligations arising under this Agreement after the date of such termination and such termination shall be without liability to Buyer or Seller; provided, however, that the provisions of this Agreement that specifically survive the termination of this Agreement shall continue to be enforceable.

## ARTICLE 11
## RISK OF LOSS

11.1    Risk of Loss.  From the date hereof through the Closing Date, all risk of loss or damage to the property included in the Acquired Assets shall be borne by Seller, and thereafter shall be borne by Buyer.  If any material portion of the Acquired Assets is destroyed or damaged by fire or any other casualty on or prior to the Closing Date, Seller shall give written notice to Buyer as soon as practicable after, but in any event within five Business Days of, discovery of such damage or destruction, identifying the affected Acquired Assets, the amount of insurance, if any, covering such Acquired Assets and the amount, if any, which Seller is otherwise entitled to receive as a consequence.  If the loss of or damage to the assets so destroyed or damaged have a Material Adverse Effect, then Buyer shall have the right, exercisable prior to Closing by Buyer's written notice to Seller no later than ten Business Days after receipt of Seller's notice hereunder, to terminate this Agreement upon notice to Seller, or accept such Acquired Assets in their destroyed or damaged condition in which event Buyer shall be entitled to the proceeds of any insurance or other proceeds payable with respect to such loss.  In no event shall Buyer become entitled to any insurance proceeds in respect of any Excluded Assets.

## ARTICLE 12
## MISCELLANEOUS

12.1    Expenses.  Except as otherwise provided elsewhere in this Agreement, each party shall pay its own expenses incident to this Agreement and the transactions hereby contemplated.

In the event of any litigation between the parties arising out of this Agreement, the prevailing party shall be entitled to recover from the other party its court costs and reasonable attorneys' fees and expenses at the trial and all appellate levels.

12.2   <u>Governing Law</u>.  This Agreement will be governed by and construed under the laws of the State of Florida and the provisions of the Bankruptcy Code, without regard to conflict-of-laws principles that would require the application of any other law.

12.3   <u>Notices</u>.  Except as otherwise expressly provided in this Agreement, any notice required or permitted to be given under this Agreement by any party to any other party shall be in writing and shall be (i) personally delivered, (ii) sent postage prepaid by certified or registered mail, (iii) sent by overnight express carrier, next Business Day delivery guaranteed, or (iv) sent by facsimile transmission, in each case to the party being notified at its address and/or fax number as set forth below, or at such other address and/or fax number as the party being notified may have designated for such purpose in a notice given to the other parties.  Such notice shall be deemed received upon the earliest of the following to occur: (i) upon personal delivery; (ii) on the third Business Day following the day sent, if sent by registered or certified mail; (iii) on the next Business Day following the day sent, if sent by overnight express courier, next Business Day delivery guaranteed; and (iv) on the day sent, or if such day is not a Business Day on the next Business Day after the day sent, if sent by facsimile transmission with telecopy confirmation of transmission received by sender.  The notice addresses and fax numbers for the parties are:

If to Seller:          Adams Street Lofts, LLC
                       _____
                       _____
                       Attn: _____
                       Fax No.: (___)____-_____

With a copy to:        Berger Singerman LLP
                       125 South Gadsden Street, Suite 300
                       Tallahassee, Florida 32301
                       Attn:  Brian G. Rich, Esq.
                       Fax No.: (850) 561-3013

If to Buyer:           _____
                       _____
                       _____
                       Attn:
                       Fax No.:

With a copy to:        _____
                       _____
                       _____
                       Attn: _____
                       Fax No.: _____

12.4    Section and Other Headings.   Section or other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

12.5    Schedules and Exhibits; Recitals.   Each schedule, exhibit, and annex attached hereto shall be deemed to be a part of this Agreement to the same extent as if set forth verbatim in the body of this Agreement.  The recitals set forth in this Agreement are incorporated into and made a part of this Agreement.

12.6    Severability.   If any provision of this Agreement should be held to be invalid or unenforceable, the validity and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

12.7    Parties; No Third Party Beneficiaries.   This Agreement shall be binding upon and enforceable against, and shall inure solely to the benefit of, the parties hereto and their respective successors and permitted assigns, including any liquidating trustee, responsible person, or similar representative for the Sellers or the Sellers' estate appointed in connection with the Bankruptcy Case.  Nothing herein shall confer any rights or remedies to any Person which is not a party hereto.  Buyer may not assign its rights or obligations under this Agreement to any Person.

12.8    Counterparts.   This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Agreement by signing any such counterpart.

12.9    Facsimile Signature.   This Agreement may be delivered by facimile or other electronic transmission with the same force and effect as an original signature.

12.10   Further Assurances.   Subject to the terms of this Agreement and to any required approvals or orders of the Bankruptcy Court, each of Buyer and Seller will execute such further documentation or take such further actions as the other party may reasonably request to effectuate the transfer of the Acquired Assets and implement this Agreement.

12.11   Exclusive Jurisdiction.  Without limiting any party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all claims, actions, causes of action, suits and Proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 12.3 hereof.

12.12   Non-Survival of Representations, Warranties, Covenants and Agreements. Except as otherwise specifically provided in this Agreement, the respective representations, warranties, and covenants of the Seller contained herein, or in any certificates or other documents delivered prior to the Closing, shall expire with, and be terminated and extinguished by, the Closing, and thereafter Seller shall not have any liability whatsoever with respect to any such representation, warranty, covenant or agreement.  Each of the parties hereto intends to shorten the statute of limitations and agrees that no claims or causes of action may be brought against the

other party arising out of, or based upon, any such representation, warranty, covenant or agreement. Under no circumstances shall Seller be liable for any monetary damages to Buyer hereunder, and return of the Deposit or specific performance shall be Buyer's exclusive remedy for Seller's default.   The provisions of this Section 12.12 and the other sections of this Article 12 shall survive the Closing.

12.13   Entire Agreement.   This Agreement sets forth the entire understanding of the parties hereto with respect to the transactions contemplated hereby and constitutes a complete statement of the terms of such transactions.

12.14   Amendments.   This Agreement may be amended or modified only by written instrument duly executed by the parties hereto.

12.15   Governing Law.   This Agreement shall be governed by the laws of the State of Florida, exclusive of its choice of law principles.

12.16   Waiver.   Any term or condition of this Agreement may be waived at any time by the party which is entitled to the benefit thereof, but only if such waiver is evidenced by a writing signed by such party.  No failure on the part of any party hereto to exercise, and no delay in exercising any right, power, or remedy created hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or remedy by any party preclude any other or further exercise thereof or the exercise of any other right, power, or remedy.  No waiver by any party hereto of any breach of or default in any term or condition of this Agreement shall constitute a waiver of or assent to any succeeding breach of or default in the same or any other term or condition hereof.

12.17   Calculation of Time Period.   When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

12.18   Waiver of Jury Trial.   **EACH PARTY TO THIS AGREEMENT WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.**

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

SELLER:

ADAMS STREET LOFTS, LLC

By:_____
Name:
Title:

BUYER:

_____

By:_____
Name:
Title:

5888178-1

**EXHIBIT A**
**Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

IN RE:

ADAMS STREET LOFTS, LLC

       Debtor.

Case No.

Chapter 11 Case

_____ /

**ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS; (B) AUTHORIZING AND APPROVING THE ASSET
PURCHASE AGREEMENT INCLUDING TREATMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

      **THIS CAUSE** came before the Court on _____, 2014 at __:___ __.m. prevailing

local time upon the motion, dated _____, 2014 of the above-captioned debtor and debtor-in-

possession (the "Debtor") pursuant to (i) sections 105, 363, 364 and 365 of the Bankruptcy Code,

11 U.S.C. §§101—1532 (the "Bankruptcy Code"), and (ii) Bankruptcy Rules 2002(a)(2), 6004,

6006 and 9014 for Entry of an Order (A) Approving Competitive Bidding and Sale Procedures;

(B) Approving Form and Manner of  Notices; (C) Approving Form of Asset Purchase

Agreement; (D) Scheduling Dates To Conduct Auction and Hearing to Consider Final Approval

of Sale, Including Treatment of Executory Contracts and Unexpired Leases; (E) Authorizing

Sale of Substantially all the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances

and Interests; and (F) Granting Related Relief (the "Sale Motion") [ECF No. ___][1], as more

particularly described in the Sale Motion; and a hearing having been held to consider the relief

requested in the Sale Motion (the "Sale Approval Hearing"); and this Court having entered an

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in, as applicable,
the Sale Motion or that certain form Asset Purchase Agreement.

order dated _____, 2014 (the "Bidding Procedures Order") [ECF No. ____] authorizing the Debtor to solicit and consider offers for the Acquired Assets and conduct the Auction in accordance with the terms and conditions of the Bidding Procedures (as such term is defined in the Bidding Procedures Order) and approving, *inter alia*, (i) the Bidding Procedures; (ii) the form and manner of notice of the Auction, and the Sale Approval Hearing; and (iii) procedures relating to the assumption and assignment of certain unexpired leases and executory contracts, including notice of proposed Cure Costs; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(1) and 1334(a); and consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and upon consideration of all of the evidence presented by the Debtor and admitted by the Court without objection in support of the relief sought by the Sale Motion, including proffers of testimony on behalf of the Debtor and the Purchaser (as such term is defined in this Order); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Approval Hearing; and upon the record of the Sale Approval Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[2]

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

---

[2]   All findings of fact and conclusions of law announced by the Court at the Sale Approval Hearing are hereby incorporated herein.

B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. The Court has jurisdiction over this matter and over the Debtor's estate and its property pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 11 case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(g), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and this Order shall take effect immediately upon its entry.

E. The Asset Purchase Agreement is substantially in the form approved by the Bidding Procedures Order. _____ (the "Purchaser") is an entity formed for the purpose of acquiring substantially all of the Debtor's assets.

F. The Acquired Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

G. The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) sections 102, 105, 363, and 365 of the Bankruptcy Code and (ii) Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

H. On August 21, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern

District of Florida (the "Bankruptcy Court" or this "Court").  Since the Petition Date, the Debtor has continued to operate its business and manage its properties as debtor-in possession pursuant to Bankruptcy Code sections 1107 and 1108.

I.        This Court entered the Bidding Procedures Order on August _____, 2014, (i) approving competitive bidding and sale procedures; (ii) approving the form and manner of notices; (iii) approving the form of Asset Purchase Agreement (iv) scheduling dates to conduct the auction and hearing to consider final approval of sale, including treatment of executory contracts and unexpired leases; (v) authorizing sale of substantially all the Debtor's assets free and clear of all liens, claims, encumbrances and interests; and (vi) granting certain related relief.

J.        Actual written notice of, and a reasonable opportunity to object and be heard with respect to, the Sale Approval Hearing, the Auction, the Sale Motion and the transactions contemplated by the Asset Purchase Agreement has been afforded to all known interested entities, including, but not limited to the following parties: (i) all creditors or their counsel known to the Debtor to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Acquired Assets; (ii) the Office of the United States Trustee; (iii) all applicable federal, state and local taxing and regulatory authorities of the Debtor or recording offices or any other governmental authorities that, as a result of the sale of the Acquired Assets, may have claims, contingent or otherwise, in connection with the Debtor's ownership of the Acquired Assets or have any known interest in the relief requested by the Sale Motion; (iv) the state and local environmental agencies in the jurisdictions where the Debtor owns or leases real property; (v) counsel to Centennial Bank; (vi) the United States Attorney's office; (vii) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (viii) all parties to any litigation involving the Debtor; (ix) all of the Debtor's current

employees and those former employees known to assert a claim against the Debtor; (x) all counterparties to any executory contract or unexpired lease of the Debtor; (xi) all other known creditors and interest holders of Debtor; and (xii) all potential bidders previously identified or otherwise known to the Debtor.

K.      The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion.

L.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Sale Approval Hearing and the transactions contemplated by the Asset Purchase Agreement has been provided in accordance with sections 102(1), 363(b) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014. The Debtor has also complied with all obligations to provide notice of the Sale Motion, the Auction, the Sale Approval Hearing and the transactions contemplated by the Asset Purchase Agreement as required by the Asset Purchase Agreement, the Bidding Procedures Order and other applicable orders of this Court, including with respect to notice of the assumption, sale and assignment of the Acquired Contracts. Notice of the Sale Approval Hearing, the Auction, the Sale Motion and the sale of the Acquired Assets was also published in *The Wall Street Journal*, national edition on _____, 2014 [ECF No. ____]. In addition, copies of the aforementioned were available for review on the Pacer website, http://ecf.flsb.uscourts.gov. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, the Auction, the Sale Approval Hearing, or of the entry of this Order is necessary or shall be required.

M.      The Debtor has demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the sale of the Acquired Assets and the

transactions contemplated by the Asset Purchase Agreement outside of the ordinary course of business.  Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of deterioration of the value of the Acquired Assets if the sale is not consummated quickly; (ii) the Asset Purchase Agreement constitutes the highest or best offer obtained as a result of a competitive sale process designed and structured to realize maximum value for the Acquired Assets; (iii) the Asset Purchase Agreement and the Closing will present the best opportunity to realize the value of the Debtor's assets; and (iv) unless the sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Asset Purchase Agreement, there is a substantial risk of liquidation.

N.    The Bidding Procedures set forth in the Bidding Procedures Order were non collusive, proposed and executed in good faith and were substantively and procedurally fair to all parties.

O.    The Debtor conducted the sale and the Auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order.  As demonstrated by (i) testimony and other evidence proffered or adduced at the Sale Approval Hearing, and (ii) the representations of counsel made on the record at the Sale Approval Hearing, through marketing efforts and a competitive sale process which was conducted in accordance with the Bidding Procedures Order, the Debtor (a) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify and submit their highest or otherwise best offer to purchase all or substantially all of the Debtor's assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets, and (c) considered any bids submitted on or before the Bid Deadline (as defined in the Bidding Procedures Order).

5887881-1

P.     The Purchaser is the Prevailing Bidder (as defined in the Sale Motion) for the Acquired Assets in accordance with the Bidding Procedures Order.  The Purchase Price of the Purchaser, upon the terms and conditions set forth in the Asset Purchase Agreement, including the form and total consideration to be realized by the Debtor pursuant to the Asset Purchase Agreement: (i) is the highest and best offer received by the Debtor as a result of the Auction process; (ii) is fair and reasonable; (iii) is in the best interests of the Debtor's creditors and estate; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Acquired Assets; and (v) will provide a greater recovery for the Debtor's creditors and other interested parties than would be provided by any other practically available alternative.

Q.     The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of section 363(m) and (n) of the Bankruptcy Code with respect to all of the Acquired Assets.  The Asset Purchase Agreement was negotiated and entered into in good faith and without collusion or fraud of any kind.  Neither the Debtor nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Asset Purchase Agreement or to the consummation of the sale transaction and transfer of the Acquired Assets.  The Purchaser is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.  The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

R.     The Debtor has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the consummation of such transactions has been duly and validly authorized by all necessary corporate authority of the

Debtor.  No consents or approvals, other than as may be expressly provided for in the Asset Purchase Agreement, are required by the Debtor.

S.      Except as otherwise provided in the Asset Purchase Agreement, the Acquired Assets shall be sold free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmen's and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtor or the Debtor's predecessors or affiliates, claims (as that term is defined in 11 U.S.C. §101(5)), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (other than as expressly provided in the Asset Purchase Agreement; collectively, "Liens, Claims,

Encumbrances and Interests") with such Liens, Claims, Encumbrances and Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and the Purchaser would not enter into the Asset Purchase Agreement to purchase the Acquired Assets otherwise.

T.     The transfer of the Acquired Assets to the Purchaser is a legal, valid and effective transfer of the Acquired Assets, and, except as may otherwise be provided in the Asset Purchase Agreement, shall vest the Purchaser with all right, title and interest of the Debtor to the Acquired Assets free and clear of any and all Liens, Claims, Encumbrances and Interests.  Except as specifically provided in the Asset Purchase Agreement or this Order, the Purchaser shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Acquired Assets being sold by the Debtor.

U.     The transfer of the Acquired Assets to the Purchaser free and clear of all Liens, Claims, Encumbrances and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests as all such Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Acquired Assets received by the Debtor in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets and subject to any claims and defenses the Debtor or other parties may possess with respect thereto.  All persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in the Debtor or the Acquired Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances or Interests against the Purchaser, any of its assets, property, successors or assigns, or the Acquired Assets.

V.       The Debtor may sell the Acquired Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  Those (i) holders of Liens, Claims, Encumbrances and Interests and (ii) non-debtor parties to the Acquired Contracts, who did not object, or who withdrew their objections, to the sale of the Acquired Assets and the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All objections to the Sale Motion have been resolved or overruled.

W.       If the sale of the Acquired Assets to the Purchaser was not free and clear of all Liens, Claims, Encumbrances and Interests, or if the Purchaser would, or in the future could, be liable for any of the Liens, Claims, Encumbrances and Interests, the Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the sale or the transaction contemplated by the Asset Purchase Agreement, thus adversely impacting the Debtor, its estate and its creditors.

X.       The assumption and assignment of the Acquired Contracts pursuant to the terms of this Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtor and its estate, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

Y.       The Debtor and Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), (B) and 365(f), in connection with the sale and assumption and assignment of the Acquired Contracts to the extent provided under the Asset Purchase Agreement.  The Purchaser has demonstrated adequate assurance of future performance with respect to any Acquired Contract pursuant to section 365(b)(1)(C) of the Bankruptcy Code.  Except as provided in the Asset Purchase Agreement and

this Order, the Acquired Contracts are assignable notwithstanding any provisions contained therein to the contrary.

Z.      To maximize the value of the Acquired Assets, it is essential that the Closing occur within the time constraints set forth in the Asset Purchase Agreement or as otherwise agreed by the Debtors and the Purchaser.  Time is of the essence in consummating the transaction contemplated by the Asset Purchase Agreement.

AA.     In the absence of a stay pending appeal, the Purchaser is acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Asset Purchase Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(g).

BB.     The transactions contemplated under the Asset Purchase Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor and/or the Debtor's estate, there is not substantial continuity between the Purchaser and the Debtor, there is no common identity between the Debtor and the Purchaser, there is no continuity of enterprise between the Debtor and the Purchaser, the Purchaser is not a mere continuation of the Debtor or its estate, and the Purchaser does not constitute a successor to the Debtor or its estate.  Other than the Assumed Liabilities, the Purchaser shall have no obligations with respect to any liabilities of the Debtor, except for liabilities and obligations under the Asset Purchase Agreement.

CC.     The sale of the Acquired Assets is pursuant to a plan of reorganization.

DD.     The Purchase Price for the Acquired Assets is the highest and best offer received by the Debtor, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the

5887881-1

Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Acquired Assets.

EE.    Given all of the circumstances of the chapter 11 case and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the transactions contemplated by the Asset Purchase Agreement constitute a reasonable and sound exercise of the Debtor's business judgment, are in the best interests of the Debtor, its estate, its creditors and other parties in interest and should be approved.

FF.    The consummation of the transactions contemplated by the Asset Purchase Agreement is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The relief requested in the Sale Motion is granted and approved and the transactions contemplated thereby and by the Asset Purchase Agreement are approved, as set forth in this Order.

2.    All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order or are withdrawn or overruled as set forth in the record of the Sale Approval Hearing.  To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.      Notice of the Sale Motion, Sale Approval Hearing, the Auction and the transactions contemplated by the Asset Purchase Agreement was fair and adequate and appropriate under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006  and the Bidding Procedures Order.

**Approval of Sale**

4.      The Purchaser's offer for the Acquired Assets, as embodied in the Asset Purchase Agreement, was deemed a Qualified Bid (as defined in the Bidding Procedures Order) and is the highest and best offer for the Acquired Assets (thereby providing a greater recovery for the Debtor's estate than would be provided by any other available alternative), and the Asset Purchase Agreement, including all other ancillary documents, and all of the terms and conditions thereof (the form of which is attached hereto as Exhibit "A," and which the Debtor and Purchaser have agreed is substantially final for purposes of this Order, and shall not materially be altered or amended between now and Closing without further Order of this Court after notice and opportunity to be heard in the event of an objection), and the transactions contemplated thereby, including the Credit Bid, are hereby approved in all respects.

5.      The sale of the Acquired Assets and the consideration provided by the Purchaser under the Asset Purchase Agreement, including the amount provided pursuant to the credit did is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.      The Purchaser and the Backup Bidder are hereby granted and are entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other

5887881-1

court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Asset Purchase Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur, such validity and enforceability shall be governed in all respects by the original provisions of this Order and the Asset Purchase Agreement, as the case may be.

7.     The Debtor is hereby authorized to fully assume, perform under, consummate and implement the terms of the Asset Purchase Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement, this Order and sale of the Acquired Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Acquired Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Asset Purchase Agreement, without any further corporate action or orders of this Court. Neither the Purchaser nor the Debtor shall have an obligation to proceed with the Closing under the Asset Purchase Agreement until all conditions precedent to their respective obligations to do so have been met, satisfied or waived.

8.     Effective as of the Closing (a) the sale of the Acquired Assets by the Debtor to the Purchaser shall constitute a legal, valid and effective transfer of the Acquired Assets, notwithstanding any requirement for approval or consent by any person, and vests the Purchaser with all right, title and interest of the Debtor in and to the Acquired Assets, free and clear of all Liens, Claims, Encumbrances and Interests of any kind, pursuant to section 363(f) of the

14

Bankruptcy Code, and (b) the assumption of any Assumed Liabilities by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtor of all liability with respect to any Assumed Liabilities.

**Transfer of Assets**

9.      Except to the extent specifically provided in the Asset Purchase Agreement, upon the Closing, the Debtor shall be, and hereby is, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell the Acquired Assets to the Purchaser.  The sale of the Acquired Assets vests the Purchaser with all right, title and interest of the Debtor to the Acquired Assets free and clear of any and all Liens, Claims, Encumbrances and Interests and other liabilities, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens, Claims, Encumbrances and Interests to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Acquired Assets.  Following the Closing Date, no holder of any Liens, Claims, Encumbrances and Interests in the Acquired Assets may interfere with the Purchaser's use and enjoyment of the Acquired Assets based on or related to such Liens, Claims, Encumbrances and Interests, or any actions that the Debtor may take in its chapter 11 case and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Asset Purchase Agreement or this Order.

10.      The provisions of this Order authorizing the sale of the Acquired Assets free and clear of Liens, Claims, Encumbrances and Interests and the assumption of the Assumed Liabilities, shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in

order to effectuate, consummate and implement the provisions of this Order.  The previous sentence notwithstanding, the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Encumbrances and Interests in the Acquired Assets.

11.    On or before the Closing Date, the Debtor's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances or Interests of any kind against the Acquired Assets, as such Liens, Claims, Encumbrances or Interests may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances or Interests in or against the Acquired Assets shall not have delivered to the Debtor prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances or Interests that the person or entity has with respect to the Acquired Assets, the Debtor is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Acquired Assets prior to or after the Closing, and the Purchaser is authorized to file such documents after the Closing.

12.    All of the Debtor's interests in the Acquired Assets to be acquired by the Purchaser under the Asset Purchase Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vest in the Purchaser.  Upon the occurrence of the Closing, this Order shall be construed and considered for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets acquired by the

5887881-1

Purchaser under the Asset Purchase Agreement and/or a bill of sale or assignment transferring indefeasible title and interest in the Acquired Assets to the Purchaser.

13.     Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, the Purchaser is not assuming nor shall it be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Acquired Assets prior to the consummation of the transactions contemplated by the Asset Purchase Agreement, or any liabilities to the Debtor's operations or the Acquired Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Asset Purchase Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any affiliate of the Purchaser.

14.     Except as otherwise expressly provided in the Asset Purchase Agreement, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Acquired Assets are directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

**Contracts to be Assigned**

15.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, the Debtor's assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement of each Acquired Contract is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied effective as of the Closing Date.

5887881-1

16.     The Debtor is hereby authorized and directed in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing Date of the sale of the Acquired Assets the Acquired Contracts free and clear of all Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Acquired Contracts to the Purchaser.

17.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest in each Acquired Contract.  The Debtor shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing, as further provided in the Asset Purchase Agreement.

18.     The Acquired Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Acquired Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.

19.     Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, and except as otherwise provided by this Order, the Purchaser shall, on or promptly after the Closing Date, pay the Cure Costs of or relating to any Acquired Contract as set forth in the Cure Notice (as defined in the Bidding Procedures Order) served by the Debtor on each of the parties to Acquired Contracts in the amount(s) listed thereon.  The non-Debtor parties to the Acquired Contracts are forever bound by such Cure Costs and are hereby enjoined from taking any action against the Debtor with respect to any claim for cure under any Acquired Contract.  The payment of the

applicable Cure Costs (if any) by the Purchaser shall (a) effect a cure of all defaults existing thereunder as of the date that such executory contracts or unexpired leases are assumed and (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default. The Purchaser shall then have assumed the Acquired Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtor of such Acquired Contracts shall not be a default thereunder.  After the payment of the relevant Cure Costs by the Purchaser, neither the Debtor nor the Purchaser shall have any further liabilities to the counterparties to the Acquired Contracts other than the Purchaser's obligations under the Acquired Contracts that accrue and become due and payable on or after the date that such Acquired Contracts are assumed.

20.    Any provisions in any Acquired Contracts that prohibit or condition the assignment of such Acquired Contract or allow the party to such Acquired Contracts to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Acquired Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  For the avoidance of doubt, the assumption or assignment of any Acquired Contract shall not be a "change of control", however such term may be defined in the relevant Acquired Contract.   All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of the Acquired Contracts have been satisfied.

21.    Any party having the right to consent to the assumption or assignment of any Acquired Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

22.     Upon Purchaser's payment or funding reimbursement of the relevant Cure Costs, if any, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Acquired Contracts and the Debtor shall be relieved, effective as of the Closing, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Acquired Contracts.

23.     The Purchaser is able to provide adequate assurance of future performance under the relevant Acquired Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

24.     There shall be no assignment fees, increases, rent-acceleration or any other fees charged to the Purchaser or the Debtor as a result of the assumption and assignment of the Acquired Contracts.

25.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all counterparties to the Acquired Contracts are forever barred and permanently enjoined from raising or asserting against the Debtor or Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Acquired Contracts, existing as of the date that such contracts are assumed or arising by reason of the Closing.

26.     Neither Purchaser nor any successor of Purchaser shall be responsible for or have any Liens, Claims, Encumbrances or Interests or obligations arising out of any of the contracts, agreements or understandings that are Not Acquired Contracts.

**Additional Provisions**

27.     This Order and Asset Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtor and the Purchaser, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtor's estate or any trustee appointed in a Chapter 7 case if this

case is converted from Chapter 11, any committee, trust or other entity formed or created under any plan that is confirmed and becomes effective in this case, all creditors of the Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets.

28.    Each and every federal, state and local government agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

29.    To the extent prohibited by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 case or the consummation of the transactions contemplated by the Asset Purchase Agreement.

30.    Except to the extent expressly included in the Assumed Liabilities, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtor and its estate, all debt security holders, equity security holders, the Debtor's employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, providers, trade and other creditors asserting or holding a Lien, Claim, Encumbrance or Interest of any kind or nature whatsoever against, in or with respect to the Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Acquired Assets, the operation of the

Debtor's businesses prior to the Closing Date or the transfer of the Acquired Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance or Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates, financial advisors and representatives (each of the foregoing in its individual capacity), or the Acquired Assets.

31.     Other than the Assumed Liabilities or as otherwise provided for in the Asset Purchase Agreement, the Purchaser shall have no obligations with respect to any liabilities of the Debtor and the Purchaser has not purchased any of the Excluded Assets.

32.     The Purchaser is not and shall not be deemed a "successor" to the Debtor or the Debtor's estate as a result of the consummation of the transactions contemplated by the Asset Purchase Agreement or any other event occurring in the chapter 11 case under any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of the Debtor and/or the Debtor's estate including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtor or against an insider of the Debtor, or similar liability except as otherwise expressly provided in the Asset Purchase Agreement.  Except to the extent the Purchaser assumes the Assumed Liabilities pursuant to the Asset Purchase Agreement, neither the purchase of the Acquired Assets by the Purchaser, nor the fact that the Purchaser is using any of the Acquired Assets previously operated by the Debtor, will cause the Purchaser to be deemed a successor in any respect to the Debtor's businesses within the meaning of (i) any foreign, federal,

state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), (ii) under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine, (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtor is a party, (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtor, (v) the cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., (vii) any liabilities, debts or obligations of or required to be paid by, the Debtor for any taxes of any kind for any period,

(viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Acquired Assets prior to the Closing, and (ix) any litigation.

33.     Subject to the terms of the Asset Purchase Agreement, the Asset Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and the Purchaser, without further action or order of the Court, provided that any such waiver, modification, amendment or supplement is not materially less favorable to the Debtor.  In the event a modification is materially less favorable to the Debtor, the Debtor shall file and serve a notice of such modification.  If no party-in-interest files a written objection with the Court within five (5) business days, such modification shall be deemed approved without further order of the Court, but the Court may enter any such further order as may be necessary.

34.     The failure specifically to include any particular provisions of the Asset Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor and the Purchaser that the Asset Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to the Closing.

35.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36.     To the extent this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this chapter 11 case, the terms of this Order shall govern and control.

5887881-1

37.     To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

38.     The provisions of this Order are non-severable and mutually dependent.

39.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 case, or in any subsequent or converted case of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

40.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Sale Motion shall be deemed to provide sufficient notice of the Debtor's request for relief from any stay.  In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Purchaser are free to close under the Asset Purchase Agreement at any time, subject to the terms of the Asset Purchase Agreement.  In the absence of any person or entity obtaining a stay pending appeal, if the Debtor and the Purchaser close the transactions contemplated by the Asset Purchase Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Asset Purchase Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

41.     This Court shall retain exclusive jurisdiction to construe, interpret and enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Asset Purchase Agreement in all respects as may be necessary to protect the rights, interests, claims and defenses of all parties in interest affected thereby, and to decide any disputes concerning this Order and

25

the Asset Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or affected thereby, or any issues relating to the Asset Purchase Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Acquired Assets and any Acquired Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Acquired Assets free and clear of all Liens, Claims, Encumbrances and Interests.

       **DONE and ORDERED** in Chambers, at Tallahassee, Florida on _____.


_____
Karen K. Specie
United States Bankruptcy Court

Submitted by

Brian G. Rich, Esq.
BERGER SINGERMAN LLP
125 South Gadsden Street, Suite 300
Tallahassee, Florida  32301
Tel. (850) 561-3010
Fax (850) 561-3013
E-mail:  brich@bergersingerman.com

Copies furnished to:
All interested parties

26

5887881-1

**EXHIBIT A**

**Asset Purchase Agreement (Final)**

5887881-1

## EXHIBIT B

**Proposed form of Bid Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

IN RE:                                        Case No.

ADAMS STREET LOFTS, LLC                       Chapter 11 Case

      Debtor.

_____/

**ORDER APPROVING DEBTOR'S EMERGENCY MOTION FOR ENTRY OF ORDER
(A) APPROVING COMPETITIVE BIDDING AND SALE PROCEDURES;
(B) APPROVING FORM AND MANNER OF NOTICES; (C) APPROVING FORM OF
ASSET PURCHASE AGREEMENT; (D) SCHEDULING DATES TO CONDUCT
AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE,
INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; (E) AUTHORIZING SALE OF SUBSTANTIALLY ALL THE DEBTOR'S
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS; AND (F) GRANTING RELATED RELIEF**

      **THIS CAUSE** came before the Court on _____, 2014 at _____ __.m. in

Tallahassee, Florida upon the Emergency *Motion For Entry of Order (A) Approving Competitive*

*Bidding and Sale Procedures; (B) Approving Form and Manner of Notices; (C) Approving Asset*

*Purchase Agreement; (D) Scheduling Dates To Conduct Auction and Hearing to Consider Final*

*Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases; (E)*

*Authorizing Sale of Substantially All The Debtors' Assets Free and Clear of All Liens, Claims,*

*Encumbrances and Interests; and (F) Granting Related Relief* (the "Bid Procedures Motion" or

the "Motion")[1] [ECF No. ____] filed by Adams Street Lofts, LLC, the above-captioned debtor

and debtor in possession (the "Debtor"). Having reviewed the Bid Procedures Motion and the

record in these cases, and having considered the statements of counsel for the Debtor, and the

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion, the bidding procedures attached hereto as <u>Exhibit 1</u> (the "Bidding Procedures") or that certain proposed form of Asset Purchase Agreement as applicable.

evidence adduced by the Debtor (including proffers of evidence admitted into evidence without objection), the Court finds that establishing procedures for a sale of the Acquired Assets (as defined below) in accordance with this Bidding Procedures Order, is in the best interests of the Debtor's estate. Accordingly,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014;

B.    The Court has jurisdiction over the Motion and the transaction contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409;

C.    The statutory bases for the relief requested in the Motion are (i) sections 105, 363, 364 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and (ii) Bankruptcy Rules 2002(a)(2), 6004, 6006 and 9014;

D.    Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Sale Approval Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to creditors, equity holders and other parties in interest;

E.    The Debtor's proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of substantially all of the Debtor's assets as contemplated by the Asset

2

Purchase Agreement (the "Acquired Assets"), and the Bidding Procedures to be employed in connection therewith;

F.       The Debtor articulated good and sufficient reasons for the Court to:  (i) approve the Bidding Procedures; (ii) schedule the Sale Approval Hearing, approve the manner of notice of the Motion and the Sale Approval Hearing, and set the Sale Objection Deadline (as defined below); and (iii) approve the procedures for the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assumed Executory Contracts"), including notice of proposed cure amounts;

G.       The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate, its creditors, equity holders and other parties in interest; and

H.       The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets.

IT IS THEREFORE ORDERED THAT:

1.       The Motion is GRANTED as set forth herein.

2.       All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.       The form of Asset Purchase Agreement attached as <u>Exhibit A</u> is incorporated herein and is approved to be used as the form of contract for the Auction.

4.       The Bidding Procedures, attached hereto as <u>Exhibit 1</u>, are hereby incorporated herein and approved in their entirety.  The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3

5.      As further described in the Bidding Procedures, the deadline for submitting bids for the Acquired Assets (the "Bid Deadline") is October 14, **2014 at 4:00 p.m. (prevailing Eastern Time)**.  No Bid shall be deemed to be a Qualified Bid or otherwise considered for any purposes unless such Bid meets the requirements set forth in the Bidding Procedures.

6.      The Debtor may sell the Acquired Assets, and enter into the transactions contemplated by the Asset Purchase Agreement by conducting an Auction in accordance with the Bidding Procedures.

7.      If Qualified Bids are timely received by the Debtor in accordance with the Bidding Procedures, the Auction shall take place on **October 15, 2014 at 10:00 a.m. (prevailing Eastern Time)** at Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL 32301, or such other place and time as the Debtor shall notify all Qualified Bidders, any official committee of unsecured creditors appointed in this chapter 11 case (the "Committee"), and other invitees.  The Auction shall be conducted in accordance with the Bidding Procedures.

8.      The Sale Approval Hearing shall be held before the Court on **October 17, 2014 at _____ __.m. (prevailing Eastern Time),** or at such earlier date as counsel and interested parties may be heard.

9.      Objections, if any, to the Sale contemplated by the Asset Purchase Agreement must:  (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the Northern District of Florida, United States Bankruptcy Courthouse, 110 East Park Avenue, Suite 100, Tallahassee, FL 32301 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on the earlier of three (3) business days prior to the date of the Auction **(October 10, 2014)** (the "Sale Objection Deadline"); and

4

(d) be served upon (i) counsel to the Debtor, Berger Singerman, LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL 32301 Attn: Brian G. Rich, Esq. (ii) counsel to the Committee, (iii) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: _____, and (iv) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn: _____, Esq.,  in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the same day.

       10.    The notice, substantially in the form attached hereto as <u>Exhibit 2</u> (the "Sale Notice"), is hereby approved.

       11.    On or before three (3) business days after entry of this Bidding Procedures Order, the Debtor will cause the Sale Notice to be sent by first-class mail postage prepaid, to the following: (a) all creditors or their counsel known to the Debtor to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Acquired Assets; (b) the Office of the United States Trustee; (c) all applicable federal, state and local taxing and regulatory authorities of the Debtor or recording offices or any other governmental authorities that, as a result of the sale of the Acquired Assets, may have claims, contingent or otherwise, in connection with the Debtor's ownership of the Acquired Assets or have any known interest in the relief requested by the Motion; (d) the state and local environmental agencies in the jurisdictions where the Debtor owns or leases real property; (e) the United States Attorney's office for the Northern District of Florida; (f) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of entry of this Bidding Procedures Order; (g) counsel to the Committee, if any; (h) all parties to any litigation involving the Debtor; (i) all counterparties to any executory contract or unexpired lease of the Debtor; (j)

all other known creditors and interest holders of the Debtor; and (k) all potential bidders previously identified or otherwise known to the Debtor.

12. **Copies of exhibits to the Bid Procedures Motion (including the Asset Purchase Agreement) may be obtained by request in writing, by telephone, or via email from counsel to the Debtors Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL 32301, Attn: Brian G. Rich, Esq.; Tel. (850) 561-3010; email at brich@bergersingerman.com, and (iii) may be found on the Pacer website, http://ecf.flsb.uscourts.gov.**

13. In addition to the foregoing, as soon as practicable, but in any event no later than five (5) business days after the entry of this Bidding Procedures Order, the Debtor shall publish the Sale Notice (modified for publication, as necessary) in *The Wall Street Journal*, national edition.

14. The notice of potential assumption and assignment of the Scheduled Contracts (as defined in the Cure Notice), substantially in the form attached hereto as <u>Exhibit 3</u> (the "Cure Notice"), is hereby approved.

15. On or before three (3) business days after the entry of this Bidding Procedures Order, the Debtor shall serve by first class mail or hand delivery the Cure Notice on all non-Debtor parties to the Scheduled Contracts. The Cure Notice shall identify the Scheduled Contracts and provide the cure amounts that the Debtor believes must be paid to cure all prepetition defaults under the Scheduled Contracts (collectively, the "Cure Amounts" and individually, a "Cure Amount").

16. Unless the non-Debtor party to a Scheduled Contract files an objection (the "Cure Amount Objection") to its scheduled Cure Amount by the Sale Objection Deadline

and serves a copy of the Cure Amount Objection so as to be received no later than the Sale Objection Deadline on the same day to: (a) the Debtor, 420 North Adams Street, Tallahassee, FL 32301, Attn: _____; (b) counsel for the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL 32301, Attn: Brian G. Rich, Esq.; (c) counsel to the Committee, if any; (d) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: _____; and (e) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn: _____, Esq.; such non-Debtor party shall be deemed to consent to the Cure Amount proposed by the Debtor and shall be forever enjoined and barred from seeking an additional amount on account of the Debtor's cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtor, its estate or the Prevailing Bidder on account of the assumption and assignment of the Scheduled Contracts and shall be deemed to have consented to the proposed assumption and assignment. In addition, if no timely Cure Amount Objection is filed, the Prevailing Bidder shall enjoy all the rights and benefits under all Scheduled Contracts without the necessity of obtaining any party's written consent to the Debtor's assumption and assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment or to object or contest that the Prevailing Bidder has not provided adequate assurance of future performance. Information regarding adequate assurance of future performance submitted as party of any Qualified Bid with respect to Scheduled Contracts shall be provided, upon request to Debtor's counsel made on or before the Bid Deadline, to the requesting non-Debtor party to a Scheduled Contract within 24 hours of the Bid Deadline.

7

17.    The non-Debtor parties to the Scheduled Contracts shall have until the Sale Approval Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption and assignment of such Scheduled Contract solely on the issue of whether the Prevailing Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (an "Adequate Assurance Objection"); provided, however, that any objections to the assumption and assignment of Scheduled Contracts that do not relate to the issue of whether the Prevailing Bidder can provide adequate assurance of future performance must be filed by the Sale Objection Deadline.

18.    In the event of a dispute regarding:  (a) any Cure Amount with respect to any Scheduled Contract; (b) the ability of the Prevailing Bidder to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption and assignment, the Cure Amounts shall be paid as soon as reasonably practicable after the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtor, with the consent of the Prevailing Bidder is authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder  without any further notice to or action, order or approval of the Court.

19.    Notwithstanding the inclusion of an executory contract or unexpired lease on any list of Scheduled Contracts, the Prevailing Bidder shall have authority, in its sole discretion, to remove any contract or lease from the list of Scheduled Contracts either (i) at the Auction, or (ii) within five (5) business days after the Bankruptcy Court sustains, in whole or in part, such non-Debtor party's Cure Amount Objection or Adequate Assurance Objection; in either such case, the Debtor shall not assume and assign such Scheduled Contract to the

8

Prevailing Bidder, as applicable, who removed such contract or lease from any list of Scheduled Contracts.

20.     Within two (2) business days after the Closing Date, the Debtor will file a complete list of the Scheduled Contracts that were assumed and assigned as Assumed Executory Contracts, as of the Closing Date, to the Prevailing Bidder.

21.     The notice of assumption and assignment of the Assumed Executory Contracts, substantially in the form attached hereto as <u>Exhibit 4</u> (the "Assumption Notice"), is hereby approved.

22.     The Sale Approval Hearing may be continued, from time to time, without further notice to creditors, equity holders or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

23.     No party submitting an offer or Bid for the Acquired Assets or a Qualified Bid shall be entitled to any expense reimbursement, breakup, termination or similar fee or payment.

24.     If an Auction is conducted, the party with the next highest and best Qualified Bid after the bid made by the Prevailing Bidder (or otherwise second best Qualified Bid at the Auction), as determined by the Debtor, in the exercise of their reasonable business judgment, will be designated as the backup bidder (the "Backup Bidder").

25.     To the extent that the Acquired Assets contain personally identifiable information, the proposed sale, upon consummation, will transfer to the Prevailing Bidder such information subject to any existing privacy policy or policies of the Debtor in place as of the date hereof governing such information.

5887546-2

26.    Except as otherwise provided in this Bidding Procedures Order, the Debtor further reserves the right, as it may determine to be in the best interests of its estate, in consultation with Centennial Bank, to:  (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate; (e) remove some or all of the Acquired Assets from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Approval Hearing in open court without further notice; and (j) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.  In making such determination, the Debtor may take account of non-price considerations, such as the risk that the purchaser will fail to close.

27.    To the extent that any chapter 11 plan confirmed in this case or any order confirming any such plan or any other order in this case (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Bidding Procedures Order, the provisions of this Bidding Procedures Order shall control.  The Debtor's obligations under this Bidding Procedures Order, the provisions of this Bidding Procedures Order shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtor, and the reorganized or reconstituted debtor, as the case may, after the effective date of a confirmed plan

10

or plans in the Debtor's case (including any order entered after any conversion of the case to case under chapter 7 of the Bankruptcy Code).

28.    To the extent there are any inconsistencies between the terms of this Bidding Procedures Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Bidding Procedures Order shall govern.

29.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(g) are hereby waived and this Bidding Procedures Order shall be effective immediately upon its entry.

30.    All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31.    The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

32.    The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.

**DONE** and **ORDERED** in Tallahassee, Florida on _____.


_____
Karen K. Specie
United States Bankruptcy Judge

Submitted by
Brian G. Rich, Esq.
BERGER SINGERMAN LLP
125 South Gadsden Street, Suite 300
Tallahassee, Florida  32301
Tel. (850) 561-3010
Fax (850) 561-3013
E-mail:  brich@bergersingerman.com

Copies furnished to:
All interested parties

11

5887546-2

# **EXHIBIT A**

(Asset Purchase Agreement)

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "<u>Agreement</u>") is entered into as of this \_\_\_\_ day of _____, 2014 by and among Adams Street Lofts, LLC, a Florida limited liability corporation, a debtor in possession under chapter 11 of the United States Bankruptcy Code ( "<u>Seller</u>"), and _____, a _____ corporation ("<u>Buyer</u>").

### <u>Recitals</u>

WHEREAS, Seller is in the real estate business and developed and sells condominium units located at 420 North Adams Street in Tallahassee, Florida, consisting of 31 units (the "<u>Project</u>"); and

WHEREAS, of the 31 units, 17 units remain unsold, and are owned by Seller and are currently being rented' and

WHEREAS, on August \_\_\_, 2014 (the "<u>Petition Date</u>"), Seller filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Northern District of Florida (the "<u>Bankruptcy Court</u>"), Case No. _____ (the "<u>Bankruptcy Case</u>"), and Seller is currently operating the Project as debtor in possession thereunder; and

WHEREAS, Seller desires to sell to Buyer and Buyer desires to purchase from Seller substantially all of the assets of Seller on the terms and conditions set forth herein and as authorized under §§ 105, 363 and 365 of the Bankruptcy Code; and

WHEREAS, Seller believes, following consultations with its advisors and consideration of its alternatives, in light of the current circumstances, that a sale of all of or substantially all of its assets is necessary to maximize value and is in the best interests of Seller and its estate, creditors, and parties-in-interest; and

WHEREAS, Seller has been actively marketing and soliciting bids for the sale of Seller's assets, and has determined that the offer of Buyer for the assets to be sold pursuant to this Agreement is the highest and best offer (in accordance with §363 of the Bankruptcy Code) received for the assets and constitutes a fair and adequate purchase price for such assets;

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## ARTICLE 1
## DEFINITIONS

In addition to the terms defined elsewhere in this Agreement, for purposes of this Agreement the following terms shall have the following respective meanings:

"Acquired Assets" has the meaning set forth in Section 2.1.

"Acquired Contracts" has the meaning set forth in Section 2.1(a).

"Acquired Equipment" has the meaning set forth in Section 2.1(c).

"Acquired Inventory" has the meaning set forth in Section 2.1(b).

"Acquired Permits" has the meaning set forth in Section 2.1(e).

"Acquired Deposits" has the meaning set forth in Section 2.1(g).

"Adjustment Date" means the last Business Day prior to Closing.

"Affiliate" means, with respect to any specified or applicable Person, any other Person who, directly or indirectly, controls, is controlled by, or is under common control with such specified or applicable Person.

"Agreement" has the meaning set forth in the opening paragraph of this document.

"Allocation" has the meaning set forth in Section 3.3.

"Applicable Law" means any statute, law, rule, regulation, or ordinance or any Order of any Governmental Entity to which a specified Person or property is subject.

"Assumed Liabilities" has the meaning set forth in Section 2.4.

"Auction" means the auction process contemplated by the Bidding Procedures.

"Bankruptcy Case" has the meaning set forth in the Recitals.

"Bankruptcy Code" and "Bankruptcy Court" have the meanings set forth in the Recitals.

"Bidding Procedures" means the procedures for the Auction of the Acquired Assets, as established by the Bidding Procedures Order.

"Bidding Procedures Order" means the Bankruptcy Court Order approving the procedures for the Auction and the provisions relating to the entry of the Sale Order by the Bankruptcy Court.

"Bill of Sale" has the meaning set forth in Section 4.2(a).

"Business" has the meaning set forth in the Recitals.

"Business Day" means a day, other than a Saturday, Sunday or federal holiday, on which major banks are open for business in Tallahassee, Florida.

"Buyer's Closing Certificate" has the meaning set forth in Section 4.3(c).

"Closing" means the consummation of the purchase and sale and assignment of the Acquired Assets and assumption of the Assumed Liabilities, as contemplated by this Agreement, on the Closing Date.

"Closing Date" means the date on which the Closing occurs.

"Code" means the Internal Revenue Code of 1986, as amended and in effect on the Closing Date.

"Qualifying Bid" has the meaning set forth in the Bidding Procedures Order.

"Qualifying Bidder" has the meaning set forth in the Bidding Procedures Order.

"Consents" means all consents and waivers of third parties (other than the Bankruptcy Court or Governmental Entities) that are required to be obtained prior to or in order to effect the transactions contemplated herein, including, without limitation, the valid assignment, transfer and conveyance from Seller to Buyer of any of the Acquired Contracts, in each case without causing a default, breach or loss of material rights thereunder which could reasonably be expected to have a Material Adverse Effect.

"Cure Costs" means the amount required to cure defaults under the Acquired Contracts as required for a Seller to assume and assign such Acquired Contracts to Buyer at Closing, as determined by agreement between the Seller and the applicable contracting party or by the Bankruptcy Court.

"Earnest Money Deposit" or "Deposit" has the meaning set forth in Section 3.1 with respect to Buyer, and means the amount that is ten percent (10%) of the cash purchase price set forth in its Qualifying Bid.

 "Escrow Agent" has the meaning set forth in Section 3.1.

"Excluded Accounts" has the meaning set forth in Section 2.2(a).

"Excluded Assets" has the meaning set forth in Section 2.2.

"Excluded Contracts" has the meaning set forth in Section 2.2(b).

"Excluded Liabilities" has the meaning set forth in Section 2.5.

"Execution Date" means the date of this Agreement.

"Final Order" means an Order of the Bankruptcy Court, or other court of competent jurisdiction, the operation or effect of which has not been reversed, stayed, modified, amended, vacated, or supplemented and as to which Order the time to appeal or seek review, rehearing,

reargument or certiorari has expired and as to which no appeal or petition for review, rehearing, reargment or certiorari has been timely filed and remains pending.

"Governmental Entity" means any court or tribunal in any jurisdiction (domestic or foreign) or any public, governmental, legislative or regulatory body, agency, department, commission, board, bureau, or other authority or instrumentality (domestic or foreign).

"Governmental Approvals" means those approvals, authorization and exemptions from Governmental Entities and the making of all necessary registrations and filings (including filings with Governmental Entities) and the taking of all reasonable steps as may be necessary to obtain an approval or waiver from, or to avoid an action or proceeding to prevent the Closing by, any Governmental Entity, which are required to be obtained or taken to consummate the transactions contemplated herein under Applicable Law.

"Intellectual Property" means all intellectual property owned by Seller, including, without limitation, trade names, styles, logos, copyrights, and trademarks, which are useful and necessary in operating the Project.

 "Lien" means any interest (other than that of Seller), claim, encumbrance or lien relating to the Acquired Assets, as those terms are used in §§ 101(37) and 363(f) of the Bankruptcy Code.

"Material Adverse Effect" and "Material Adverse Change" means an occurrence or event that materially adversely affects the value of the Acquired Assets taken as a whole, or that materially adversely affects the ability of a party hereto to perform its obligations under this Agreement or timely consummate the transactions contemplated herein, and excludes any such effect resulting, directly or indirectly, from (i) the Bankruptcy Case and circumstances related thereto, or (ii) factors affecting the economy or financial markets or Seller's industry as a whole.

"Order" means any writ, judgment, decree, injunction or similar order, writ, ruling directive or other requirement of any Governmental Entity (in each such case whether preliminary or final).

"Permits" means all permits and licenses relating to the Project.

"Permitted Liens" means any Lien for Taxes not yet due or payable.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, enterprise, unincorporated organization, Governmental Entity, or other entity.

"Petition Date" has the meaning set forth in the Recitals.

"Purchase Price" has the meaning set forth in Section 3.2(a).

"Qualifying Bid" has the meaning set forth in Section 5.2(b)(ii).

4

"Related Agreements" means documents to be executed and delivered at Closing as contemplated hereby, including the Bill of Sale and the Assignment and Assumption Agreement.

"Representative" shall have the meaning set forth in Section 6.6.

"Retained Liabilities" shall have the meaning set forth in Section 2.3.

"Rules" means the Federal Rules of Bankruptcy Procedure.

"Sale Approval Hearing" means the hearing on the entry of the Sale Order.

"Sale Motion" means the motion of Seller, in form and substance acceptable to Seller and Buyer in their reasonable discretion, for, among other things, entry of an Order seeking approval and entry of the Bidding Procedures Order, approving the form of this Agreement, scheduling dates to conduct the Auction and Sale Approval Hearing, and authorizing the sale of the Acquired Assets free and clear of Liens (other than Permitted Liens).

"Sale Order" means an order of the Bankruptcy Court (a) authorizing Seller to close on the terms of this Agreement and the transactions contemplated hereby, in accordance with § 363 of the Bankruptcy Code, which finds, among other things, that Buyer is a good-faith purchaser for value and otherwise entitles Buyer to the protections of § 363(m) of the Bankruptcy Code, and which order has not been reversed or modified on appeal or, if any such appeal is pending, such order shall not have been stayed, (b) approving the sale of the Acquired Assets to Buyer free and clear of any and all Liens (other than Liens that Buyer has agreed to permit or assume hereunder or hereafter) pursuant to § 363(f) of the Bankruptcy Code; (c) determining the Cure Costs and approving the assumption and assignment to Buyer of the Acquired Contracts solely on the terms of such Acquired Contracts; (d) providing that the provisions of Rules 6004(h) and 6006(g) of the Rules are rendered inapplicable and there will be no stay of execution of the Sale Order under Rule 62(a) of the Federal Rules of Civil Procedure; (e) retaining jurisdiction of the Bankruptcy Court to interpret and enforce the terms and provisions of this Agreement; and (f) determining this Agreement (as it may be modified prior to the Sale Approval Hearing) to be the highest and best bid as a result of the Auction. The form of Sale Order that the Seller will propose that the Bankruptcy Court enter after the Sale Approval Hearing is attached hereto as Exhibit A, but in any event shall be in form and substance acceptable to Buyer and Seller in their reasonable discretion.

"Seller's Closing Certificates" shall have the meaning set forth in Section 4.2(c).

"Seller's Knowledge" or "Knowledge of Seller" means the actual knowledge of the Persons set forth on Schedule 1.1 without independent investigation.

"Tax" or "Taxes" means all taxes, charges, fees, duties, levies or other assessments, however denominated, imposed by any federal, territorial, state, local or foreign government or any agency or political subdivision of any such government, which taxes shall include, without limiting the generality of the foregoing, income or profit, gross receipts, net proceeds, ad valorem, turnover, real and personal property (tangible and intangible), sales, use, franchise,

excise, value added, stamp, leasing, lease, business license, user, transfer, fuel, environmental, excess profits, occupational, interest equalization, windfall profits, severance and employees' income withholding, workers' compensation, Pension Benefits Guaranty Corporation premiums, unemployment and Social Security taxes, and other obligations of the same or of a similar nature to any of the foregoing (all including any interest, penalties or additions to tax related thereto imposed by any taxing authority).

## ARTICLE 2
## PURCHASE OF ASSETS

2.1    <u>Purchase and Sale of Acquired Assets</u>.  Subject to the Bankruptcy Court's authorization of Seller to close on this Agreement and to consummate the transactions contemplated hereby pursuant to the Bidding Procedures Order and the Sale Order, and upon the terms and subject to the conditions contained in this Agreement, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase, assume and acquire from Seller, free and clear of all Liens (except for Permitted Liens) pursuant to §§ 363(b) and 363(f) of the Bankruptcy Code (including, without limitation, claims for successor liability under any theory of law or equity, and claims that Buyer is not a good faith purchaser entitled to the protections of § 363(m) of the Bankruptcy Code), all of Seller's transferable right, title and interest in and to the Acquired Assets.  "<u>Acquired Assets</u>" means all of Seller's transferable interest in assets, tangible or intangible, real, personal or mixed, of any kind and description, and wherever located, that are used in connection with operating the Project (subject to adjustments through Closing as contemplated by this Agreement), excluding the Excluded Assets, but including without limitation the following:

(a)    the agreements and contracts relating to the Project listed on <u>Schedule 2.1(a)</u> (the "<u>Acquired Contracts</u>") (and Seller shall assume in the Bankruptcy Case any Acquired Contracts set forth on Schedule 2.1(a) and assign such Acquired Contracts to Buyer at Closing, subject to the provisions of Section 5.1 hereof);

(b)    all inventory relating to the Project, wherever located, including but not limited to the inventory described in <u>Schedule 2.1(b)</u> (the "<u>Acquired Inventory</u>");

(c)    all fixtures, machinery, equipment, furniture, supplies and tangible personal property owned by Seller and used in connection with the Project, wherever located (the "<u>Acquired Equipment</u>");

(d)    all files, papers, computer files, customer lists and records, advertising materials, promotional materials, studies, reports and books and business records of Sellers in any medium relating to the Project (subject to Seller's rights to access such files and records under Section 6.3, below, and except for books and records relating to Company Plans);

(e)    all Permits listed on <u>Schedule 2.1(f)</u>, to the extent they are freely assignable (collectively, the "<u>Acquired Permits</u>");

(f)      all Intellectual Property used by Seller in connection with the Project and all registered trade names and trademarks held by Seller, including those described on Schedule 2.1(g), to the extent they are freely assignable (the "Acquired Intellectual Property");

(g)      subject in each case to the provisions of Section 3.2(c), all prepaid expenses related to the Acquired Assets, and, to the extent transferable, all deposits posted with utility companies, lessors, vendors or suppliers relating to the Project, including any changes in the amount of any such deposit as of the Closing (collectively, the "Acquired Deposits"); and

(h)      all rights of Seller under any insurance policies maintained by Seller relating solely to the Acquired Assets and Acquired Contracts, to the extent they are freely assignable.

2.2      Excluded Assets.  Notwithstanding anything to the contrary contained in Section 2.1 or elsewhere in this Agreement, the following assets (the "Excluded Assets") are not part of the sale and purchase contemplated hereunder, are excluded from the Acquired Assets, and shall remain the property of Seller after the Closing:

(a)      all accounts receivable arising from the operation of the Project prior to Closing, including, without limitation, those arising under the Acquired Contracts (collectively, the "Excluded Accounts");

(b)      all of Seller's interest in any agreements and contracts relating to the Project listed on Schedule 2.2(b) or subsequently designated as an Excluded Contract (A) by mutual consent of Buyer and Seller or (B) by Buyer's modification of Schedule 2.1(a) from time to time following the execution of this Agreement, by notice given to Seller at least five (5) Business Days prior to the Sale Approval Hearing, to delete any previously designated Acquired Contract therefrom; provided that no such modification shall change or affect the Purchase Price in any respect, in each case to the extent the same are not assumed by Seller and assigned to Buyer at or prior to the Closing (the "Excluded Contracts"), and including any accounts receivable arising under any Excluded Contracts;

(c)      all rights of Seller under any insurance policies maintained by Seller relating to the Project (except as otherwise provided under Section 2.1(h) and regarding casualty insurance proceeds relating to the Acquired Assets);

(d)      claims for any federal, state, local or foreign Tax refunds, rebates, abatements or other recovery for Taxes of Seller, together with any interest due thereon or penalty rebate arising therefrom, all Tax refunds, rebates, or other recoveries of Seller for any period, and all of Seller's rights and claims against third parties that have arisen or accrued at any time prior to Closing;

(e)      all of Seller's rights under this Agreement and/or the Related Agreements (including but not limited to rights relating to the Purchase Price);

(f)    all deposits, including cash deposits with vendors, utilities, and lessors that are not transferable, and any deposits related to any Excluded Assets owned or leased by Seller, and all of Seller's' prepaid expenses and deposits relating to Excluded Assets;

(g)    all bank accounts of Seller and all cash, cash equivalents, and short-term investments;

(h)    all minute books, stock records, and corporate seals;

(i)    all rights in connection with and assets of the Company Plans, and Seller shall retain and not sell or deliver to Buyer the books, records, and files relating to the Company Plans or any other confidential personnel information;

(j)    all commercial tort claims; and

(k)    all claims and avoidance recovery, subordination or other actions arising out of the commencement of the Bankruptcy Case, including without limitation those arising under §§ 506, 510, 542 - 551 and 553 of the Bankruptcy Code.

Seller expressly retains the rights to enforce and exercise their remedies pursuant to any of the Excluded Assets.

2.3    <u>Retained Liabilities</u>.  Seller shall retain the Retained Liabilities, and Buyer shall have no liability therefor. "<u>Retained Liabilities</u>" shall mean every liability of Seller other than the Assumed Liabilities.

2.4    <u>Assumption of Liabilities</u>.  On the terms and subject to the conditions set forth in this Agreement, at the Closing Buyer shall assume and agree to pay, perform and discharge the following liabilities and obligations of Seller (the "<u>Assumed Liabilities</u>"):

(a)    all payment and performance obligations arising after the Closing under the Acquired Contracts, the Acquired Permits and the Acquired Intellectual Property in accordance with the terms of the applicable Acquired Contracts, Acquired Permits and Acquired Intellectual Property;

(b)    all liabilities and obligations arising as a result of Buyer's acquisition or operation of the Acquired Assets and accruing after the Closing Date;

(c)    Cure Costs in respect of Acquired Contracts; and

(d)    any other liabilities specifically imposed upon Buyer pursuant to this Agreement.

2.5    <u>Excluded Liabilities</u>.  Except for the Assumed Liabilities, Buyer shall not assume any other liability of obligation of Seller of whatever nature, whether presently in existence or arising hereafter.  All such other liabilities and obligations (collectively, the "<u>Excluded Liabilities</u>") shall be retained by and remain liabilities and obligations of Seller, as applicable. The Excluded Liabilities include, without limitation:

8

(a)     payment and performance obligations arising or accruing in respect of periods prior to the Closing under the Acquired Contracts, the Acquired Permits and the Acquired Intellectual Property; and

(b)     any liabilities or obligations that do not relate to any Acquired Assets.

2.6     "As Is" Transaction.  Buyer hereby acknowledges and agrees that, except as otherwise expressly provided in this Agreement, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Acquired Assets, or otherwise relating to any of the transactions contemplated hereby, including without limitation any income to be derived or expenses to be incurred in connection with the Acquired Assets, the physical condition of any Acquired Assets comprising a part of the Acquired Assets or which is the subject of any Acquired Contract, the value of the Acquired Assets (or any portion thereof), the terms, amount, validity or enforceability of any Assumed Liabilities, the merchantability or fitness of the Acquired Assets or any other portion of the Acquired Assets for any particular purpose. Without in any way limiting the foregoing, subject to the representations, warranties and covenants expressly set forth in this Agreement, **Seller hereby disclaims any warranty, express or implied, relating to this transaction, including but not limited to implied warranties of merchantability or fitness for any particular purpose** as to any portion of the Acquired Assets. Buyer further acknowledges that Buyer, at Buyer's cost and expense, conducted and completed an independent inspection and investigation of the physical condition of the Acquired Assets and all such other matters relating to or affecting the Acquired Assets and the Project as Buyer deemed necessary or appropriate and that in proceeding with its acquisition of the Acquired Assets and entering into this Agreement, except for any representations and warranties, and covenants expressly set forth in this Agreement, Buyer is doing so based solely upon such independent inspections and investigations. Accordingly, subject to the representations, warranties, and covenants expressly set forth in this Agreement, Buyer will accept the Acquired Assets at the Closing ***"AS IS," "WHERE IS," AND "WITH ALL FAULTS."***

## ARTICLE 3
## PURCHASE PRICE

3.1     Earnest Money Deposit.  Buyer has delivered to Sellers' attorneys, Berger Singerman LLP ("Escrow Agent"), simultaneously with the execution of this Agreement, $_____, as and for the earnest money deposit hereunder (the "Earnest Money Deposit" or "Deposit"), to be held in escrow by Escrow Agent and to be disbursed by Escrow Agent in accordance with the terms of the Escrow Agreement and Section 10.2.

3.2     Purchase Price; Purchase Price Adjustment.

(a)     Upon the terms and subject to the conditions set forth in this Agreement, Buyer shall pay to Seller in cash at Closing the amount of $_____ (the "Purchase Price"), subject to certain adjustments as set forth in this Article 3 and elsewhere in this Agreement. At Closing, Buyer shall also assume the Assumed Liabilities. At Closing, Buyer shall pay the Purchase Price to Seller by wire transfer in immediately available U.S. funds to the account designated by Seller, and Escrow Agent

9

shall deliver the Earnest Money Deposit to Seller (the amount of which shall be credited against the Purchase Price payable by Buyer at Closing).

(b)     At Closing, personal property Taxes applicable to the Acquired Assets shall be pro-rated to the day preceding the Closing Date on the basis of the fiscal year for which assessed (or, if not available, based on the prior fiscal year).  If such Taxes cannot be adjusted with certainty at the Closing because of the unavailability of information as to the amounts, Seller shall estimate such adjustments at Closing.

# ARTICLE 4
# CLOSING

4.1     <u>Closing</u>.  Subject to the satisfaction or waiver of the conditions set forth in this Agreement, the Closing shall occur upon satisfaction of the conditions to Closing but not later than October 15, 2014 in the offices of Escrow Agent (or on such other date and at such other time and place as the parties shall mutually agree in writing).

4.2     <u>Seller's Deliveries at Closing</u>.  At Closing, Seller shall deliver, or cause to be delivered, to Buyer the following items:

(a)     Warranty Deed

(b)     Bill of Sale;

(c)     Assignment and Assumption Agreement and such other bills of sale, assignments, certificates of title, documents, and other instruments of transfer and conveyance as may reasonably be requested by Buyer, each in form and substance reasonably satisfactory to Buyer and Seller and duly executed by Seller; provided that each such instrument of transfer, including the Bill of Sale, shall expressly provide that Seller shall have no liability in monetary damages thereunder;

(d)     certificates, dated as of the Closing Date and signed by an officer of each Seller in a corporate capacity, stating that all conditions specified in Section 9.2 have been satisfied;

(e)     such other instruments and documents as Buyer reasonably deems necessary in connection with the transactions contemplated by this Agreement; and

(f)     physical possession and control of the Acquired Assets as soon thereafter as possible.

4.3     <u>Buyer's Deliveries at Closing</u>.  At Closing, Buyer shall deliver, or cause to be delivered, to Seller the following items:

(a)     payment of the balance of the Purchase Price specified under Section 3.1;

(b)    the Assignment and Assumption Agreement (pursuant to which Buyer shall assume the Assumed Liabilities) and the other Related Agreements to be executed by Buyer;

(c)    a certificate, dated as of the Closing Date and signed by an executive officer of Buyer in corporate capacity, stating that the conditions specified in Sections 9.1 have been satisfied;

(d)    the resolutions duly adopted by the Board of Directors of Buyer (and any stockholders or other Persons whose consent is required) authorizing the execution, delivery and performance of this Agreement, the Related Agreements and any other agreement or instruments contemplated hereby or thereby, and the consummation of the transactions contemplated herein by Buyer; and

(e)    such other instruments and documents as Seller shall reasonably deem necessary in connection with the transactions contemplated by this Agreement.

4.4    <u>Closing Costs</u>.  In addition to any other costs to be borne by Seller pursuant to this Agreement, Seller shall pay the cost of obtaining the Bidding Procedures Order and the Sale Order.  In addition to any other costs to be borne by Buyer pursuant to this Agreement, Buyer shall pay all Taxes applicable to, imposed upon or arising out of the sale or transfer of the Acquired Assets to Buyer and the other transactions contemplated by this Agreement (including, but not limited to, sales, use, gross receipts, and intangible Taxes), and all costs and expenses incurred by Buyer as a result of any financing obtained by Buyer.  Except as set forth in this Section or elsewhere in this Agreement, each of the parties shall bear its own expenses and the expenses of its counsel and other agents in connection with the transactions contemplated hereby.

**ARTICLE 5**
**BANKRUPTCY CASE**

5.1    <u>Consents</u>.  Seller and Buyer shall use their commercially reasonable efforts prior to Closing to obtain all required Consents of third parties whose consent is required under § 365 of the Bankruptcy Code in order for Seller to validly assign the applicable Acquired Contract to Buyer at Closing (other than those obviated by the Sale Order).  All such necessary third party consents shall be in writing and executed counterparts thereof shall be delivered to Buyer promptly after Seller's receipt thereof but in any event prior to Closing.  Notwithstanding the foregoing or anything contained herein to the contrary, this Agreement shall not constitute an agreement to assign any lease or contract or any claim or right or any benefit arising thereunder or resulting therefrom if an attempted assignment thereof, notwithstanding the Sale Order or without the consent of a third party thereto, would constitute a default thereof or in any way materially adversely affect the rights of Buyer thereunder.  If such Consent is not obtained, or if an attempted assignment thereof would be ineffective or would materially adversely affect the rights thereunder, Seller shall use its commercially reasonable efforts after Closing to provide to Buyer the benefits under any such lease or contract.  Buyer shall pay any Cure Costs relating to Acquired Contracts that Buyer elects to have Seller assume and assign to Buyer, and will pay any additional costs resulting from any requirements (acceptable to the parties hereto and the

11

third party to the applicable Acquired Contract) imposed by Buyer in connection with the assignment and assumption of any Acquired Contracts. Buyer shall be responsible for complying with the provisions of §365(b)(1)(C)) of the Bankruptcy Code.

## ARTICLE 6
## COVENANTS

6.1     Conduct and Preservation of the Acquired Assets.  Except as provided in this Agreement (including this Section 6.1), or unless otherwise consented to by Buyer, which consent shall not be unreasonably delayed or withheld, and except as otherwise required, authorized or restricted pursuant to any Order of the Bankruptcy Court, during the period from the date hereof to the Closing, Seller shall cause the Project to be conducted consistent with its practice since the Petition Date and in the ordinary course of business and shall, consistent with its practice since the Petition Date, the requirements of the Bankruptcy Code and the orders of the Bankruptcy Court, (i) preserve the present business operations, organization and goodwill of the Business (but Seller shall not be required to make any payments or enter into or amend any contractual agreements, arrangements, or understandings to satisfy the foregoing obligation unless such payment or other action is required by or consistent with past practice since the Petition Date); (ii) in all material respects preserve, maintain, and protect the assets, rights, and properties included in the Acquired Assets; (iii) comply in all material respects with all post-petition contractual and other obligations applicable to the operation of the Business and the Acquired Assets; and (iv) comply in all material respects with Applicable Laws, insofar as they relate to the Acquired Assets.

6.2     Access to Books and Records.  For a period of five years after the Closing Date, upon the request of Seller and upon reasonable prior notice for any reasonable purpose, Buyer shall provide Seller and Seller's representatives with access during normal business hours to the books and records of the Project (reflecting operations and transactions prior to the Closing) and shall allow Seller and Seller's representatives to make copies thereof at Seller's expense, provided that such access shall be in a manner so as not unreasonably to interefere with the normal business operations of Buyer.  The provisions of this Section shall survive the Closing.

6.3     No Sale or Encumbrance of Acquired Assets.  Except for Liens granted to Seller's prepetition and post-petition creditors in connection with the Bankruptcy Case (all of which such Liens shall attach and be transferred to the proceeds of the sale contemplated by this Agreement), Seller will not sell or further encumber any Acquired Assets, other than the sale of inventory in the ordinary course, or as provided in this Agreement or Order of the Bankruptcy Court.

6.4     Accounts Receivable; Payments Received.  All amounts payable or attributable to services, goods or materials rendered, sold or provided by Seller to the customers of the Project prior to Closing under Acquired Contracts, or otherwise relating to the Project (the "Pre-Closing Receivables") shall be retained and remain the exclusive assets and property of Seller, after giving effect to the transactions contemplated by this Agreement.

## ARTICLE 7
## REPRESENTATIONS AND WARRANTIES OF SELLERS

Seller hereby represents and warrants to Buyer that, except as set forth in the Schedules attached hereto:

7.1     <u>Organization, Standing, and Power</u>.  Seller is a corporation, organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has the requisite power and authority to carry on its business as now being conducted, except where the failure to be so organized, existing or in good standing or to have such power or authority would not, individually or in the aggregate, have a Material Adverse Effect.

7.2     <u>Authority</u>.  Upon entry of the Bidding Procedures Order and the Sale Order, Seller will have all requisite corporate power and authority to enter into this Agreement and the Related Agreements and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Related Agreements by Seller and the consummation by Seller of the transactions contemplated hereby and thereby have been or prior to Closing will be duly authorized by all necessary corporate action on the part of Seller or by Order of the Bankruptcy Court, subject to the conditions set forth in this Agreement.  This Agreement has been duly executed and delivered by Seller and, upon entry of the Bid Procedures Order and Sale Order, will constitute the valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

7.3     <u>No Conflict</u>.  Subject to entry of the Bidding Procedures Order and the Sale Order by the Bankruptcy Court or as otherwise contemplated by this Agreement, neither the execution, delivery or performance of this Agreement and the Related Agreements, the consummation of the transactions contemplated by this Agreement and the Related Agreements nor the compliance with the provisions hereof or thereof will (i) contravene, conflict with, or result in a violation of any provision of the certificate of incorporation of Seller (except if permitted or authorized by Order of the Bankruptcy Court), (ii) to Seller's Knowledge,  conflict with or result in a breach of the terms, conditions or provisions of any Order of a Governmental Entity, or (iii) to Seller's Knowledge, result in the creation or imposition of any Lien on any of the Acquired Assets, except for those arising by, through or under Buyer.

7.4     <u>Third-Party Approvals</u>. Except for the Bidding Procedures Order and the Sale Order and as contemplated by the other provisions of this Agreement, the execution, delivery and performance by Seller of this Agreement and the Related Agreements and the transactions contemplated hereby and thereby do not require any Governmental Approvals or any consents, waivers, authorizations or approvals of, or filings with, any third parties which have not been obtained (or will not have been obtained at or prior to Closing) by Seller, except for those as to which the failure to obtain the same is not reasonably likely to have a Material Adverse Effect.

7.5     <u>Real Property Assets</u>.  Schedule 7.5 lists all of the real estate assets owned or leased by Seller relating to the Business.

7.6     <u>Acquired Contracts</u>.  To Seller's Knowledge, except for defaults caused by the commencement of the Bankruptcy Case or which are not reasonably likely to have a Material

Adverse Effect, each Acquired Contract is valid and binding upon Seller and is in full force and effect.

7.7    <u>Claims, Litigation, and Disputes</u>.  Except for the Bankruptcy Case, and Orders entered by the Bankruptcy Court, to Seller's Knowledge, there is no claim, litigation, action, grievance, arbitration, or other legal proceeding at law or equity or before any Governmental Entity or threatened against Seller, materially and adversely affecting (i) Seller's ability to perform their obligations hereunder, (ii) the rights granted under the Acquired Contracts, or (iii) the ownership, use, maintenance or operation of the Acquired Assets by Seller.

7.8    <u>Compliance with Laws</u>.  To Seller's Knowledge the Project is in compliance with all Applicable Laws, except in any such case where the failure to be in compliance would not be reasonably likely to have a Material Adverse Effect.  To Seller's Knowledge, the Permits set forth on <u>Schedule 2.1(f)</u> constitute all material permits necessary to conduct the Project, as presently conducted, in substantial compliance with Applicable Laws.

7.9    <u>Taxes</u>.

(a)    To the extent that under Applicable Law the failure of this representation to be true or correct could result in a lien upon or claim against the Acquired Assets or in a claim against Buyer as transferee or owner of the Acquired Assets, (i) Seller has filed or has caused to be filed on a timely basis (or have timely requested an extension of time to file) all Tax returns that are or were required to be filed with respect to the Acquired Assets and the operation of the Project; (ii) all such Tax returns accurately reflect all liabilities required to be reflected thereon; and (iii) except for Taxes the payment of which would not be required pursuant to applicable exemptions or exceptions, including those provided by the Bankruptcy Code or otherwise by reason of the commencement or pendency of the Bankruptcy Case, all Taxes due and payable by Seller with respect to the Acquired Assets and the operation of the Project as shown in such Tax returns have been paid.

(b)    To the extent that under Applicable Law the failure of this representation to be true or correct could result in a lien upon or claim against the Acquired Assets or in a claim against Buyer as transferee or owner of the Acquired Assets, (i) no material deficiency or proposed adjustment which has not been settled or otherwise resolved for any amount of Tax has been proposed, asserted or assessed by any Governmental Entity against Seller with respect to the Acquired Assets and the operation of the Project and there is no action, suit, taxing authority proceeding or audit now in progress, pending or, to Seller's Knowledge, threatened against or with respect to Seller with respect thereto; and (ii) there are no Liens for Taxes (other than for current Taxes not yet due and payable or those being contested in good faith and by appropriate proceedings) upon the Acquired Assets.

7.10    <u>Governmental and Regulatory Consents and Approvals</u>.  To Seller's Knowledge, other than the Bankruptcy Court, there is no Governmental Entity that must consent to the execution, delivery or performance of this Agreement by Seller, except where the failure to obtain any such consent of such Governmental Entity would not have a Material Adverse Effect

or would not materially adversely affect the ability of Seller to consummate the transactions contemplated hereby.

7.11    <u>Brokerage Fees</u>.  No broker, investment banker, or other Person engaged by Seller is entitled to any broker's, finder's or other similar fee or commission payable by Buyer in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

7.12    <u>Intellectual Property</u>.  <u>Schedule 2.1(g)</u> lists all material Intellectual Property owned by, registered in the name of or used by Seller in the conduct of the Business.  Except as set forth in <u>Schedule 7.13</u>, there are no material licenses, agreements or commitments outstanding or effective granting any other Person any right to use, operate under, license or sublicense any of the Intellectual Property.

7.13    <u>Acquired Assets</u>.  Seller has good title to the Acquired Assets, free and clear of all liens and encumbrances except for (a) Permitted Liens, and (b) Liens which will be released at Closing or transferred to the proceeds of sale of the Acquired Assets.

## ARTICLE 8
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that:

8.1    <u>Organization, Standing, and Power</u>.  Buyer is a _____ organized, validly existing, and in good standing under the laws of _____ and has the requisite power and authority to carry on its business as now being conducted and to effect the transactions contemplated hereunder.

8.2    <u>Authority</u>.  Buyer has all requisite corporate power and authority to enter into this Agreement and the Related Agreements and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Related Agreements by Buyer and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary action on the part of Buyer, subject to the conditions set forth in this Agreement.  This Agreement has been duly and validly executed and delivered by Buyer and this Agreement constitutes the legal, valid and binding obligation of Buyer and is enforceable against Buyer in accordance with its terms.

8.3    <u>Consents and Approvals; No Violation</u>.  Neither the execution, delivery or performance of this Agreement and the Related Agreements, the consummation of the transactions contemplated by this Agreement and the Related Agreements nor the compliance with the provisions hereof or thereof will, result in any violation of, or default (with or without notice or lapse of time, or both) under, or give to others a right of termination, cancellation or acceleration of any obligation or the loss of a material benefit under, or result in the creation of any Lien upon any of the properties or assets of Buyer under any provision of (i) the charter or organizational document or bylaws of Buyer, (ii) any loan or credit agreement, note, bond, mortgage, indenture, lease or other agreement, instrument, permit, concession, franchise or license applicable to Buyer or (iii) any Order or Applicable Law relating to Buyer or any of its

15

properties or assets, other than, in the case of clauses (ii) or (iii), any such violations, defaults or Liens that, individually or in the aggregate, would not prevent the consummation of any of the transactions contemplated hereby in accordance with the terms of this Agreement.  Except for the Governmental Approvals as set forth in Schedule 8.3, no filing or registration with, or authorization, consent or approval of, any Governmental Entity is required by or with respect to Buyer in connection with the execution and delivery of this Agreement by Buyer or is necessary for the consummation of the transactions contemplated by this Agreement.

8.4    Actions and Proceedings.  There are no actions, suits, or other litigation, legal or administrative proceedings or governmental investigations pending or threatened against Buyer which could have the effect of delaying or prohibiting the consummation of the transactions contemplated by this Agreement.

8.5    Brokers.  No broker, investment banker, or other Person engaged by Buyer is entitled to any broker's, finder's or other similar fee or commission payable by Seller in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.  This representation shall survive the Closing, and Buyer shall indemnify and hold harmless Seller for any liabilities incurred by Sellers as a result of the inaccuracy of this representation.

8.6    Financing.  Buyer has (and, to the extent Buyer assigns its rights and obligations hereunder to Buyer's Assignee in accordance with the provisions of Section 12.7, Buyer's Assignee shall have) sufficient available funds to pay the Purchase Price at Closing and to perform its obligations under this Agreement.

# ARTICLE 9
# CONDITIONS OF CLOSING

9.1    Conditions to Obligations of Buyer to Proceed on the Closing Date.  The obligations of Buyer to consummate the transactions provided for by this Agreement shall be subject to the satisfaction or waiver by Buyer, on or prior to the Closing, of each of the following conditions:

(a)    The representations and warranties of Seller herein shall be true and correct in all material respects when made and on the Closing Date with the same effect as though made at such time.  Seller shall have performed in all material respects all of its obligations set forth in this Agreement and shall have complied in all material respects with all of their covenants and conditions set forth in this Agreement prior to or as of the Closing Date;

(b)    All consents and approvals that are necessary to be obtained by Buyer in order to authorize and effect the transactions contemplated by this Agreement shall have been obtained, except where the failure to obtain the same would not have a Material Adverse Effect;

(c)    All Governmental Approvals as may be necessary in connection with the consummation of the transactions contemplated by this Agreement shall have been received;

(d)     There will have been no Material Adverse Change since the date of this Agreement;

(e)     There shall be no material pending or threatened lawsuit, proceeding or governmental action challenging the transactions contemplated by this Agreement; and

(f)     The Sale Order approving this Agreement and authorizing the transactions contemplated hereby shall have been entered by the Bankruptcy Court and shall be a Final.

9.2     <u>Conditions to Obligations of Seller to Proceed on the Closing Date</u>.   The obligations of Seller to consummate the transactions provided for by this Agreement shall be subject to the satisfaction or waiver by Seller, on or before the Closing, of each of the following conditions:

(a)     The representations and warranties of Buyer herein shall be true and correct in all material respects when made and on the Closing Date with the same effect as though made at such time.  Buyer shall have performed in all material respects all its obligations set forth in this Agreement, and shall have complied in all material respects with all its covenants and conditions set forth in this Agreement, prior to or as of the Closing Date;

(b)     All Governmental Approvals as may be necessary in connection with the consummation of the transactions contemplated by this Agreement shall have been received;

(c)     All consents and approvals that are necessary to be obtained by Seller in order to authorize and effect the transactions contemplated by this Agreement shall have been obtained, except where the failure to obtain the same would not have a Material Adverse Effect;

(d)     There shall be no material pending or threatened lawsuit, proceeding or governmental action challenging the transactions contemplated by this Agreement; and

(e)     The Sale Order approving this Agreement and authorizing the transactions contemplated hereby shall have been entered by the Bankruptcy Court.

9.3     <u>Notice of Unsatisfied Condition</u>.  On the date that is no later than three Business Days prior to the date of the Auction, each of Buyer and Seller will deliver to the other written notice of any fact, circumstance or condition of which they have actual knowledge which would cause, or which a reasonable Person would expect to have a substantial likelihood to cause, any of the conditions to Closing set forth in Sections 9.1 or 9.2 of this Agreement not to be satisfied at Closing.

## ARTICLE 10
## TERMINATION, AMENDMENT, AND WAIVER

10.1    <u>Termination</u>.  This Agreement may be terminated at any time prior to the Closing Date:

(a)    upon the mutual written consent of Buyer and Seller;

(b)    by Seller, if (i) at the execution of this Agreement or at Closing, the representations and warranties of Buyer in Article 8 shall not be true and correct in all material respects, or (ii) as of the Closing Date any of the conditions specified in Section 9.2 hereof have not been satisfied (unless such failure was solely within the control of Seller), or (iii) Buyer is in material breach of this Agreement, and such breach has not been cured within ten (10) Business Days following the delivery of written notice thereof to Buyer;

(c)    by Buyer, if (i) at the execution of this Agreement or at Closing, the representations and warranties of Seller in Article 7 shall not be true and correct in all material respects, or (ii) as of the Closing Date any of the conditions specified in Section 9.1 hereof have not been satisfied (unless such failure was primarily within the control of Buyer), or (iii) Sellers are in material breach of this Agreement, and such breach has not been cured within ten (10) Business Days following the delivery of written notice thereof to Seller;

(d)    by either Buyer or Seller if there shall be in effect a stay pending appeal or other Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated herein;

(e)    by Buyer or Seller if a motion to dismiss the Bankruptcy Case has been granted by the Bankruptcy Court;

(f)    by Buyer or Seller, if the Bankruptcy Court has not entered the Sale Order by _____, 2014, or (ii) such longer period of time as the Bankruptcy Court may require pursuant to the Bidding Procedures Order; and

(g)    by Buyer or Seller, if the Bankruptcy Court has entered the Sale Order but the Closing Date has not occurred on or before the later to occur of (i) two Business Days after entry of the Sale Order, or in all events by (ii) October 15, 2014, provided the terminating party is not in material breach of its obligations hereunder.

10.2    <u>Effect of Termination</u>.

(a)    If this Agreement is terminated pursuant to Article 10 of this Agreement (other than a termination with respect to which the Earnest Money Deposit is payable to Seller pursuant to Section 10.2(b) below), then the Earnest Money Deposit shall be returned to Buyer, provided that (i) if this Agreement is terminated by Buyer pursuant to Section 10.1(c) and Buyer is not in breach of this Agreement, Buyer's sole remedy shall be to receive a return of the Earnest Money, and (ii) if Buyer is a Backup Bidder (as

defined in the Bidding Procedures Order), the Earnest Money Deposit shall be retained by the Escrow Agent and returned to Buyer when the transaction with the Prevailing Bidder is consummated. In no event whatsoever shall Seller be liable for monetary damages.

(b)     If (i) this Agreement is terminated by Seller pursuant to Section 10.1(b) or 10.1(i) of this Agreement, then the Earnest Money Deposit shall be delivered to Seller as liquidated damages and not a penalty. The parties recognize that the determination of damages in the event of a termination of this Agreement pursuant to Article 10 will be difficult and that the retention by Seller of the amount of the Earnest Money Deposit constitutes a reasonable estimate of such actual damages, and therefore liquidated damages and not a penalty. Payment of the Earnest Money Deposit to Seller in the event of a termination of this Agreement by Seller pursuant to Section 10.1(b) or 10.1(i) shall be Seller's exclusive remedy under this Agreement in connection with any termination hereof.

(c)     If this Agreement is validly terminated in accordance with this Article 10, this Agreement shall terminate, Escrow Agent shall deliver the Earnest Money Deposit as provided herein, and each of the parties shall be relieved of their respective obligations arising under this Agreement after the date of such termination and such termination shall be without liability to Buyer or Seller; provided, however, that the provisions of this Agreement that specifically survive the termination of this Agreement shall continue to be enforceable.

## ARTICLE 11
## RISK OF LOSS

11.1     Risk of Loss. From the date hereof through the Closing Date, all risk of loss or damage to the property included in the Acquired Assets shall be borne by Seller, and thereafter shall be borne by Buyer. If any material portion of the Acquired Assets is destroyed or damaged by fire or any other casualty on or prior to the Closing Date, Seller shall give written notice to Buyer as soon as practicable after, but in any event within five Business Days of, discovery of such damage or destruction, identifying the affected Acquired Assets, the amount of insurance, if any, covering such Acquired Assets and the amount, if any, which Seller is otherwise entitled to receive as a consequence. If the loss of or damage to the assets so destroyed or damaged have a Material Adverse Effect, then Buyer shall have the right, exercisable prior to Closing by Buyer's written notice to Seller no later than ten Business Days after receipt of Seller's notice hereunder, to terminate this Agreement upon notice to Seller, or accept such Acquired Assets in their destroyed or damaged condition in which event Buyer shall be entitled to the proceeds of any insurance or other proceeds payable with respect to such loss. In no event shall Buyer become entitled to any insurance proceeds in respect of any Excluded Assets.

## ARTICLE 12
## MISCELLANEOUS

12.1     Expenses. Except as otherwise provided elsewhere in this Agreement, each party shall pay its own expenses incident to this Agreement and the transactions hereby contemplated.

19

In the event of any litigation between the parties arising out of this Agreement, the prevailing party shall be entitled to recover from the other party its court costs and reasonable attorneys' fees and expenses at the trial and all appellate levels.

     12.2   <u>Governing Law</u>.  This Agreement will be governed by and construed under the laws of the State of Florida and the provisions of the Bankruptcy Code, without regard to conflict-of-laws principles that would require the application of any other law.

     12.3   <u>Notices</u>.  Except as otherwise expressly provided in this Agreement, any notice required or permitted to be given under this Agreement by any party to any other party shall be in writing and shall be (i) personally delivered, (ii) sent postage prepaid by certified or registered mail, (iii) sent by overnight express carrier, next Business Day delivery guaranteed, or (iv) sent by facsimile transmission, in each case to the party being notified at its address and/or fax number as set forth below, or at such other address and/or fax number as the party being notified may have designated for such purpose in a notice given to the other parties.  Such notice shall be deemed received upon the earliest of the following to occur: (i) upon personal delivery; (ii) on the third Business Day following the day sent, if sent by registered or certified mail; (iii) on the next Business Day following the day sent, if sent by overnight express courier, next Business Day delivery guaranteed; and (iv) on the day sent, or if such day is not a Business Day on the next Business Day after the day sent, if sent by facsimile transmission with telecopy confirmation of transmission received by sender.  The notice addresses and fax numbers for the parties are:

| | |
|---|---|
| If to Seller: | Adams Street Lofts, LLC |
| | _____ |
| | _____ |
| | Attn:  _____ |
| | Fax No.: (___)____-_____ |
| | |
| With a copy to: | Berger Singerman LLP |
| | 125 South Gadsden Street, Suite 300 |
| | Tallahassee, Florida 32301 |
| | Attn:  Brian G. Rich, Esq. |
| | Fax No.: (850) 561-3013 |
| | |
| If to Buyer: | _____ |
| | _____ |
| | _____ |
| | Attn: |
| | Fax No.: |
| | |
| With a copy to: | _____ |
| | _____ |
| | _____ |
| | Attn: _____ |
| | Fax No.: _____ |

12.4    Section and Other Headings.    Section or other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

12.5    Schedules and Exhibits; Recitals.    Each schedule, exhibit, and annex attached hereto shall be deemed to be a part of this Agreement to the same extent as if set forth verbatim in the body of this Agreement.  The recitals set forth in this Agreement are incorporated into and made a part of this Agreement.

12.6    Severability.    If any provision of this Agreement should be held to be invalid or unenforceable, the validity and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

12.7    Parties; No Third Party Beneficiaries.    This Agreement shall be binding upon and enforceable against, and shall inure solely to the benefit of, the parties hereto and their respective successors and permitted assigns, including any liquidating trustee, responsible person, or similar representative for the Sellers or the Sellers' estate appointed in connection with the Bankruptcy Case.  Nothing herein shall confer any rights or remedies to any Person which is not a party hereto.  Buyer may not assign its rights or obligations under this Agreement to any Person.

12.8    Counterparts.    This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Agreement by signing any such counterpart.

12.9    Facsimile Signature.    This Agreement may be delivered by facimile or other electronic transmission with the same force and effect as an original signature.

12.10    Further Assurances.    Subject to the terms of this Agreement and to any required approvals or orders of the Bankruptcy Court, each of Buyer and Seller will execute such further documentation or take such further actions as the other party may reasonably request to effectuate the transfer of the Acquired Assets and implement this Agreement.

12.11    Exclusive Jurisdiction.    Without limiting any party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all claims, actions, causes of action, suits and Proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 12.3 hereof.

12.12    Non-Survival of Representations, Warranties, Covenants and Agreements. Except as otherwise specifically provided in this Agreement, the respective representations, warranties, and covenants of the Seller contained herein, or in any certificates or other documents delivered prior to the Closing, shall expire with, and be terminated and extinguished by, the Closing, and thereafter Seller shall not have any liability whatsoever with respect to any such representation, warranty, covenant or agreement.  Each of the parties hereto intends to shorten the statute of limitations and agrees that no claims or causes of action may be brought against the

other party arising out of, or based upon, any such representation, warranty, covenant or agreement. Under no circumstances shall Seller be liable for any monetary damages to Buyer hereunder, and return of the Deposit or specific performance shall be Buyer's exclusive remedy for Seller's default.  The provisions of this Section 12.12 and the other sections of this Article 12 shall survive the Closing.

12.13   <u>Entire Agreement</u>.  This Agreement sets forth the entire understanding of the parties hereto with respect to the transactions contemplated hereby and constitutes a complete statement of the terms of such transactions.

12.14   <u>Amendments</u>.  This Agreement may be amended or modified only by written instrument duly executed by the parties hereto.

12.15   <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of Florida, exclusive of its choice of law principles.

12.16   <u>Waiver</u>.  Any term or condition of this Agreement may be waived at any time by the party which is entitled to the benefit thereof, but only if such waiver is evidenced by a writing signed by such party.  No failure on the part of any party hereto to exercise, and no delay in exercising any right, power, or remedy created hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or remedy by any party preclude any other or further exercise thereof or the exercise of any other right, power, or remedy.  No waiver by any party hereto of any breach of or default in any term or condition of this Agreement shall constitute a waiver of or assent to any succeeding breach of or default in the same or any other term or condition hereof.

12.17   <u>Calculation of Time Period</u>.  When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

12.18   <u>Waiver of Jury Trial</u>.  **EACH PARTY TO THIS AGREEMENT WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.**

[Remainder of Page Intentionally Left Blank]

5888178-1

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

SELLER:

ADAMS STREET LOFTS, LLC

By:_____
Name:
Title:

BUYER:

_____

By:_____
Name:
Title:

**EXHIBIT 1 to the Bidding Procedures Order**

**(Bidding Procedures)**

# BIDDING PROCEDURES[1]

By the Bidding Procedures Motion dated August _____, 2014,  Adams Street Lofts, LLC (the "Debtor"),[2] sought approval of, among other things, the procedures through which the Debtor will determine the highest and best bid for the sale of substantially all of its assets described in the form Asset Purchase Agreement, a copy of which is attached to the proposed Sale Order as <u>Exhibit 1</u>, and attached as <u>Exhibit A</u> to the Bidding Procedures Motion (the "Acquired Assets").

On _____, 2014, the United States Bankruptcy Court for the Northern District of Florida (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtor, in consultation with Centennial Bank, to determine the highest and best price for the Acquired Assets through the process and procedures set forth below (the "Bidding Procedures").

## <u>Marketing Process</u>

### *Contact Parties*

The Debtor, in consultation with its auctioneer, Sperry Van Ness Auction Services, LLC ("SVN"), has developed a list of parties whom the Debtor believes may potentially be interested in and who the Debtor reasonably believes would have the financial resources to consummate a transaction (each, individually, a "Contact Party", and collectively, the "Contact Parties").  After the entry of the Bidding Procedures Order, the Debtor and SPV intend to contact the Contact Parties to explore their interest in pursuing a transaction.  The Contact Parties may include parties whom the Debtor or its advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a

---

[1]   Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Bidding Procedures Motion") or the Asset Purchase Agreement, as applicable.
[2]   The address for the Debtor is 420 North Adams Street, Tallahassee, FL 32301.

transaction.  The Debtor will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtor may distribute to each Contact Party an "Information Package," comprising:

(a)      A cover letter;

(b)      A copy of these Bidding Procedures; and

(c)      A copy of a non-disclosure agreement (unless the party has already signed a non-disclosure agreement).

### *Access to Diligence Materials*

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party must submit to the Debtor an executed non-disclosure agreement, in  form and substance satisfactory to the Debtor, and evidence demonstrating the party's financial capability with respect to the transaction, as determined by the Debtor, in consultation with Centennial Bank.

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Purchaser."  All due diligence requests must be directed to SPV, Attn: Louis B. Fisher III, National Director, 800-510-5465, Fisherl.svn@gmail.com.

### <u>Auction Qualification Process</u>

To be eligible to participate in the Auction (defined below), each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtor, in consultation with Centennial Bank, to satisfy each of the following conditions:

(a)      <u>Good Faith Deposit</u>:  Each Bid must be accompanied by a deposit in the amount of 10% of the proposed purchase price to an escrow account to be held by Berger Singerman LLP (the "Good Faith Deposit").

(b)      <u>Same or Better Terms</u>:  The Bid must be on terms that, in the Debtor's business judgment, in consultation with Centennial Bank, are substantially similar, the same or

2

5887546-2

better than the terms of the Asset Purchase Agreement.  A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the transaction (the "Modified Asset Purchase Agreement").  A Bid shall include a copy of the Asset Purchase Agreement marked to show all changes requested by the Bidder (including those related to purchase price); provided, however, that the terms of the Modified Asset Purchase Agreement are substantially similar, the same or better than the terms of the Asset Purchase Agreement.  A Bid must propose a transaction involving all or substantially all of the Debtors' assets or operations.   A Bid will not be considered by Debtors as qualified for the Auction if: (i) such Bid contains additional representations and warranties, covenants, closing conditions, termination rights other than as may be included in the Asset Purchase Agreement, (ii) such Bid is not received by Debtor in writing on or prior to the Bid Deadline (as defined herein), (iii) such Bid does not contain evidence that the Person submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby; and (iv) such bid contains a break-up fee, expense reimbursement, or similar type of payment.  The Bid shall also identify any executory contracts and unexpired leases of the Debtor that the Bidder wishes to have assumed and assigned to it pursuant to the transaction.

(c)     Corporate Authority:  The Bid must include written evidence acceptable to the Debtor, in consultation with Centennial Bank, demonstrating appropriate corporate authorization to consummate the proposed transaction; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor, in consultation with Centennial Bank, of the approval of the transaction by the equity holder(s) of such Bidder.

(d)     Proof of Financial Ability to Perform:  The Bid must include written evidence that the Debtor, in consultation with Centennial Bank, demonstrates that the Bidder has the necessary financial ability to close the transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such transaction. Such information must include, *inter alia*, the following:

   (i)     contact names and numbers for verification of financing sources;

   (ii)    evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtor in the amount of the cash portion of such Bid, in each case, as are needed to close the transaction;

   (iii)   the Bidder's current financial statements (audited if they exist), provided, that if the Bidder is an entity formed solely for the purpose of the Bid, the Bidder shall include current financial statements (audited if they exist) for such Bidder's equity holders; and

3

(iv)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor, in consultation with Centennial Bank, demonstrating that such Bidder has the ability to close the transaction; provided, however, that the Debtor shall determine, in consultation with the Debtor's advisors and Centennial Bank, whether the written evidence of such financial wherewithal is acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(e)    Contingencies:    A Bid may not (i) contain representations and warranties, covenants, termination rights, financing, due diligence contingencies other than as may be included in the Asset Purchase Agreement and (ii) be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

(f)    Irrevocable:    A Bid must be irrevocable through the time of the Auction (as defined herein), provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

(g)    Bid Deadline:    Regardless of when a party qualifies as a Preliminary Interested Purchaser, the following parties must actually receive a Bid in writing, on or before **October 14, 2014 at 4:00 p.m. (prevailing Eastern Time)** or such earlier date as may be agreed to by the Debtor (the "Bid Deadline"): (i) the Debtor, 420 North Adams Street, Tallahassee, FL 32301, Attn: _____; (ii) counsel for the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL 32301, Attn: Brian G. Rich, Esq.; (iii) SPV, 6615 W. Boynton Beach Blvd., Suite 326; Boynton Beach, FL 33437, Attn: Louis B. Fisher III (iv) counsel to the Committee, if any; (v) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: _____; and (vi) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn:_____, Esq.;  If the Debtor receives one or more Qualified Bids (as defined below), as soon as practicable after the Bid Deadline, the Debtor shall file a notice disclosing the identity and aggregate consideration offered by such Qualified Bid(s).

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder."

## Auction

If one or more Qualified Bids are received by the Bid Deadline, the Debtor will conduct an auction (the "Auction") to determine the highest and best Qualified Bid.  This determination

4

shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate, including, among other things, the following:  (a) the amount and nature of the consideration; (b) the number, type and nature of any changes to the Asset Purchase Agreement  requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Acquired Assets and the cost to Debtor of such modifications or delay; (d) the total consideration to be received by Debtor; (e) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (f) the net benefit to the estate; and (g) the impact of the transaction on any actual or potential litigation (collectively, the "Bid Assessment Criteria").   Only Qualified Bidders may participate in the Auction.

The Auction shall take place on **October 15, 2014 at _____ a.m. (prevailing Eastern Time)** at Berger Singerman LLP, 125 S. Gadsden Street, Suite 300, Tallahassee, FL 32301, or such other place and time as the Debtor shall notify all Qualified Bidders, the Committee, if any, and other invitees. The Auction shall be conducted according to the following procedures:

(a)      The Debtor shall conduct the Auction, and

(b)      The Auction may be transcribed by a certified court reporter and it may be videotaped should the Debtor elect to do so.

The Debtor and its professionals, in consultation with Centennial Bank, shall direct and preside over the Auction.  At the start of the Auction, the Debtor shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (such Qualified Bid, the "Auction Baseline Bid").  Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of the Acquired Assets and at the Debtor's request, each Qualified Bidder must disclose the direct and indirect legal and beneficial owners of the Qualified Bidder.

Unless  otherwise  agreed  by  the  Debtor,  only  the  Debtor,  its  counsel  and  other

5

professionals, members of the Committee, if any, and its counsel, Centennial Bank and its counsel and any other Qualified Bidder, in each case, along with their representatives, shall attend the Auction in person, and only the Qualified Bidders will be entitled to make any Bids at the Auction.

(c)    Terms of Overbids.

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:

(i)    Any Incremental Bid shall be made in increments valued at not less than $10,000.  Additional consideration in excess of the amount set forth in the minimum overbid may include cash and/or noncash consideration.

(ii)    Remaining Terms Are the Same as for Qualified Bids.  Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply.  Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.  To the extent not previously provided (which shall be determined by the Debtor), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor, in consultation with Centennial Bank) demonstrating such Bidder's ability to close the transaction proposed by such Overbid and performance obligations under any assumed contracts.

(iii)    Announcing Overbids.  The Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtor's estate based on, inter alia, the Bid Assessment Criteria.

(iv)    Consideration of Overbids.  The Debtor reserves the right, in its reasonable business judgment, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtor, Centennial Bank, and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or

equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

(d)     Backup Bidder.  Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest Qualified Bid after the Bid made by the Prevailing Bidder (as defined herein) or otherwise next best Qualified Bid at the Auction, as determined by the Debtor, in the exercise of its reasonable business judgment, will be designated as a backup bidder (the "Backup Bidder").  The Backup Bidder shall be required to keep its initial Bid, if any (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern time) on the date which is 25 days after the date of the Sale Approval Hearing (the "Outside Backup Date"); or (ii) the date of closing of a transaction with the Prevailing Bidder or with the Backup Bidder.  Following the Sale Approval Hearing, if the Prevailing Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Prevailing Bidder, the Debtor may designate the Backup Bidder to be the new Prevailing Bidder, and the Debtor will be authorized, but not required, to consummate the transaction, with the Backup Bidder without further order of the Bankruptcy Court.  In such case, the defaulting Prevailing Bidder's deposit, if any, shall be forfeited to the Debtor.  The deposit of the Backup Bidder, if any, shall be held by the Debtor until the earlier of 24 hours after (i) the closing of the transaction with the Prevailing Bidder and (ii) the Outside Backup Date.

(e)     Additional Procedures.  The Debtor may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

(f)     Consent to Jurisdiction as Condition to Bidding. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Asset Purchase Agreement, the Auction or the construction and enforcement of any documents delivered in connection with a Bid.

(g)     Sale Is As Is/Where Is.  The Acquired Assets shall be conveyed at Closing free and clear of all liens, claims, interests and encumbrances (other than Permitted Liens), and in their then present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED,**" except for the explicit representations and warranties set forth in the Asset Purchase Agreement.

(h)      Closing the Auction.  The Auction shall continue until there is only one Qualified Bid that the Debtor determines in its reasonable business judgment, after consultation with their financial and legal advisors and Centennial Bank, is the Prevailing Bidder.  In making this decision, the Debtor, in consultation with their financial and legal advisors and Centennial Bank, shall consider the Bid Assessment Criteria.  The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid.

The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

## Sale Hearing

The Court will conduct a hearing (the "Sale Approval Hearing") on **October 17, 2014 at _____ __.m. (prevailing Eastern Time)**, at which the Debtor will seek approval of the transactions contemplated by the agreement with the Prevailing Bidder.  Objections, if any, to the sale of the Acquired Assets to the Prevailing Bidder and the transactions contemplated therewith must be in writing and filed with the Court on or before the earlier of **(i) three (3) days prior to the date of the Auction;(October 10, 2014,) by 4:00 p.m. eastern prevailing time,** and be served such that they are actually received by (a) counsel to the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL   32301, Attn: Brian G. Rich, Esq.; (b) counsel to the Committee, if any; (c) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: _____ and (d) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn: _____, Esq.

## Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders, if any, shall be held in one or more escrow accounts by the Debtor's counsel, but shall not become property of the Debtor's estate absent further order of the Court.  The Good Faith Deposit of any Qualified Bidder that is neither the Prevailing Bidder nor the Backup Bidder, if any, shall be returned to such Qualified Bidder not later than three (3) business days after the Sale Approval Hearing.  The Good Faith Deposit

8

of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (a) the closing of the transaction with the Prevailing Bidder and (b) the Outside Backup Date.  If the Prevailing Bidder timely closes the winning transaction, its Good Faith Deposit, if any, shall be credited towards its purchase price.

<u>**Reservation of Rights**</u>

Except as otherwise provided in the Asset Purchase Agreement or the Sale Order, the Debtor further reserves the right as it may reasonably determine to be in the best interests of its estate, in consultation with Centennial Bank, to:  (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtor and its estate; (e) remove some or all of the Acquired Assets from the Auction; (f) waive terms and conditions set forth in the Modified Asset Purchase Agreement herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Approval Hearing in open court without further notice; and (j) modify these Bidding Procedures as they may determine to be in the best interests of its estate or to withdraw the Motion at any time with or without prejudice.

5887546-2

**EXHIBIT 2 to the Bidding Procedures Order**

**(Sale Notice)**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

ADAMS STREET LOFTS, LLC             Case No. Chapter 11 Case

        Debtor.

_____/

## <u>NOTICE OF AUCTION AND SALE HEARING</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

    1.    On _____, 2014, Adams Street Lofts, LLC (the "Debtor"), filed its Motion[1] for entry of an order (the "Bidding Procedures Order"), among other things, (a) approving Bidding Procedures for the sale of substantially all of the assets owned by the Debtor (the "Acquired Assets") as described in the form Asset Purchase Agreement; (b) approving the Asset Purchase Agreement; (c) approving the form and manner of notice of the auction of the Acquired Assets and the Sale Hearing; (d) approving procedures relating to the assumption and assignment of contracts and leases; and (e) scheduling a sale hearing (the "Sale Approval Hearing") to consider the sale of the Acquired Assets and setting objection and bidding deadlines with respect to the sale of the Acquired Assets.  The Motion additionally requests entry of an order (the "Sale Order") approving (i) the sale of the Acquired Assets free and clear of liens, claims, encumbrances and interests contemplated by the Asset Purchase Agreement; (ii) assumption and assignment of certain executory contracts and unexpired leases; and (iii) certain related relief.

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion and/or the Bidding Procedures, as applicable.

2.     On _____, 2014, the United States Bankruptcy Court for the Northern District of Florida entered the Bidding Procedures Order [ECF No. ____].  Pursuant to the Bidding Procedures Order, the auction for the Acquired Assets shall take place on **October 15, 2014 at _____ __.m. (prevailing Eastern Time)** at Berger Singerman LLP, 125 S. Gadsden Street, Suite 300, Tallahassee, FL 32301.  Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, by no later than **October 14, 2014 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline") may participate at the Auction.  Any party that wishes to take part in this process and submit a bid for the Acquired Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.  Parties interested in receiving information regarding the sale of the Acquired Assets should contact the Debtor's auctioneer, Sperry Van Ness Auction Services, LLC, Attn: Louis B. Fisher III, National Director, 800-510-5465, Fisherl.svn@gmail.com.

3.     To the extent that the Acquired Assets contain personally identifiable information, the proposed sale, upon consummation, will transfer to the Prevailing Bidder such information subject to any existing privacy policy or policies of the Debtor in place as of the date hereof governing such information.

4.     The Sale Approval Hearing to consider approval of the sale of the acquired Assets to the Prevailing Bidder free and clear of all liens, claims and encumbrances (other than Permitted Liens) will be held before the Honorable Karen K. Specie, United States Bankruptcy Judge, Courtroom ___, U.S. Bankruptcy Court, 110 East Park Avenue, Tallahassee, Florida on **October 17, 2014 at _____ __.m. (prevailing Eastern Time)**, or at such earlier date as counsel may be heard.  The Sale Approval Hearing may be continued from time to time

5887546-2

without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Approval Hearing (or in agenda).

5.      Objections, if any, to the sale of the Acquired Assets contemplated by the Asset Purchase Agreement, or the relief requested in the Motion (including with respect to cure amounts and adequate assurance) must: (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the Northern District of Florida, United States Bankruptcy Courthouse, 110 East Park Avenue, Suite 100, Tallahassee, FL 32301, (or filed electronically via CM/ECF), on or before the earlier of **three (3) days prior to the date of the Auction; (October 10, 2014)**, or such earlier date and time as the Debtor may agree and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon:  (i) counsel to the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL  32301, Attn: Brian G. Rich, Esq.; (ii) counsel to the Committee, if any; (iii) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: _____; and (iv) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn:_____, Esq.

6.      The non-Debtor party to any Scheduled Contract(s) will have until the Sale Approval Hearing to object to the Prevailing Bidder's ability to perform under such Scheduled Contract(s).

7.      This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict and the Debtor encourages parties in interest to review such documents in their entirety.  **Copies of the Motion, the Asset Purchase Agreement (including**

3

exhibits thereto), the Bidding Procedures, and/or the Bidding Procedures Order may be obtained by request in writing, by telephone, or via email from counsel to the Debtor: Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL  32301, Attn: Brian G. Rich, Esq.; Tel. (850) 561-3010; email at brich@bergersingerman.com.  In addition, copies of the aforementioned pleadings  may be found on the Pacer website, http://ecf.flsb.uscourts.gov.

Dated: _____ __, 2014                    Respectfully submitted,

                                               BERGER SINGERMAN LLP
                                               Attorneys for Debtor
                                               125 South Gadsden Street, Suite 300
                                               Tallahassee, FL  32301
                                               Telephone:  (850) 561-3010
                                               Facsimile:  (850) 561-3013

                                               By:   /s/ Brian G. Rich                           
                                                     Florida Bar No. 038229
                                                     *brich@bergersingerman.com*

4

# EXHIBIT 3 to the Bidding Procedures Order

**(Cure Notice)**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

ADAMS STREET LOFTS, LLC                  Case No. Chapter 11 Case

       Debtor.

_____/

**NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**[1]

     **PLEASE TAKE NOTICE** that on _____, 2014, the above-captioned debtor and debtor-in-possession (the "Debtor") filed a motion [ECF No. ___] (the "Sale Motion") with the United States Bankruptcy Court for the Northern District of Florida (the "Bankruptcy Court") which seeks approval of key dates, times and procedures related to the sale of substantially all of the Debtor's contemplated by form the Asset Purchase Agreement (the "Acquired Assets").  On _____, 2014, the Bankruptcy Court approved the Bidding Procedures.  On October 17, 2014, the Debtor intends to seek approval of, among other things, the sale of the Acquired Assets, including the assumption and assignment of certain executory contracts and unexpired leases. To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

     **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH THE DEBTOR AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**[2]

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

[2] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases.  This Notice is not an admission by the Debtor that such contract or lease is executory or unexpired.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, the Debtor **may** assume and assign to the Prevailing Bidder the executory contract(s) or unexpired lease(s) listed on <u>Exhibit A</u> attached hereto (each, an "Scheduled Contract") to which you are a counterparty.  The Debtor has conducted a review of its books and records and has determined that the cure amount for unpaid monetary obligations under such Scheduled Contract is as set forth on <u>Exhibit A</u> attached hereto (the "Cure Amount").  **If you disagree with the proposed Cure Amount, you must file an objection with the Bankruptcy Court no later than 4:00 p.m. (prevailing Eastern Time) on October 10, 2014, (the "Objection Deadline") and serve such objection on (a) the Debtor, 420 North Adams, Street, Attn: _____ ; (b) counsel for the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL  32301, Attn: Brian G. Rich, Esq.; Tel. (850) 561-3010; (c) counsel to the Committee, if any; (d) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: _____; and (e) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn: _____, Esq. so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on October 10, 2014.**

**PLEASE TAKE FURTHER NOTICE** that the Debtor proposes that if no objection to the Cure Amount(s), (i) you will be deemed to have stipulated that the Cure Amount(s) as determined by the Debtors is correct, and (ii) you shall be forever barred, estopped and enjoined from asserting any additional cure amount under the Scheduled Contract(s).

**PLEASE TAKE FURTHER NOTICE** that any counterparty to a Scheduled Contract shall have the right to object to the Prevailing Bidder's ability to perform on or before the Sale Approval Hearing scheduled for **October 17, 2014 at _____ __.m. (prevailing Eastern Time)**.

7

To the extent such counterparty does not object in accordance herewith, the Bankruptcy Court may enter an order forever barring such counterparty to a Scheduled Contract from objecting to the adequate assurance of the Prevailing Bidder's ability to perform.

**PLEASE TAKE FURTHER NOTICE** that with respect to any Scheduled Contract assumed and assigned to the Prevailing Bidder, all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after Bankruptcy Court approval of the sale of the Acquired Assets to the Prevailing Bidder or on such other terms as the parties to each such Scheduled Contract may otherwise agree without any further notice to or action, order or approval of the Bankruptcy Court.  In addition, the assumption of each such Scheduled Contract may be conditioned upon the disposition of all issues with respect to such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, with respect to any Scheduled Contract, in the event of a dispute regarding: (a) the amount of any Cure Amount; (b) the ability of the Prevailing Bidder  to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as reasonably practicable following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtor, with the consent of the Prevailing Bidder, may settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder without any further notice to or action, order or approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT** notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection or termination of the Scheduled Contracts.  Moreover, the Debtor explicitly reserves its rights, in its sole discretion, to

8

reject or assume each Scheduled Contract pursuant to section 365(a) of the Bankruptcy Code and nothing herein (a) alters in any way the prepetition nature of the Scheduled Contracts or the validity, priority or amount of any claims of a counterparty to an Scheduled Contract against the Debtor that may arise under such Scheduled Contract; (b) creates a postpetition contract or agreement or (c) elevates to administrative expense priority any claims of an counterparty to an Scheduled Contract against the Debtor that may arise under such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE THAT** this Notice is subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order, the Asset Purchase Agreement and the Bidding Procedures, which shall control in the event of any conflict and the Debtor encourage parties in interest to review such documents in their entirety.  Copies of the Motion, the Asset Purchase Agreement, the Bidding Procedures, and/or the Bidding Procedures Order may be obtained by request in writing, by telephone, or via email from counsel to the Debtor: Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL  32301, Attn: Brian G. Rich, Esq.; Tel. (850) 561-3010; email at brich@bergersingerman.com.  In addition, copies of the aforementioned pleadings may be found on the Pacer website, http://ecf.flsb.uscourts.gov.

5887546-2

Dated: _____ __, 2014                    Respectfully submitted,

                                           BERGER SINGERMAN LLP
                                           Attorneys for Debtor
                                           125 South Gadsden Street, Suite 300
                                           Tallahassee, FL  32301
                                           Telephone:  (850) 561-3010
                                           Facsimile:  (850) 561-3013


                                           By:  _/s/ Brian G. Rich_____
                                           Florida Bar No. 038229
                                           brich@bergersingerman.com

## EXHIBIT A

| [Counterparty Name] | [Contract/Lease] | Cure Amount |
|---|---|---|

# EXHIBIT 4 to the Bidding Procedures Order

**(Assumption Notice)**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**


ADAMS STREET LOFTS, LLC                    Case No. Chapter 11 Case

       Debtor.

_____/

**NOTICE OF ASSUMPTION AND ASSIGNMENT**
**OF EXECUTORY CONTRACT OR UNEXPIRED LEASE**


    **PLEASE TAKE NOTICE THAT**:

    1.    A hearing (the "Sale Approval Hearing")[7] was held at _____ __.m. on _____, 2014 before the Honorable Karen K. Specie, United States Bankruptcy Judge, in the Bankruptcy Court, Courtroom ___, U.S. Bankruptcy Court, 110 East Park Avenue,Tallahassee, Florida.  At the Sale Approval Hearing, the Bankruptcy Court entered an order (the "Sale Order") (a) approving the sale of the Acquired Assets to _____ (the "Purchaser") in accordance with the Asset Purchase Agreement, and (b) authorizing, among other things, the Debtor, pursuant to the terms of the Asset Purchase Agreement, to assume and assign certain executory contracts and unexpired leases to the Purchaser.

    2.    The Purchaser has elected to take assignment of the executory contracts and unexpired leases as set forth on Exhibit A hereto.

Dated: _____ __, 2014                    Respectfully submitted,

                                              BERGER SINGERMAN LLP
                                            Attorneys for Debtor

---

[7] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013


By:   */s/ Brian G. Rich*
Florida Bar No. 038229
*brich@bergersingerman.com*

**EXHIBIT A**

[Counterparty Name/Address]    [Contract/Lease]                    Cure Amount