United States Bankruptcy Court
Northern District of Florida

In re:                                                          Case No. 14-40483-KKS
Adams Street Lofts, LLC                                         Chapter 11
        Debtor

## CERTIFICATE OF NOTICE

District/off: 1129-4         User: ldavis          Page 1 of 1         Date Rcvd: Nov 04, 2014
                             Form ID: pdf002       Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Nov 06, 2014.
db            +Adams Street Lofts, LLC,    420 North Adams Street,    Tallahassee, FL 32301-1155

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                          TOTAL: 0

       ***** BYPASSED RECIPIENTS *****
NONE.                                                                          TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security
Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the
bankruptcy rules and the Judiciary's privacy policies.**

Date: Nov 06, 2014                              Signature:   /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on November 4, 2014 at the address(es) listed below:
          Brian G. Rich    on behalf of Debtor    Adams Street Lofts, LLC brich@bergersingerman.com,
           efile@bergersingerman.com;bwalter@bergersingerman.com;kbeck@bergersingerman.com;sfulghum@bergersi
           ngerman.com;efile@ecf.inforuptcy.com
          Jason H. Egan    on behalf of U.S. Trustee    United States Trustee jason.h.egan@usdoj.gov
          Ronald A. Mowrey    on behalf of Attorney    Governace, Inc. rmowrey@mowreylaw.com,
           firm@mowreylaw.com
          United States Trustee    USTPRegion21.TL.ECF@usdoj.gov
                                                                              TOTAL: 4

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

IN RE:                                    Case No. 14-40483

ADAMS STREET LOFTS, LLC                   Chapter 11 Case

        Debtor.

_____/

**ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF ORDER (A) APPROVING COMPETITIVE BIDDING AND SALE PROCEDURES; (B) APPROVING FORM AND MANNER OF NOTICES; (C) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (D) SCHEDULING DATES TO CONDUCT AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE, INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) AUTHORIZING SALE OF SUBSTANTIALLY ALL THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (F) GRANTING RELATED RELIEF [DOC. 46]**

**THIS CAUSE** came before the Court on the 28th day of October, 2014 at 3:00 p.m. in Tallahassee, Florida upon the *Debtor's Motion For Entry of Order (A) Approving Competitive Bidding and Sale Procedures; (B) Approving Form and Manner of Notices; (C) Approving Form of Asset Purchase Agreement; (D) Scheduling Dates To Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases; (E) Authorizing Sale of Substantially All The Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (F) Granting Related Relief* (the "Bid Procedures Motion" or the "Motion")[1] [ECF No. 46] filed by Adams Street Lofts, LLC, the above-captioned debtor and debtor in possession (the "Debtor").  Having reviewed the Bid Procedures Motion and the record in these cases, and having considered the statements of counsel for the Debtor, and the evidence adduced by the Debtor (including proffers of evidence

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion, the bidding procedures attached hereto as Exhibit 1 (the "Bidding Procedures") or that certain proposed form of Asset Purchase Agreement as applicable.

admitted into evidence without objection), the Court finds that establishing procedures for a sale of the Acquired Assets (as defined below) in accordance with this Bidding Procedures Order, is in the best interests of the Debtor's estate.  Accordingly,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014;

B.    The Court has jurisdiction over the Motion and the transaction contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409;

C.    The statutory bases for the relief requested in the Motion are (i) sections 105, 363, 364 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and (ii) Bankruptcy Rules 2002(a)(2), 6004, 6006 and 9014;

D.    Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Sale Approval Hearing.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to creditors, equity holders and other parties in interest;

E.    The Debtor's proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of substantially all of the Debtor's assets as contemplated by the Asset Purchase Agreement (the "Acquired Assets"), and the Bidding Procedures to be employed in

connection therewith;

F.      The Debtor articulated good and sufficient reasons for the Court to:  (i) approve the Bidding Procedures; (ii) schedule the Sale Approval Hearing, approve the manner of notice of the Motion and the Sale Approval Hearing, and set the Sale Objection Deadline (as defined below); and (iii) approve the procedures for the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assumed Executory Contracts"), including notice of proposed cure amounts;

G.      The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate, its creditors, equity holders and other parties in interest; and

H.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets.

IT IS THEREFORE ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.      The form of Asset Purchase Agreement attached as **Exhibit A** is incorporated herein and is approved to be used as the form of contract for the Auction.

4.      The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby incorporated herein and approved in their entirety.  The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

5.      As further described in the Bidding Procedures, the deadline for submitting bids for the Acquired Assets (the "Bid Deadline") is **December 10, 2014 at 4:00**

**p.m. (prevailing Eastern Time)**.  No Bid shall be deemed to be a Qualified Bid or otherwise considered for any purposes unless such Bid meets the requirements set forth in the Bidding Procedures.

6.      The Debtor may sell the Acquired Assets (either individually or in bulk), and enter into the transactions contemplated by the Asset Purchase Agreement by conducting an Auction in accordance with the Bidding Procedures.

7.      If Qualified Bids are timely received by the Debtor in accordance with the Bidding Procedures, the Auction shall take place on **December 12, 2014 at 10:00 a.m. (prevailing Eastern Time)** at Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL 32301, or such other place and time as the Debtor shall notify all Qualified Bidders, any official committee of unsecured creditors appointed in this chapter 11 case (the "Committee"), and other invitees.  The Auction shall be conducted in accordance with the Bidding Procedures.

8.      The Sale Approval Hearing shall be held before the Court on **December 16, 2014 at 1:30 p.m. (prevailing Eastern Time),** or at such earlier date as counsel and interested parties may be heard.

9.      Objections, if any, to the Sale contemplated by the Asset Purchase Agreement must:  (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the Northern District of Florida, United States Bankruptcy Courthouse, 110 East Park Avenue, Suite 100, Tallahassee, FL 32301 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on the earlier of three (3) business days prior to the date of the Auction **(December 9, 2014)** (the "Sale Objection Deadline"); and (d) be served upon (i) counsel to the Debtor, Berger Singerman, LLP, 125 South Gadsden Street,

Suite 300, Tallahassee, FL 32301 Attn: Brian G. Rich, Esq. (ii) counsel to the Committee, if any,

(iii) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West

Romana Street, Suite 800, Pensacola, FL 32502, Attn: William E. Bond, Jr., Esq., and (iv) the

Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301,

Attn: Jason H. Egan, Esq.,  in each case, so as to be actually received no later than 4:00 p.m.

(prevailing Eastern Time) on the same day.

   10. The notice, substantially in the form attached hereto as **<u>Exhibit 2</u>** (the

"Sale Notice"), is hereby approved.

   11. On or before three (3) business days after entry of this Bidding Procedures

Order, the Debtor will cause the Sale Notice to be sent by first-class mail postage prepaid, to the

following: (a) all creditors or their counsel known to the Debtor to assert a lien (including any

security interest), claim, right, interest or encumbrance of record against all or any portion of the

Acquired Assets; (b) the Office of the United States Trustee; (c) all applicable federal, state and

local taxing and regulatory authorities of the Debtor or recording offices or any other

governmental authorities that, as a result of the sale of the Acquired Assets, may have claims,

contingent or otherwise, in connection with the Debtor's ownership of the Acquired Assets or

have any known interest in the relief requested by the Motion; (d) the state and local

environmental agencies in the jurisdictions where the Debtor owns or leases real property; (e) the

United States Attorney's office for the Northern District of Florida; (f) all parties in interest who

have requested notice pursuant to Bankruptcy Rule 2002 as of the date of entry of this Bidding

Procedures Order; (g) counsel to the Committee, if any; (h) all parties to any litigation involving

the Debtor; (i) all counterparties to any executory contract or unexpired lease of the Debtor; (j)

all other known creditors and interest holders of the Debtor; and (k) all potential bidders previously identified or otherwise known to the Debtor.

12.    **Copies of exhibits to the Bid Procedures Motion (including the Asset Purchase Agreement) may be obtained by request in writing, by telephone, or via email from counsel to the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL 32301, Attn: Brian G. Rich, Esq.; Tel. (850) 561-3010; email at brich@bergersingerman.com, and (iii) may be found on the Pacer website, http://ecf.flnb.uscourts.gov.**

13.    In addition to the foregoing, as soon as practicable, but in any event no later than five (5) business days after the entry of this Bidding Procedures Order, the Debtor shall publish the Sale Notice (modified for publication, as necessary) in *The Wall Street Journal*, national edition.

14.    The notice of potential assumption and assignment of the Scheduled Contracts (as defined in the Cure Notice), substantially in the form attached hereto as **Exhibit 3** (the "Cure Notice"), is hereby approved.

15.    On or before three (3) business days after the entry of this Bidding Procedures Order, the Debtor shall serve by first class mail or hand delivery the Cure Notice on all non-Debtor parties to the Scheduled Contracts.  The Cure Notice shall identify the Scheduled Contracts and provide the cure amounts that the Debtor believes must be paid to cure all prepetition defaults under the Scheduled Contracts (collectively, the "Cure Amounts" and individually, a "Cure Amount").

16.    Unless the non-Debtor party to a Scheduled Contract files an objection (the "Cure Amount Objection") to its scheduled Cure Amount by the Sale Objection Deadline

and serves a copy of the Cure Amount Objection so as to be received no later than the Sale Objection Deadline on the same day to:  (a) the Debtor, Adams Street Lofts, LLC, 420 North Adams Street, Tallahassee, FL 32301, Attn:  Jonathan Leoni, Manager; (b) counsel for the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL 32301, Attn: Brian G. Rich, Esq.; (c) counsel to the Committee, if any; (d) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: William E. Bond, Jr., Esq.; and (e) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn: Jason H. Egan, Esq.; such non-Debtor party shall be deemed to consent to the Cure Amount proposed by the Debtor and shall be forever enjoined and barred from seeking an additional amount on account of the Debtor's cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtor, its estate or the Prevailing Bidder on account of the assumption and assignment of the Scheduled Contracts and shall be deemed to have consented to the proposed assumption and assignment.  In addition, if no timely Cure Amount Objection is filed, the Prevailing Bidder shall enjoy all the rights and benefits under all Scheduled Contracts without the necessity of obtaining any party's written consent to the Debtor's assumption and assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment or to object or contest that the Prevailing Bidder has not provided adequate assurance of future performance.  Information regarding adequate assurance of future performance submitted as party of any Qualified Bid with respect to Scheduled Contracts shall be provided, upon request to Debtor's counsel made on or before the Bid Deadline, to the requesting non-Debtor party to a Scheduled Contract within 24 hours of the Bid Deadline.

17.     The non-Debtor parties to the Scheduled Contracts shall have until the Sale Approval Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption and assignment of such Scheduled Contract solely on the issue of whether the Prevailing Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (an "Adequate Assurance Objection"); provided, however, that any objections to the assumption and assignment of Scheduled Contracts that do not relate to the issue of whether the Prevailing Bidder can provide adequate assurance of future performance must be filed by the Sale Objection Deadline.

18.     In the event of a dispute regarding:  (a) any Cure Amount with respect to any Scheduled Contract; (b) the ability of the Prevailing Bidder to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption and assignment, the Cure Amounts shall be paid as soon as reasonably practicable after the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtor, with the consent of the Prevailing Bidder is authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder  without any further notice to or action, order or approval of the Court.

19.     Notwithstanding the inclusion of an executory contract or unexpired lease on any list of Scheduled Contracts, the Prevailing Bidder shall have authority, in its sole discretion, to remove any contract or lease from the list of Scheduled Contracts either (i) at the Auction, or (ii) within five (5) business days after the Bankruptcy Court sustains, in whole or in part, such non-Debtor party's Cure Amount Objection or Adequate Assurance Objection; in either such case, the Debtor shall not assume and assign such Scheduled Contract to the

Prevailing Bidder, as applicable, who removed such contract or lease from any list of Scheduled Contracts.

20.     Within two (2) business days after the Closing Date, the Debtor will file a complete list of the Scheduled Contracts that were assumed and assigned as Assumed Executory Contracts, as of the Closing Date, to the Prevailing Bidder.

21.     The notice of assumption and assignment of the Assumed Executory Contracts, substantially in the form attached hereto as **Exhibit 4** (the "Assumption Notice"), is hereby approved.

22.     The Sale Approval Hearing may be continued, from time to time, without further notice to creditors, equity holders or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

23.     No party submitting an offer or Bid for the Acquired Assets or a Qualified Bid shall be entitled to any expense reimbursement, breakup, termination or similar fee or payment.

24.     If an Auction is conducted, the party with the next highest and best Qualified Bid after the bid made by the Prevailing Bidder (or otherwise second best Qualified Bid at the Auction), as determined by the Debtor, in the exercise of their reasonable business judgment, will be designated as the backup bidder (the "Backup Bidder").

25.     To the extent that the Acquired Assets contain personally identifiable information, the proposed sale, upon consummation, will transfer to the Prevailing Bidder such information subject to any existing privacy policy or policies of the Debtor in place as of the date hereof governing such information.

26.     Except as otherwise provided in this Bidding Procedures Order, the Debtor further reserves the right, as it may determine to be in the best interests of its estate, in consultation with Centennial Bank, to:  (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate; (e) remove some or all of the Acquired Assets from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Approval Hearing in open court without further notice; and (j) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.  In making such determination, the Debtor may take account of non-price considerations, such as the risk that the purchaser will fail to close.

27.     To the extent that any chapter 11 plan confirmed in this case or any order confirming any such plan or any other order in this case (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Bidding Procedures Order, the provisions of this Bidding Procedures Order shall control.  The Debtor's obligations under this Bidding Procedures Order, the provisions of this Bidding Procedures Order shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtor, and the reorganized or reconstituted debtor, as the case may, after the effective date of a confirmed plan

or plans in the Debtor's case (including any order entered after any conversion of the case to case under chapter 7 of the Bankruptcy Code).

28.     To the extent there are any inconsistencies between the terms of this Bidding Procedures Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Bidding Procedures Order shall govern.

29.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

31.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.

**DONE** and **ORDERED** in Tallahassee, Florida on _____November 4, 2014_____.

_____
Karen K. Specie
United States Bankruptcy Judge

Submitted by
Brian G. Rich, Esq.
BERGER SINGERMAN LLP
125 South Gadsden Street, Suite 300
Tallahassee, Florida  32301
Tel. (850) 561-3010
Fax (850) 561-3013
E-mail:  brich@bergersingerman.com

Copies furnished to:
All interested parties

5887546-3

11

## EXHIBIT A

(Asset Purchase Agreement)

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "<u>Agreement</u>") is entered into as of this ____ day of _____, 2014 by and among Adams Street Lofts, LLC, a Florida limited liability corporation, a debtor in possession under chapter 11 of the United States Bankruptcy Code ("<u>Seller</u>"), and _____, a _____ corporation ("<u>Buyer</u>").

## Recitals

WHEREAS, Seller is in the real estate business and developed and sells condominium units located at 420 North Adams Street in Tallahassee, Florida, consisting of 31 units (the "<u>Project</u>"); and

WHEREAS, of the 31 units, 17 units remain unsold, and are owned by Seller and are currently being rented' and

WHEREAS, on August ___, 2014 (the "<u>Petition Date</u>"), Seller filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Northern District of Florida (the "<u>Bankruptcy Court</u>"), Case No. _____ (the "<u>Bankruptcy Case</u>"), and Seller is currently operating the Project as debtor in possession thereunder; and

WHEREAS, Seller desires to sell to Buyer and Buyer desires to purchase from Seller substantially all of the assets of Seller on the terms and conditions set forth herein and as authorized under §§ 105, 363 and 365 of the Bankruptcy Code; and

WHEREAS, Seller believes, following consultations with its advisors and consideration of its alternatives, in light of the current circumstances, that a sale of all of or substantially all of its assets is necessary to maximize value and is in the best interests of Seller and its estate, creditors, and parties-in-interest; and

WHEREAS, Seller has been actively marketing and soliciting bids for the sale of Seller's assets, and has determined that the offer of Buyer for the assets to be sold pursuant to this Agreement is the highest and best offer (in accordance with §363 of the Bankruptcy Code) received for the assets and constitutes a fair and adequate purchase price for such assets;

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## ARTICLE 1
## DEFINITIONS

In addition to the terms defined elsewhere in this Agreement, for purposes of this Agreement the following terms shall have the following respective meanings:

"Acquired Assets" has the meaning set forth in Section 2.1.

"Acquired Contracts" has the meaning set forth in Section 2.1(a).

"Acquired Equipment" has the meaning set forth in Section 2.1(c).

"Acquired Inventory" has the meaning set forth in Section 2.1(b).

"Acquired Permits" has the meaning set forth in Section 2.1(e).

"Acquired Deposits" has the meaning set forth in Section 2.1(g).

"Adjustment Date" means the last Business Day prior to Closing.

"Affiliate" means, with respect to any specified or applicable Person, any other Person who, directly or indirectly, controls, is controlled by, or is under common control with such specified or applicable Person.

"Agreement" has the meaning set forth in the opening paragraph of this document.

"Allocation" has the meaning set forth in Section 3.3.

"Applicable Law" means any statute, law, rule, regulation, or ordinance or any Order of any Governmental Entity to which a specified Person or property is subject.

"Assumed Liabilities" has the meaning set forth in Section 2.4.

"Auction" means the auction process contemplated by the Bidding Procedures.

"Bankruptcy Case" has the meaning set forth in the Recitals.

"Bankruptcy Code" and "Bankruptcy Court" have the meanings set forth in the Recitals.

"Bidding Procedures" means the procedures for the Auction of the Acquired Assets, as established by the Bidding Procedures Order.

"Bidding Procedures Order" means the Bankruptcy Court Order approving the procedures for the Auction and the provisions relating to the entry of the Sale Order by the Bankruptcy Court.

"Bill of Sale" has the meaning set forth in Section 4.2(a).

"Business" has the meaning set forth in the Recitals.

"Business Day" means a day, other than a Saturday, Sunday or federal holiday, on which major banks are open for business in Tallahassee, Florida.

2

"Buyer's Closing Certificate" has the meaning set forth in Section 4.3(c).

"Closing" means the consummation of the purchase and sale and assignment of the Acquired Assets and assumption of the Assumed Liabilities, as contemplated by this Agreement, on the Closing Date.

"Closing Date" means the date on which the Closing occurs.

"Code" means the Internal Revenue Code of 1986, as amended and in effect on the Closing Date.

"Qualifying Bid" has the meaning set forth in the Bidding Procedures Order.

"Qualifying Bidder" has the meaning set forth in the Bidding Procedures Order.

"Consents" means all consents and waivers of third parties (other than the Bankruptcy Court or Governmental Entities) that are required to be obtained prior to or in order to effect the transactions contemplated herein, including, without limitation, the valid assignment, transfer and conveyance from Seller to Buyer of any of the Acquired Contracts, in each case without causing a default, breach or loss of material rights thereunder which could reasonably be expected to have a Material Adverse Effect.

"Cure Costs" means the amount required to cure defaults under the Acquired Contracts as required for a Seller to assume and assign such Acquired Contracts to Buyer at Closing, as determined by agreement between the Seller and the applicable contracting party or by the Bankruptcy Court.

"Earnest Money Deposit" or "Deposit" has the meaning set forth in Section 3.1 with respect to Buyer, and means the amount that is ten percent (10%) of the cash purchase price set forth in its Qualifying Bid.

"Escrow Agent" has the meaning set forth in Section 3.1.

"Excluded Accounts" has the meaning set forth in Section 2.2(a).

"Excluded Assets" has the meaning set forth in Section 2.2.

"Excluded Contracts" has the meaning set forth in Section 2.2(b).

"Excluded Liabilities" has the meaning set forth in Section 2.5.

"Execution Date" means the date of this Agreement.

"Final Order" means an Order of the Bankruptcy Court, or other court of competent jurisdiction, the operation or effect of which has not been reversed, stayed, modified, amended, vacated, or supplemented and as to which Order the time to appeal or seek review, rehearing,

3

reargument or certiorari has expired and as to which no appeal or petition for review, rehearing, reargment or certiorari has been timely filed and remains pending.

"Governmental Entity" means any court or tribunal in any jurisdiction (domestic or foreign) or any public, governmental, legislative or regulatory body, agency, department, commission, board, bureau, or other authority or instrumentality (domestic or foreign).

"Governmental Approvals" means those approvals, authorization and exemptions from Governmental Entities and the making of all necessary registrations and filings (including filings with Governmental Entities) and the taking of all reasonable steps as may be necessary to obtain an approval or waiver from, or to avoid an action or proceeding to prevent the Closing by, any Governmental Entity, which are required to be obtained or taken to consummate the transactions contemplated herein under Applicable Law.

"Intellectual Property" means all intellectual property owned by Seller, including, without limitation, trade names, styles, logos, copyrights, and trademarks, which are useful and necessary in operating the Project.

"Lien" means any interest (other than that of Seller), claim, encumbrance or lien relating to the Acquired Assets, as those terms are used in §§ 101(37) and 363(f) of the Bankruptcy Code.

"Material Adverse Effect" and "Material Adverse Change" means an occurrence or event that materially adversely affects the value of the Acquired Assets taken as a whole, or that materially adversely affects the ability of a party hereto to perform its obligations under this Agreement or timely consummate the transactions contemplated herein, and excludes any such effect resulting, directly or indirectly, from (i) the Bankruptcy Case and circumstances related thereto, or (ii) factors affecting the economy or financial markets or Seller's industry as a whole.

"Order" means any writ, judgment, decree, injunction or similar order, writ, ruling directive or other requirement of any Governmental Entity (in each such case whether preliminary or final).

"Permits" means all permits and licenses relating to the Project.

"Permitted Liens" means any Lien for Taxes not yet due or payable.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, enterprise, unincorporated organization, Governmental Entity, or other entity.

"Petition Date" has the meaning set forth in the Recitals.

"Purchase Price" has the meaning set forth in Section 3.2(a).

"Qualifying Bid" has the meaning set forth in Section 5.2(b)(ii).

4

"Related Agreements" means documents to be executed and delivered at Closing as contemplated hereby, including the Bill of Sale and the Assignment and Assumption Agreement.

"Representative" shall have the meaning set forth in Section 6.6.

"Retained Liabilities" shall have the meaning set forth in Section 2.3.

"Rules" means the Federal Rules of Bankruptcy Procedure.

"Sale Approval Hearing" means the hearing on the entry of the Sale Order.

"Sale Motion" means the motion of Seller, in form and substance acceptable to Seller and Buyer in their reasonable discretion, for, among other things, entry of an Order seeking approval and entry of the Bidding Procedures Order, approving the form of this Agreement, scheduling dates to conduct the Auction and Sale Approval Hearing, and authorizing the sale of the Acquired Assets free and clear of Liens (other than Permitted Liens).

"Sale Order" means an order of the Bankruptcy Court (a) authorizing Seller to close on the terms of this Agreement and the transactions contemplated hereby, in accordance with § 363 of the Bankruptcy Code, which finds, among other things, that Buyer is a good-faith purchaser for value and otherwise entitles Buyer to the protections of § 363(m) of the Bankruptcy Code, and which order has not been reversed or modified on appeal or, if any such appeal is pending, such order shall not have been stayed, (b) approving the sale of the Acquired Assets to Buyer free and clear of any and all Liens (other than Liens that Buyer has agreed to permit or assume hereunder or hereafter) pursuant to § 363(f) of the Bankruptcy Code; (c) determining the Cure Costs and approving the assumption and assignment to Buyer of the Acquired Contracts solely on the terms of such Acquired Contracts; (d) providing that the provisions of Rules 6004(h) and 6006(g) of the Rules are rendered inapplicable and there will be no stay of execution of the Sale Order under Rule 62(a) of the Federal Rules of Civil Procedure; (e) retaining jurisdiction of the Bankruptcy Court to interpret and enforce the terms and provisions of this Agreement; and (f) determining this Agreement (as it may be modified prior to the Sale Approval Hearing) to be the highest and best bid as a result of the Auction.  The form of Sale Order that the Seller will propose that the Bankruptcy Court enter after the Sale Approval Hearing is attached hereto as Exhibit A, but in any event shall be in form and substance acceptable to Buyer and Seller in their reasonable discretion.

"Seller's Closing Certificates" shall have the meaning set forth in Section 4.2(c).

"Seller's Knowledge" or "Knowledge of Seller" means the actual knowledge of the Persons set forth on Schedule 1.1 without independent investigation.

"Tax" or "Taxes" means all taxes, charges, fees, duties, levies or other assessments, however denominated, imposed by any federal, territorial, state, local or foreign government or any agency or political subdivision of any such government, which taxes shall include, without limiting the generality of the foregoing, income or profit, gross receipts, net proceeds, ad valorem, turnover, real and personal property (tangible and intangible), sales, use, franchise,

5888178-1

excise, value added, stamp, leasing, lease, business license, user, transfer, fuel, environmental, excess profits, occupational, interest equalization, windfall profits, severance and employees' income withholding, workers' compensation, Pension Benefits Guaranty Corporation premiums, unemployment and Social Security taxes, and other obligations of the same or of a similar nature to any of the foregoing (all including any interest, penalties or additions to tax related thereto imposed by any taxing authority).

# ARTICLE 2
# PURCHASE OF ASSETS

2.1    <u>Purchase and Sale of Acquired Assets</u>.    Subject to the Bankruptcy Court's authorization of Seller to close on this Agreement and to consummate the transactions contemplated hereby pursuant to the Bidding Procedures Order and the Sale Order, and upon the terms and subject to the conditions contained in this Agreement, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase, assume and acquire from Seller, free and clear of all Liens (except for Permitted Liens) pursuant to §§ 363(b) and 363(f) of the Bankruptcy Code (including, without limitation, claims for successor liability under any theory of law or equity, and claims that Buyer is not a good faith purchaser entitled to the protections of § 363(m) of the Bankruptcy Code), all of Seller's transferable right, title and interest in and to the Acquired Assets.    "<u>Acquired Assets</u>" means all of Seller's transferable interest in assets, tangible or intangible, real, personal or mixed, of any kind and description, and wherever located, that are used in connection with operating the Project (subject to adjustments through Closing as contemplated by this Agreement), excluding the Excluded Assets, but including without limitation the following:

(a)    the agreements and contracts relating to the Project listed on <u>Schedule 2.1(a)</u> (the "<u>Acquired Contracts</u>") (and Seller shall assume in the Bankruptcy Case any Acquired Contracts set forth on Schedule 2.1(a) and assign such Acquired Contracts to Buyer at Closing, subject to the provisions of Section 5.1 hereof);

(b)    all inventory relating to the Project, wherever located, including but not limited to the inventory described in <u>Schedule 2.1(b)</u> (the "<u>Acquired Inventory</u>");

(c)    all fixtures, machinery, equipment, furniture, supplies and tangible personal property owned by Seller and used in connection with the Project, wherever located (the "<u>Acquired Equipment</u>");

(d)    all files, papers, computer files, customer lists and records, advertising materials, promotional materials, studies, reports and books and business records of Sellers in any medium relating to the Project (subject to Seller's rights to access such files and records under Section 6.3, below, and except for books and records relating to Company Plans);

(e)    all Permits listed on <u>Schedule 2.1(f)</u>, to the extent they are freely assignable (collectively, the "<u>Acquired Permits</u>");

(f)    all Intellectual Property used by Seller in connection with the Project and all registered trade names and trademarks held by Seller, including those described on Schedule 2.1(g), to the extent they are freely assignable (the "Acquired Intellectual Property");

(g)    subject in each case to the provisions of Section 3.2(c), all prepaid expenses related to the Acquired Assets, and, to the extent transferable, all deposits posted with utility companies, lessors, vendors or suppliers relating to the Project, including any changes in the amount of any such deposit as of the Closing (collectively, the "Acquired Deposits"); and

(h)    all rights of Seller under any insurance policies maintained by Seller relating solely to the Acquired Assets and Acquired Contracts, to the extent they are freely assignable.

2.2    Excluded Assets.  Notwithstanding anything to the contrary contained in Section 2.1 or elsewhere in this Agreement, the following assets (the "Excluded Assets") are not part of the sale and purchase contemplated hereunder, are excluded from the Acquired Assets, and shall remain the property of Seller after the Closing:

(a)    all accounts receivable arising from the operation of the Project prior to Closing, including, without limitation, those arising under the Acquired Contracts (collectively, the "Excluded Accounts");

(b)    all of Seller's interest in any agreements and contracts relating to the Project listed on Schedule 2.2(b) or subsequently designated as an Excluded Contract (A) by mutual consent of Buyer and Seller or (B) by Buyer's modification of Schedule 2.1(a) from time to time following the execution of this Agreement, by notice given to Seller at least five (5) Business Days prior to the Sale Approval Hearing, to delete any previously designated Acquired Contract therefrom; provided that no such modification shall change or affect the Purchase Price in any respect, in each case to the extent the same are not assumed by Seller and assigned to Buyer at or prior to the Closing (the "Excluded Contracts"), and including any accounts receivable arising under any Excluded Contracts;

(c)    all rights of Seller under any insurance policies maintained by Seller relating to the Project (except as otherwise provided under Section 2.1(h) and regarding casualty insurance proceeds relating to the Acquired Assets);

(d)    claims for any federal, state, local or foreign Tax refunds, rebates, abatements or other recovery for Taxes of Seller, together with any interest due thereon or penalty rebate arising therefrom, all Tax refunds, rebates, or other recoveries of Seller for any period, and all of Seller's rights and claims against third parties that have arisen or accrued at any time prior to Closing;

(e)    all of Seller's rights under this Agreement and/or the Related Agreements (including but not limited to rights relating to the Purchase Price);

(f)    all deposits, including cash deposits with vendors, utilities, and lessors that are not transferable, and any deposits related to any Excluded Assets owned or leased by Seller, and all of Seller's' prepaid expenses and deposits relating to Excluded Assets;

(g)    all bank accounts of Seller and all cash, cash equivalents, and short-term investments;

(h)    all minute books, stock records, and corporate seals;

(i)    all rights in connection with and assets of the Company Plans, and Seller shall retain and not sell or deliver to Buyer the books, records, and files relating to the Company Plans or any other confidential personnel information;

(j)    all commercial tort claims; and

(k)    all claims and avoidance recovery, subordination or other actions arising out of the commencement of the Bankruptcy Case, including without limitation those arising under §§ 506, 510, 542 - 551 and 553 of the Bankruptcy Code.

Seller expressly retains the rights to enforce and exercise their remedies pursuant to any of the Excluded Assets.

2.3    Retained Liabilities.  Seller shall retain the Retained Liabilities, and Buyer shall have no liability therefor. "Retained Liabilities" shall mean every liability of Seller other than the Assumed Liabilities.

2.4    Assumption of Liabilities.  On the terms and subject to the conditions set forth in this Agreement, at the Closing Buyer shall assume and agree to pay, perform and discharge the following liabilities and obligations of Seller (the "Assumed Liabilities"):

(a)    all payment and performance obligations arising after the Closing under the Acquired Contracts, the Acquired Permits and the Acquired Intellectual Property in accordance with the terms of the applicable Acquired Contracts, Acquired Permits and Acquired Intellectual Property;

(b)    all liabilities and obligations arising as a result of Buyer's acquisition or operation of the Acquired Assets and accruing after the Closing Date;

(c)    Cure Costs in respect of Acquired Contracts; and

(d)    any other liabilities specifically imposed upon Buyer pursuant to this Agreement.

2.5    Excluded Liabilities.  Except for the Assumed Liabilities, Buyer shall not assume any other liability of obligation of Seller of whatever nature, whether presently in existence or arising hereafter.  All such other liabilities and obligations (collectively, the "Excluded Liabilities") shall be retained by and remain liabilities and obligations of Seller, as applicable. The Excluded Liabilities include, without limitation:

8

(a)    payment and performance obligations arising or accruing in respect of periods prior to the Closing under the Acquired Contracts, the Acquired Permits and the Acquired Intellectual Property; and

(b)    any liabilities or obligations that do not relate to any Acquired Assets.

2.6    "As Is" Transaction.  Buyer hereby acknowledges and agrees that, except as otherwise expressly provided in this Agreement, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Acquired Assets, or otherwise relating to any of the transactions contemplated hereby, including without limitation any income to be derived or expenses to be incurred in connection with the Acquired Assets, the physical condition of any Acquired Assets comprising a part of the Acquired Assets or which is the subject of any Acquired Contract, the value of the Acquired Assets (or any portion thereof), the terms, amount, validity or enforceability of any Assumed Liabilities, the merchantability or fitness of the Acquired Assets or any other portion of the Acquired Assets for any particular purpose. Without in any way limiting the foregoing, subject to the representations, warranties and covenants expressly set forth in this Agreement, **Seller hereby disclaims any warranty, express or implied, relating to this transaction, including but not limited to implied warranties of merchantability or fitness for any particular purpose** as to any portion of the Acquired Assets. Buyer further acknowledges that Buyer, at Buyer's cost and expense, conducted and completed an independent inspection and investigation of the physical condition of the Acquired Assets and all such other matters relating to or affecting the Acquired Assets and the Project as Buyer deemed necessary or appropriate and that in proceeding with its acquisition of the Acquired Assets and entering into this Agreement, except for any representations and warranties, and covenants expressly set forth in this Agreement, Buyer is doing so based solely upon such independent inspections and investigations. Accordingly, subject to the representations, warranties, and covenants expressly set forth in this Agreement, Buyer will accept the Acquired Assets at the Closing ***"AS IS," "WHERE IS," AND "WITH ALL FAULTS."***

## ARTICLE 3
## PURCHASE PRICE

3.1    Earnest Money Deposit.  Buyer has delivered to Sellers' attorneys, Berger Singerman LLP ("Escrow Agent"), simultaneously with the execution of this Agreement, $_____, as and for the earnest money deposit hereunder (the "Earnest Money Deposit" or "Deposit"), to be held in escrow by Escrow Agent and to be disbursed by Escrow Agent in accordance with the terms of the Escrow Agreement and Section 10.2.

3.2    Purchase Price; Purchase Price Adjustment.

(a)    Upon the terms and subject to the conditions set forth in this Agreement, Buyer shall pay to Seller in cash at Closing the amount of $_____ (the "Purchase Price"), subject to certain adjustments as set forth in this Article 3 and elsewhere in this Agreement. At Closing, Buyer shall also assume the Assumed Liabilities. At Closing, Buyer shall pay the Purchase Price to Seller by wire transfer in immediately available U.S. funds to the account designated by Seller, and Escrow Agent

9

shall deliver the Earnest Money Deposit to Seller (the amount of which shall be credited against the Purchase Price payable by Buyer at Closing).

(b)      At Closing, personal property Taxes applicable to the Acquired Assets shall be pro-rated to the day preceding the Closing Date on the basis of the fiscal year for which assessed (or, if not available, based on the prior fiscal year).  If such Taxes cannot be adjusted with certainty at the Closing because of the unavailability of information as to the amounts, Seller shall estimate such adjustments at Closing.

## ARTICLE 4
## CLOSING

4.1    <u>Closing</u>.  Subject to the satisfaction or waiver of the conditions set forth in this Agreement, the Closing shall occur upon satisfaction of the conditions to Closing but not later than October 15, 2014 in the offices of Escrow Agent (or on such other date and at such other time and place as the parties shall mutually agree in writing).

4.2    <u>Seller's Deliveries at Closing</u>.  At Closing, Seller shall deliver, or cause to be delivered, to Buyer the following items:

(a)      Warranty Deed

(b)      Bill of Sale;

(c)      Assignment and Assumption Agreement and such other bills of sale, assignments, certificates of title, documents, and other instruments of transfer and conveyance as may reasonably be requested by Buyer, each in form and substance reasonably satisfactory to Buyer and Seller and duly executed by Seller; provided that each such instrument of transfer, including the Bill of Sale, shall expressly provide that Seller shall have no liability in monetary damages thereunder;

(d)      certificates, dated as of the Closing Date and signed by an officer of each Seller in a corporate capacity, stating that all conditions specified in Section 9.2 have been satisfied;

(e)      such other instruments and documents as Buyer reasonably deems necessary in connection with the transactions contemplated by this Agreement; and

(f)      physical possession and control of the Acquired Assets as soon thereafter as possible.

4.3    <u>Buyer's Deliveries at Closing</u>.  At Closing, Buyer shall deliver, or cause to be delivered, to Seller the following items:

(a)      payment of the balance of the Purchase Price specified under Section 3.1;

   (b) the Assignment and Assumption Agreement (pursuant to which Buyer shall assume the Assumed Liabilities) and the other Related Agreements to be executed by Buyer;

   (c) a certificate, dated as of the Closing Date and signed by an executive officer of Buyer in corporate capacity, stating that the conditions specified in Sections 9.1 have been satisfied;

   (d) the resolutions duly adopted by the Board of Directors of Buyer (and any stockholders or other Persons whose consent is required) authorizing the execution, delivery and performance of this Agreement, the Related Agreements and any other agreement or instruments contemplated hereby or thereby, and the consummation of the transactions contemplated herein by Buyer; and

   (e) such other instruments and documents as Seller shall reasonably deem necessary in connection with the transactions contemplated by this Agreement.

  4.4 <u>Closing Costs</u>.  In addition to any other costs to be borne by Seller pursuant to this Agreement, Seller shall pay the cost of obtaining the Bidding Procedures Order and the Sale Order.  In addition to any other costs to be borne by Buyer pursuant to this Agreement, Buyer shall pay all Taxes applicable to, imposed upon or arising out of the sale or transfer of the Acquired Assets to Buyer and the other transactions contemplated by this Agreement (including, but not limited to, sales, use, gross receipts, and intangible Taxes), and all costs and expenses incurred by Buyer as a result of any financing obtained by Buyer.  Except as set forth in this Section or elsewhere in this Agreement, each of the parties shall bear its own expenses and the expenses of its counsel and other agents in connection with the transactions contemplated hereby.

## ARTICLE 5
## BANKRUPTCY CASE

  5.1 <u>Consents</u>.  Seller and Buyer shall use their commercially reasonable efforts prior to Closing to obtain all required Consents of third parties whose consent is required under § 365 of the Bankruptcy Code in order for Seller to validly assign the applicable Acquired Contract to Buyer at Closing (other than those obviated by the Sale Order).  All such necessary third party consents shall be in writing and executed counterparts thereof shall be delivered to Buyer promptly after Seller's receipt thereof but in any event prior to Closing.  Notwithstanding the foregoing or anything contained herein to the contrary, this Agreement shall not constitute an agreement to assign any lease or contract or any claim or right or any benefit arising thereunder or resulting therefrom if an attempted assignment thereof, notwithstanding the Sale Order or without the consent of a third party thereto, would constitute a default thereof or in any way materially adversely affect the rights of Buyer thereunder.  If such Consent is not obtained, or if an attempted assignment thereof would be ineffective or would materially adversely affect the rights thereunder, Seller shall use its commercially reasonable efforts after Closing to provide to Buyer the benefits under any such lease or contract.  Buyer shall pay any Cure Costs relating to Acquired Contracts that Buyer elects to have Seller assume and assign to Buyer, and will pay any additional costs resulting from any requirements (acceptable to the parties hereto and the

11

third party to the applicable Acquired Contract) imposed by Buyer in connection with the assignment and assumption of any Acquired Contracts. Buyer shall be responsible for complying with the provisions of §365(b)(1)(C)) of the Bankruptcy Code.

## ARTICLE 6
## COVENANTS

6.1 <u>Conduct and Preservation of the Acquired Assets</u>. Except as provided in this Agreement (including this Section 6.1), or unless otherwise consented to by Buyer, which consent shall not be unreasonably delayed or withheld, and except as otherwise required, authorized or restricted pursuant to any Order of the Bankruptcy Court, during the period from the date hereof to the Closing, Seller shall cause the Project to be conducted consistent with its practice since the Petition Date and in the ordinary course of business and shall, consistent with its practice since the Petition Date, the requirements of the Bankruptcy Code and the orders of the Bankruptcy Court, (i) preserve the present business operations, organization and goodwill of the Business (but Seller shall not be required to make any payments or enter into or amend any contractual agreements, arrangements, or understandings to satisfy the foregoing obligation unless such payment or other action is required by or consistent with past practice since the Petition Date); (ii) in all material respects preserve, maintain, and protect the assets, rights, and properties included in the Acquired Assets; (iii) comply in all material respects with all post-petition contractual and other obligations applicable to the operation of the Business and the Acquired Assets; and (iv) comply in all material respects with Applicable Laws, insofar as they relate to the Acquired Assets.

6.2 <u>Access to Books and Records</u>. For a period of five years after the Closing Date, upon the request of Seller and upon reasonable prior notice for any reasonable purpose, Buyer shall provide Seller and Seller's representatives with access during normal business hours to the books and records of the Project (reflecting operations and transactions prior to the Closing) and shall allow Seller and Seller's representatives to make copies thereof at Seller's expense, provided that such access shall be in a manner so as not unreasonably to intefere with the normal business operations of Buyer. The provisions of this Section shall survive the Closing.

6.3 <u>No Sale or Encumbrance of Acquired Assets.</u> Except for Liens granted to Seller's prepetition and post-petition creditors in connection with the Bankruptcy Case (all of which such Liens shall attach and be transferred to the proceeds of the sale contemplated by this Agreement), Seller will not sell or further encumber any Acquired Assets, other than the sale of inventory in the ordinary course, or as provided in this Agreement or Order of the Bankruptcy Court.

6.4 <u>Accounts Receivable; Payments Received</u>. All amounts payable or attributable to services, goods or materials rendered, sold or provided by Seller to the customers of the Project prior to Closing under Acquired Contracts, or otherwise relating to the Project (the "<u>Pre-Closing Receivables</u>") shall be retained and remain the exclusive assets and property of Seller, after giving effect to the transactions contemplated by this Agreement.

## ARTICLE 7
## REPRESENTATIONS AND WARRANTIES OF SELLERS

Seller hereby represents and warrants to Buyer that, except as set forth in the Schedules attached hereto:

7.1    Organization, Standing, and Power.  Seller is a corporation, organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has the requisite power and authority to carry on its business as now being conducted, except where the failure to be so organized, existing or in good standing or to have such power or authority would not, individually or in the aggregate, have a Material Adverse Effect.

7.2    Authority.  Upon entry of the Bidding Procedures Order and the Sale Order, Seller will have all requisite corporate power and authority to enter into this Agreement and the Related Agreements and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Related Agreements by Seller and the consummation by Seller of the transactions contemplated hereby and thereby have been or prior to Closing will be duly authorized by all necessary corporate action on the part of Seller or by Order of the Bankruptcy Court, subject to the conditions set forth in this Agreement.  This Agreement has been duly executed and delivered by Seller and, upon entry of the Bid Procedures Order and Sale Order, will constitute the valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

7.3    No Conflict.  Subject to entry of the Bidding Procedures Order and the Sale Order by the Bankruptcy Court or as otherwise contemplated by this Agreement, neither the execution, delivery or performance of this Agreement and the Related Agreements, the consummation of the transactions contemplated by this Agreement and the Related Agreements nor the compliance with the provisions hereof or thereof will (i) contravene, conflict with, or result in a violation of any provision of the certificate of incorporation of Seller (except if permitted or authorized by Order of the Bankruptcy Court), (ii) to Seller's Knowledge,  conflict with or result in a breach of the terms, conditions or provisions of any Order of a Governmental Entity, or (iii) to Seller's Knowledge, result in the creation or imposition of any Lien on any of the Acquired Assets, except for those arising by, through or under Buyer.

7.4    Third-Party Approvals. Except for the Bidding Procedures Order and the Sale Order and as contemplated by the other provisions of this Agreement, the execution, delivery and performance by Seller of this Agreement and the Related Agreements and the transactions contemplated hereby and thereby do not require any Governmental Approvals or any consents, waivers, authorizations or approvals of, or filings with, any third parties which have not been obtained (or will not have been obtained at or prior to Closing) by Seller, except for those as to which the failure to obtain the same is not reasonably likely to have a Material Adverse Effect.

7.5    Real Property Assets.  Schedule 7.5 lists all of the real estate assets owned or leased by Seller relating to the Business.

7.6    Acquired Contracts.  To Seller's Knowledge, except for defaults caused by the commencement of the Bankruptcy Case or which are not reasonably likely to have a Material

Adverse Effect, each Acquired Contract is valid and binding upon Seller and is in full force and effect.

7.7    <u>Claims, Litigation, and Disputes</u>.  Except for the Bankruptcy Case, and Orders entered by the Bankruptcy Court, to Seller's Knowledge, there is no claim, litigation, action, grievance, arbitration, or other legal proceeding at law or equity or before any Governmental Entity or threatened against Seller, materially and adversely affecting (i) Seller's ability to perform their obligations hereunder, (ii) the rights granted under the Acquired Contracts, or (iii) the ownership, use, maintenance or operation of the Acquired Assets by Seller.

7.8    <u>Compliance with Laws</u>.  To Seller's Knowledge the Project is in compliance with all Applicable Laws, except in any such case where the failure to be in compliance would not be reasonably likely to have a Material Adverse Effect.  To Seller's Knowledge, the Permits set forth on <u>Schedule 2.1(f)</u> constitute all material permits necessary to conduct the Project, as presently conducted, in substantial compliance with Applicable Laws.

7.9    <u>Taxes</u>.

(a)    To the extent that under Applicable Law the failure of this representation to be true or correct could result in a lien upon or claim against the Acquired Assets or in a claim against Buyer as transferee or owner of the Acquired Assets, (i) Seller has filed or has caused to be filed on a timely basis (or have timely requested an extension of time to file) all Tax returns that are or were required to be filed with respect to the Acquired Assets and the operation of the Project; (ii) all such Tax returns accurately reflect all liabilities required to be reflected thereon; and (iii) except for Taxes the payment of which would not be required pursuant to applicable exemptions or exceptions, including those provided by the Bankruptcy Code or otherwise by reason of the commencement or pendency of the Bankruptcy Case, all Taxes due and payable by Seller with respect to the Acquired Assets and the operation of the Project as shown in such Tax returns have been paid.

(b)    To the extent that under Applicable Law the failure of this representation to be true or correct could result in a lien upon or claim against the Acquired Assets or in a claim against Buyer as transferee or owner of the Acquired Assets, (i) no material deficiency or proposed adjustment which has not been settled or otherwise resolved for any amount of Tax has been proposed, asserted or assessed by any Governmental Entity against Seller with respect to the Acquired Assets and the operation of the Project and there is no action, suit, taxing authority proceeding or audit now in progress, pending or, to Seller's Knowledge, threatened against or with respect to Seller with respect thereto; and (ii) there are no Liens for Taxes (other than for current Taxes not yet due and payable or those being contested in good faith and by appropriate proceedings) upon the Acquired Assets.

7.10    <u>Governmental and Regulatory Consents and Approvals</u>.  To Seller's Knowledge, other than the Bankruptcy Court, there is no Governmental Entity that must consent to the execution, delivery or performance of this Agreement by Seller, except where the failure to obtain any such consent of such Governmental Entity would not have a Material Adverse Effect

14

or would not materially adversely affect the ability of Seller to consummate the transactions contemplated hereby.

7.11   <u>Brokerage Fees</u>.  No broker, investment banker, or other Person engaged by Seller is entitled to any broker's, finder's or other similar fee or commission payable by Buyer in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

7.12   <u>Intellectual Property</u>.   <u>Schedule 2.1(g)</u> lists all material Intellectual Property owned by, registered in the name of or used by Seller in the conduct of the Business.  Except as set forth in <u>Schedule 7.13</u>, there are no material licenses, agreements or commitments outstanding or effective granting any other Person any right to use, operate under, license or sublicense any of the Intellectual Property.

7.13   <u>Acquired Assets</u>.  Seller has good title to the Acquired Assets, free and clear of all liens and encumbrances except for (a) Permitted Liens, and (b) Liens which will be released at Closing or transferred to the proceeds of sale of the Acquired Assets.

## ARTICLE 8
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that:

8.1   <u>Organization, Standing, and Power</u>.  Buyer is a _____ organized, validly existing, and in good standing under the laws of _____ and has the requisite power and authority to carry on its business as now being conducted and to effect the transactions contemplated hereunder.

8.2   <u>Authority</u>.  Buyer has all requisite corporate power and authority to enter into this Agreement and the Related Agreements and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Related Agreements by Buyer and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary action on the part of Buyer, subject to the conditions set forth in this Agreement.  This Agreement has been duly and validly executed and delivered by Buyer and this Agreement constitutes the legal, valid and binding obligation of Buyer and is enforceable against Buyer in accordance with its terms.

8.3   <u>Consents and Approvals; No Violation</u>.  Neither the execution, delivery or performance of this Agreement and the Related Agreements, the consummation of the transactions contemplated by this Agreement and the Related Agreements nor the compliance with the provisions hereof or thereof will, result in any violation of, or default (with or without notice or lapse of time, or both) under, or give to others a right of termination, cancellation or acceleration of any obligation or the loss of a material benefit under, or result in the creation of any Lien upon any of the properties or assets of Buyer under any provision of (i) the charter or organizational document or bylaws of Buyer, (ii) any loan or credit agreement, note, bond, mortgage, indenture, lease or other agreement, instrument, permit, concession, franchise or license applicable to Buyer or (iii) any Order or Applicable Law relating to Buyer or any of its

15

properties or assets, other than, in the case of clauses (ii) or (iii), any such violations, defaults or Liens that, individually or in the aggregate, would not prevent the consummation of any of the transactions contemplated hereby in accordance with the terms of this Agreement. Except for the Governmental Approvals as set forth in <u>Schedule 8.3</u>, no filing or registration with, or authorization, consent or approval of, any Governmental Entity is required by or with respect to Buyer in connection with the execution and delivery of this Agreement by Buyer or is necessary for the consummation of the transactions contemplated by this Agreement.

8.4     <u>Actions and Proceedings</u>.  There are no actions, suits, or other litigation, legal or administrative proceedings or governmental investigations pending or threatened against Buyer which could have the effect of delaying or prohibiting the consummation of the transactions contemplated by this Agreement.

8.5     <u>Brokers</u>.  No broker, investment banker, or other Person engaged by Buyer is entitled to any broker's, finder's or other similar fee or commission payable by Seller in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.  This representation shall survive the Closing, and Buyer shall indemnify and hold harmless Seller for any liabilities incurred by Sellers as a result of the inaccuracy of this representation.

8.6     <u>Financing</u>.  Buyer has (and, to the extent Buyer assigns its rights and obligations hereunder to Buyer's Assignee in accordance with the provisions of Section 12.7, Buyer's Assignee shall have) sufficient available funds to pay the Purchase Price at Closing and to perform its obligations under this Agreement.

## ARTICLE 9
## CONDITIONS OF CLOSING

9.1     <u>Conditions to Obligations of Buyer to Proceed on the Closing Date</u>.   The obligations of Buyer to consummate the transactions provided for by this Agreement shall be subject to the satisfaction or waiver by Buyer, on or prior to the Closing, of each of the following conditions:

(a)     The representations and warranties of Seller herein shall be true and correct in all material respects when made and on the Closing Date with the same effect as though made at such time.  Seller shall have performed in all material respects all of its obligations set forth in this Agreement and shall have complied in all material respects with all of their covenants and conditions set forth in this Agreement prior to or as of the Closing Date;

(b)     All consents and approvals that are necessary to be obtained by Buyer in order to authorize and effect the transactions contemplated by this Agreement shall have been obtained, except where the failure to obtain the same would not have a Material Adverse Effect;

(c)     All Governmental Approvals as may be necessary in connection with the consummation of the transactions contemplated by this Agreement shall have been received;

(d)     There will have been no Material Adverse Change since the date of this Agreement;

(e)     There shall be no material pending or threatened lawsuit, proceeding or governmental action challenging the transactions contemplated by this Agreement; and

(f)     The Sale Order approving this Agreement and authorizing the transactions contemplated hereby shall have been entered by the Bankruptcy Court and shall be a Final.

9.2     <u>Conditions to Obligations of Seller to Proceed on the Closing Date</u>.   The obligations of Seller to consummate the transactions provided for by this Agreement shall be subject to the satisfaction or waiver by Seller, on or before the Closing, of each of the following conditions:

(a)     The representations and warranties of Buyer herein shall be true and correct in all material respects when made and on the Closing Date with the same effect as though made at such time.  Buyer shall have performed in all material respects all its obligations set forth in this Agreement, and shall have complied in all material respects with all its covenants and conditions set forth in this Agreement, prior to or as of the Closing Date;

(b)     All Governmental Approvals as may be necessary in connection with the consummation of the transactions contemplated by this Agreement shall have been received;

(c)     All consents and approvals that are necessary to be obtained by Seller in order to authorize and effect the transactions contemplated by this Agreement shall have been obtained, except where the failure to obtain the same would not have a Material Adverse Effect;

(d)     There shall be no material pending or threatened lawsuit, proceeding or governmental action challenging the transactions contemplated by this Agreement; and

(e)     The Sale Order approving this Agreement and authorizing the transactions contemplated hereby shall have been entered by the Bankruptcy Court.

9.3     <u>Notice of Unsatisfied Condition</u>.  On the date that is no later than three Business Days prior to the date of the Auction, each of Buyer and Seller will deliver to the other written notice of any fact, circumstance or condition of which they have actual knowledge which would cause, or which a reasonable Person would expect to have a substantial likelihood to cause, any of the conditions to Closing set forth in Sections 9.1 or 9.2 of this Agreement not to be satisfied at Closing.

17

## ARTICLE 10
## TERMINATION, AMENDMENT, AND WAIVER

10.1    <u>Termination</u>.  This Agreement may be terminated at any time prior to the Closing Date:

(a)    upon the mutual written consent of Buyer and Seller;

(b)    by Seller, if (i) at the execution of this Agreement or at Closing, the representations and warranties of Buyer in Article 8 shall not be true and correct in all material respects, or (ii) as of the Closing Date any of the conditions specified in Section 9.2 hereof have not been satisfied (unless such failure was solely within the control of Seller), or (iii) Buyer is in material breach of this Agreement, and such breach has not been cured within ten (10) Business Days following the delivery of written notice thereof to Buyer;

(c)    by Buyer, if (i) at the execution of this Agreement or at Closing, the representations and warranties of Seller in Article 7 shall not be true and correct in all material respects, or (ii) as of the Closing Date any of the conditions specified in Section 9.1 hereof have not been satisfied (unless such failure was primarily within the control of Buyer), or (iii) Sellers are in material breach of this Agreement, and such breach has not been cured within ten (10) Business Days following the delivery of written notice thereof to Seller;

(d)    by either Buyer or Seller if there shall be in effect a stay pending appeal or other Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated herein;

(e)    by Buyer or Seller if a motion to dismiss the Bankruptcy Case has been granted by the Bankruptcy Court;

(f)    by Buyer or Seller, if the Bankruptcy Court has not entered the Sale Order by _____, 2014, or (ii) such longer period of time as the Bankruptcy Court may require pursuant to the Bidding Procedures Order; and

(g)    by Buyer or Seller, if the Bankruptcy Court has entered the Sale Order but the Closing Date has not occurred on or before the later to occur of (i) two Business Days after entry of the Sale Order, or in all events by (ii) October 15, 2014, provided the terminating party is not in material breach of its obligations hereunder.

10.2    <u>Effect of Termination</u>.

(a)    If this Agreement is terminated pursuant to Article 10 of this Agreement (other than a termination with respect to which the Earnest Money Deposit is payable to Seller pursuant to Section 10.2(b) below), then the Earnest Money Deposit shall be returned to Buyer, provided that (i) if this Agreement is terminated by Buyer pursuant to Section 10.1(c) and Buyer is not in breach of this Agreement, Buyer's sole remedy shall be to receive a return of the Earnest Money, and (ii) if Buyer is a Backup Bidder (as

18

defined in the Bidding Procedures Order), the Earnest Money Deposit shall be retained by the Escrow Agent and returned to Buyer when the transaction with the Prevailing Bidder is consummated.  In no event whatsoever shall Seller be liable for monetary damages.

(b)     If (i) this Agreement is terminated by Seller pursuant to Section 10.1(b) or 10.1(i) of this Agreement, then the Earnest Money Deposit shall be delivered to Seller as liquidated damages and not a penalty. The parties recognize that the determination of damages in the event of a termination of this Agreement pursuant to Article 10 will be difficult and that the retention by Seller of the amount of the Earnest Money Deposit constitutes a reasonable estimate of such actual damages, and therefore liquidated damages and not a penalty.  Payment of the Earnest Money Deposit to Seller in the event of a termination of this Agreement by Seller pursuant to Section 10.1(b) or 10.1(i) shall be Seller's exclusive remedy under this Agreement in connection with any termination hereof.

(c)     If this Agreement is validly terminated in accordance with this Article 10, this Agreement shall terminate, Escrow Agent shall deliver the Earnest Money Deposit as provided herein, and each of the parties shall be relieved of their respective obligations arising under this Agreement after the date of such termination and such termination shall be without liability to Buyer or Seller; provided, however, that the provisions of this Agreement that specifically survive the termination of this Agreement shall continue to be enforceable.

## ARTICLE 11
## RISK OF LOSS

11.1   <u>Risk of Loss</u>.  From the date hereof through the Closing Date, all risk of loss or damage to the property included in the Acquired Assets shall be borne by Seller, and thereafter shall be borne by Buyer.  If any material portion of the Acquired Assets is destroyed or damaged by fire or any other casualty on or prior to the Closing Date, Seller shall give written notice to Buyer as soon as practicable after, but in any event within five Business Days of, discovery of such damage or destruction, identifying the affected Acquired Assets, the amount of insurance, if any, covering such Acquired Assets and the amount, if any, which Seller is otherwise entitled to receive as a consequence.  If the loss of or damage to the assets so destroyed or damaged have a Material Adverse Effect, then Buyer shall have the right, exercisable prior to Closing by Buyer's written notice to Seller no later than ten Business Days after receipt of Seller's notice hereunder, to terminate this Agreement upon notice to Seller, or accept such Acquired Assets in their destroyed or damaged condition in which event Buyer shall be entitled to the proceeds of any insurance or other proceeds payable with respect to such loss.  In no event shall Buyer become entitled to any insurance proceeds in respect of any Excluded Assets.

## ARTICLE 12
## MISCELLANEOUS

12.1   <u>Expenses</u>.  Except as otherwise provided elsewhere in this Agreement, each party shall pay its own expenses incident to this Agreement and the transactions hereby contemplated.

19

In the event of any litigation between the parties arising out of this Agreement, the prevailing party shall be entitled to recover from the other party its court costs and reasonable attorneys' fees and expenses at the trial and all appellate levels.

     12.2   <u>Governing Law</u>.  This Agreement will be governed by and construed under the laws of the State of Florida and the provisions of the Bankruptcy Code, without regard to conflict-of-laws principles that would require the application of any other law.

     12.3   <u>Notices</u>.  Except as otherwise expressly provided in this Agreement, any notice required or permitted to be given under this Agreement by any party to any other party shall be in writing and shall be (i) personally delivered, (ii) sent postage prepaid by certified or registered mail, (iii) sent by overnight express carrier, next Business Day delivery guaranteed, or (iv) sent by facsimile transmission, in each case to the party being notified at its address and/or fax number as set forth below, or at such other address and/or fax number as the party being notified may have designated for such purpose in a notice given to the other parties.  Such notice shall be deemed received upon the earliest of the following to occur: (i) upon personal delivery; (ii) on the third Business Day following the day sent, if sent by registered or certified mail; (iii) on the next Business Day following the day sent, if sent by overnight express courier, next Business Day delivery guaranteed; and (iv) on the day sent, or if such day is not a Business Day on the next Business Day after the day sent, if sent by facsimile transmission with telecopy confirmation of transmission received by sender.  The notice addresses and fax numbers for the parties are:

If to Seller:         Adams Street Lofts, LLC

                       _____
                       _____
                       Attn: _____
                       Fax No.: (___)____-_____

With a copy to:      Berger Singerman LLP
                       125 South Gadsden Street, Suite 300
                       Tallahassee, Florida 32301
                       Attn:  Brian G. Rich, Esq.
                       Fax No.: (850) 561-3013

If to Buyer:         _____
                       _____
                       _____
                       Attn:
                       Fax No.:

With a copy to:      _____
                       _____
                       _____
                       Attn: _____
                       Fax No.: _____

5888178-1

12.4   <u>Section and Other Headings</u>.   Section or other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

12.5   <u>Schedules and Exhibits; Recitals</u>.   Each schedule, exhibit, and annex attached hereto shall be deemed to be a part of this Agreement to the same extent as if set forth verbatim in the body of this Agreement.   The recitals set forth in this Agreement are incorporated into and made a part of this Agreement.

12.6   <u>Severability</u>.  If any provision of this Agreement should be held to be invalid or unenforceable, the validity and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

12.7   <u>Parties; No Third Party Beneficiaries</u>.   This Agreement shall be binding upon and enforceable against, and shall inure solely to the benefit of, the parties hereto and their respective successors and permitted assigns, including any liquidating trustee, responsible person, or similar representative for the Sellers or the Sellers' estate appointed in connection with the Bankruptcy Case.   Nothing herein shall confer any rights or remedies to any Person which is not a party hereto.  Buyer may not assign its rights or obligations under this Agreement to any Person.

12.8   <u>Counterparts</u>.   This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Agreement by signing any such counterpart.

12.9   <u>Facsimile Signature</u>.   This Agreement may be delivered by facimile or other electronic transmission with the same force and effect as an original signature.

12.10   <u>Further Assurances</u>.  Subject to the terms of this Agreement and to any required approvals or orders of the Bankruptcy Court, each of Buyer and Seller will execute such further documentation or take such further actions as the other party may reasonably request to effectuate the transfer of the Acquired Assets and implement this Agreement.

12.11   <u>Exclusive Jurisdiction</u>. Without limiting any party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all claims, actions, causes of action, suits and Proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 12.3 hereof.

12.12   <u>Non-Survival of Representations, Warranties, Covenants and Agreements</u>. Except as otherwise specifically provided in this Agreement, the respective representations, warranties, and covenants of the Seller contained herein, or in any certificates or other documents delivered prior to the Closing, shall expire with, and be terminated and extinguished by, the Closing, and thereafter Seller shall not have any liability whatsoever with respect to any such representation, warranty, covenant or agreement.   Each of the parties hereto intends to shorten the statute of limitations and agrees that no claims or causes of action may be brought against the

other party arising out of, or based upon, any such representation, warranty, covenant or agreement. Under no circumstances shall Seller be liable for any monetary damages to Buyer hereunder, and return of the Deposit or specific performance shall be Buyer's exclusive remedy for Seller's default.   The provisions of this Section 12.12 and the other sections of this Article 12 shall survive the Closing.

12.13   Entire Agreement.   This Agreement sets forth the entire understanding of the parties hereto with respect to the transactions contemplated hereby and constitutes a complete statement of the terms of such transactions.

12.14   Amendments.   This Agreement may be amended or modified only by written instrument duly executed by the parties hereto.

12.15   Governing Law.   This Agreement shall be governed by the laws of the State of Florida, exclusive of its choice of law principles.

12.16   Waiver.   Any term or condition of this Agreement may be waived at any time by the party which is entitled to the benefit thereof, but only if such waiver is evidenced by a writing signed by such party. No failure on the part of any party hereto to exercise, and no delay in exercising any right, power, or remedy created hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or remedy by any party preclude any other or further exercise thereof or the exercise of any other right, power, or remedy. No waiver by any party hereto of any breach of or default in any term or condition of this Agreement shall constitute a waiver of or assent to any succeeding breach of or default in the same or any other term or condition hereof.

12.17   Calculation of Time Period.   When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

12.18   Waiver of Jury Trial.   **EACH PARTY TO THIS AGREEMENT WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.**

[Remainder of Page Intentionally Left Blank]

5888178-1

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

SELLER:

ADAMS STREET LOFTS, LLC

By:_____

Name:

Title:

BUYER:

_____

By:_____

Name:

Title:

**EXHIBIT A**
**Sale Order**

**EXHIBIT 1 to the Bidding Procedures Order**

**(Bidding Procedures)**

# BIDDING PROCEDURES[1]

By the Bidding Procedures Motion dated October 15, 2014, Adams Street Lofts, LLC (the "Debtor"),[2] sought approval of, among other things, the procedures through which the Debtor will determine the highest and best bid for the sale of substantially all of its assets described in the form Asset Purchase Agreement, a copy of which is attached to the proposed Sale Order as **Exhibit 1**, and attached as **Exhibit A** to the Bidding Procedures Motion (the "Acquired Assets").

On October ___, 2014, the United States Bankruptcy Court for the Northern District of Florida (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtor, in consultation with Centennial Bank, to determine the highest and best price for the Acquired Assets through the process and procedures set forth below (the "Bidding Procedures").

## **Marketing Process**

### *Contact Parties*

The Debtor, in consultation with its auctioneer, Sperry Van Ness Auction Services, LLC ("SVN"), has developed a list of parties whom the Debtor believes may potentially be interested in and who the Debtor reasonably believes would have the financial resources to consummate a transaction (each, individually, a "Contact Party", and collectively, the "Contact Parties"). After the entry of the Bidding Procedures Order, the Debtor and SVN intend to contact the Contact Parties to explore their interest in pursuing a transaction. The Contact Parties may include parties whom the Debtor or its advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a

---

[1]   Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Bidding Procedures Motion") or the Asset Purchase Agreement, as applicable.

[2]   The address for the Debtor is 420 North Adams Street, Tallahassee, FL 32301.

transaction.  The Debtor will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtor may distribute to each Contact Party an "Information Package," comprising:

(a)    A cover letter;

(b)    A copy of these Bidding Procedures; and

(c)    A copy of a non-disclosure agreement (unless the party has already signed a non-disclosure agreement).

### *Access to Diligence Materials*

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party must submit to the Debtor an executed non-disclosure agreement, in   form and substance satisfactory to the Debtor, and evidence demonstrating the party's financial capability with respect to the transaction, as determined by the Debtor, in consultation with Centennial Bank.

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Purchaser."  All due diligence requests must be directed to SVN, Attn: Louis B. Fisher III, National Director, 800-510-5465, Fisherl.svn@gmail.com.

### Auction Qualification Process

To be eligible to participate in the Auction (defined below), each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtor, in consultation with Centennial Bank, to satisfy each of the following conditions:

(a)    <u>Good Faith Deposit</u>:  Each Bid must be accompanied by a deposit in the amount of 10% of the proposed purchase price to an escrow account to be held by Berger Singerman LLP (the "Good Faith Deposit").

(b)    <u>Same or Better Terms</u>:  The Bid must be on terms that, in the Debtor's business judgment, in consultation with Centennial Bank, are substantially similar, the same or

2

better than the terms of the Asset Purchase Agreement. A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the transaction (the "Modified Asset Purchase Agreement"). A Bid shall include a copy of the Asset Purchase Agreement marked to show all changes requested by the Bidder (including those related to purchase price); provided, however, that the terms of the Modified Asset Purchase Agreement are substantially similar, the same or better than the terms of the Asset Purchase Agreement. A Bid must propose a transaction involving all or substantially all of the Debtors' assets or operations. A Bid will not be considered by Debtors as qualified for the Auction if: (i) such Bid contains additional representations and warranties, covenants, closing conditions, termination rights other than as may be included in the Asset Purchase Agreement, (ii) such Bid is not received by Debtor in writing on or prior to the Bid Deadline (as defined herein), (iii) such Bid does not contain evidence that the Person submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby; and (iv) such bid contains a break-up fee, expense reimbursement, or similar type of payment. The Bid shall also identify any executory contracts and unexpired leases of the Debtor that the Bidder wishes to have assumed and assigned to it pursuant to the transaction.

(c)    Corporate Authority: The Bid must include written evidence acceptable to the Debtor, in consultation with Centennial Bank, demonstrating appropriate corporate authorization to consummate the proposed transaction; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor, in consultation with Centennial Bank, of the approval of the transaction by the equity holder(s) of such Bidder.

(d)    Proof of Financial Ability to Perform: The Bid must include written evidence that the Debtor, in consultation with Centennial Bank, demonstrates that the Bidder has the necessary financial ability to close the transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such transaction. Such information must include, *inter alia*, the following:

(i)    contact names and numbers for verification of financing sources;

(ii)    evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtor in the amount of the cash portion of such Bid, in each case, as are needed to close the transaction;

(iii)    the Bidder's current financial statements (audited if they exist), provided, that if the Bidder is an entity formed solely for the purpose of the Bid, the Bidder shall include current financial statements (audited if they exist) for such Bidder's equity holders; and

3

(iv)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor, in consultation with Centennial Bank, demonstrating that such Bidder has the ability to close the transaction; provided, however, that the Debtor shall determine, in consultation with the Debtor's advisors and Centennial Bank, whether the written evidence of such financial wherewithal is acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(e)    Contingencies:    A Bid may not (i) contain representations and warranties, covenants, termination rights, financing, due diligence contingencies other than as may be included in the Asset Purchase Agreement and (ii) be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

(f)    Irrevocable:    A Bid must be irrevocable through the time of the Auction (as defined herein), provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

(g)    Bid Deadline:    Regardless of when a party qualifies as a Preliminary Interested Purchaser, the following parties must actually receive a Bid in writing, on or before **December 10, 2014 at 4:00 p.m. (prevailing Eastern Time)** or such earlier date as may be agreed to by the Debtor (the "Bid Deadline"): (i) the Debtor, Adams Street Lofts, LLC, 420 North Adams Street, Tallahassee, FL 32301, Attn: Jonathan Leoni, Manager; (ii) counsel for the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL 32301, Attn: Brian G. Rich, Esq.; (iii) Sperry Van Ness Auction Services, LLC, 6615 W. Boynton Beach Blvd., Suite 326; Boynton Beach, FL 33437, Attn: Louis B. Fisher III (iv) counsel to the Committee, if any; (v) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: William E. Bond, Jr., Esq.; and (vi) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn: Jason H. Egan, Esq.;   If the Debtor receives one or more Qualified Bids (as defined below), as soon as practicable after the Bid Deadline, the Debtor shall file a notice disclosing the identity and aggregate consideration offered by such Qualified Bid(s).

A Bid received from a Bidder before the Bid Deadline that meets the above requirements

shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder."

## Auction

If one or more Qualified Bids are received by the Bid Deadline, the Debtor will conduct

an auction (the "Auction") to determine the highest and best Qualified Bid.  This determination

4

shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate, including, among other things, the following:  (a) the amount and nature of the consideration; (b) the number, type and nature of any changes to the Asset Purchase Agreement  requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Acquired Assets and the cost to Debtor of such modifications or delay; (d) the total consideration to be received by Debtor; (e) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (f) the net benefit to the estate; and (g) the impact of the transaction on any actual or potential litigation (collectively, the "Bid Assessment Criteria").   Only Qualified Bidders may participate in the Auction.

The Auction shall take place on **December 12, 2014 at 10:00 a.m. (prevailing Eastern Time)** at Berger Singerman LLP, 125 S. Gadsden Street, Suite 300, Tallahassee, FL 32301, or such other place and time as the Debtor shall notify all Qualified Bidders, the Committee, if any, and other invitees. The Auction shall be conducted according to the following procedures:

(a)     The Debtor shall conduct the Auction, and

(b)     The Auction may be transcribed by a certified court reporter and it may be videotaped should the Debtor elect to do so.

The Debtor and its professionals, in consultation with Centennial Bank, shall direct and preside over the Auction.  At the start of the Auction, the Debtor shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (such Qualified Bid, the "Auction Baseline Bid").  Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of the Acquired Assets and at the Debtor's request, each Qualified Bidder must disclose the direct and indirect legal and beneficial owners of the Qualified Bidder.

Unless otherwise agreed by the Debtor, only the Debtor, its counsel and other

professionals, members of the Committee, if any, and its counsel, Centennial Bank and its counsel and any other Qualified Bidder, in each case, along with their representatives, shall attend the Auction in person, and only the Qualified Bidders will be entitled to make any Bids at the Auction.

      (c)     Terms of Overbids.

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:

      (i)     Any Incremental Bid shall be made in increments valued at not less than $10,000.  Additional consideration in excess of the amount set forth in the minimum overbid may include cash and/or noncash consideration.

      (ii)     Remaining Terms Are the Same as for Qualified Bids.  Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.   To the extent not previously provided (which shall be determined by the Debtor), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor, in consultation with Centennial Bank) demonstrating such Bidder's ability to close the transaction proposed by such Overbid and performance obligations under any assumed contracts.

      (iii)     Announcing Overbids.  The Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtor's estate based on, *inter alia*, the Bid Assessment Criteria.

      (iv)     Consideration of Overbids.   The Debtor reserves the right, in its reasonable business judgment, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtor, Centennial Bank, and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or

6

equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

(d)    Backup Bidder.  Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest Qualified Bid after the Bid made by the Prevailing Bidder (as defined herein) or otherwise next best Qualified Bid at the Auction, as determined by the Debtor, in the exercise of its reasonable business judgment, will be designated as a backup bidder (the "Backup Bidder").  The Backup Bidder shall be required to keep its initial Bid, if any (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern time) on the date which is 25 days after the date of the Sale Approval Hearing (the "Outside Backup Date"); or (ii) the date of closing of a transaction with the Prevailing Bidder or with the Backup Bidder.  Following the Sale Approval Hearing, if the Prevailing Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Prevailing Bidder, the Debtor may designate the Backup Bidder to be the new Prevailing Bidder, and the Debtor will be authorized, but not required, to consummate the transaction, with the Backup Bidder without further order of the Bankruptcy Court.  In such case, the defaulting Prevailing Bidder's deposit, if any, shall be forfeited to the Debtor.  The deposit of the Backup Bidder, if any, shall be held by the Debtor until the earlier of 24 hours after (i) the closing of the transaction with the Prevailing Bidder and (ii) the Outside Backup Date.

(e)    Additional Procedures.  The Debtor may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

(f)    Consent to Jurisdiction as Condition to Bidding. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Asset Purchase Agreement, the Auction or the construction and enforcement of any documents delivered in connection with a Bid.

(g)    Sale Is As Is/Where Is.  The Acquired Assets shall be conveyed at Closing free and clear of all liens, claims, interests and encumbrances (other than Permitted Liens), and in their then present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED,**" except for the explicit representations and warranties set forth in the Asset Purchase Agreement.

(h)     Closing the Auction.  The Auction shall continue until there is only one Qualified Bid that the Debtor determines in its reasonable business judgment, after consultation with their financial and legal advisors and Centennial Bank, is the Prevailing Bidder.  In making this decision, the Debtor, in consultation with their financial and legal advisors and Centennial Bank, shall consider the Bid Assessment Criteria.  The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid.

The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

## Sale Hearing

The Court will conduct a hearing (the "Sale Approval Hearing") on **December 16, 2014 at 1:30 p.m. (prevailing Eastern Time)**, at which the Debtor will seek approval of the transactions contemplated by the agreement with the Prevailing Bidder.  Objections, if any, to the sale of the Acquired Assets to the Prevailing Bidder and the transactions contemplated therewith must be in writing and filed with the Court on or before the earlier of **(i) three (3) days prior to the date of the Auction (December 9, 2014,) by 4:00 p.m. eastern prevailing time,** and be served such that they are actually received by (a) counsel to the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL  32301, Attn: Brian G. Rich, Esq.; (b) counsel to the Committee, if any; (c) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: William E. Bond, Jr., Esq. and (d) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn: Jason H. Egan, Esq.

## Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders, if any, shall be held in one or more escrow accounts by the Debtor's counsel, but shall not become property of the Debtor's estate absent further order of the Court.  The Good Faith Deposit of any Qualified Bidder that is neither the Prevailing Bidder nor the Backup Bidder, if any, shall be returned to such Qualified Bidder not later than three (3) business days after the Sale Approval Hearing.  The Good Faith Deposit

8

of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (a) the closing of the transaction with the Prevailing Bidder and (b) the Outside Backup Date.  If the Prevailing Bidder timely closes the winning transaction, its Good Faith Deposit, if any, shall be credited towards its purchase price.

### Reservation of Rights

Except as otherwise provided in the Asset Purchase Agreement or the Sale Order, the Debtor further reserves the right as it may reasonably determine to be in the best interests of its estate, in consultation with Centennial Bank, to:  (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtor and its estate; (e) remove some or all of the Acquired Assets from the Auction; (f) waive terms and conditions set forth in the Modified Asset Purchase Agreement herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Approval Hearing in open court without further notice; and (j) modify these Bidding Procedures as they may determine to be in the best interests of its estate or to withdraw the Motion at any time with or without prejudice.

5887546-3

**EXHIBIT 2 to the Bidding Procedures Order**

**(Sale Notice)**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

IN RE:                                         Case No. 14-40483

ADAMS STREET LOFTS, LLC              Chapter 11 Case

         Debtor.

_____/

### NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

      1. On October 15, 2014, Adams Street Lofts, LLC (the "Debtor"), filed its Motion[1] for entry of an order (the "Bidding Procedures Order"), among other things, (a) approving Bidding Procedures for the sale of substantially all of the assets owned by the Debtor (the "Acquired Assets") as described in the form Asset Purchase Agreement; (b) approving the Asset Purchase Agreement; (c) approving the form and manner of notice of the auction of the Acquired Assets and the Sale Hearing; (d) approving procedures relating to the assumption and assignment of contracts and leases; and (e) scheduling a sale hearing (the "Sale Approval Hearing") to consider the sale of the Acquired Assets and setting objection and bidding deadlines with respect to the sale of the Acquired Assets. The Motion additionally requests entry of an order (the "Sale Order") approving (i) the sale of the Acquired Assets free and clear of liens, claims, encumbrances and interests contemplated by the Asset Purchase Agreement; (ii) assumption and assignment of certain executory contracts and unexpired leases; and (iii) certain related relief.

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion and/or the Bidding Procedures, as applicable.

5887546-3

2.      On October ___, 2014, the United States Bankruptcy Court for the Northern District of Florida entered the Bidding Procedures Order [ECF No. ____].  Pursuant to the Bidding Procedures Order, the auction for the Acquired Assets shall take place on **December 12, 2014 at 10:00 a.m. (prevailing Eastern Time)** at Berger Singerman LLP, 125 S. Gadsden Street, Suite 300, Tallahassee, FL 32301.  Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, by no later than **December 10, 2014 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline") may participate at the Auction.  Any party that wishes to take part in this process and submit a bid for the Acquired Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.  Parties interested in receiving information regarding the sale of the Acquired Assets should contact the Debtor's auctioneer, Sperry Van Ness Auction Services, LLC, Attn: Louis B. Fisher III, National Director, 800-510-5465, Fisherl.svn@gmail.com.

3.      To the extent that the Acquired Assets contain personally identifiable information, the proposed sale, upon consummation, will transfer to the Prevailing Bidder such information subject to any existing privacy policy or policies of the Debtor in place as of the date hereof governing such information.

4.      The Sale Approval Hearing to consider approval of the sale of the acquired Assets to the Prevailing Bidder free and clear of all liens, claims and encumbrances (other than Permitted Liens) will be held before the Honorable Karen K. Specie, United States Bankruptcy Judge, 2nd Floor Courtroom, U.S. Bankruptcy Court, 110 East Park Avenue, Tallahassee, Florida 32301 on **December 16, 2014 at 1:30 p.m. (prevailing Eastern Time)**, or at such earlier date as counsel may be heard.  The Sale Approval Hearing may be continued from

2

time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Approval Hearing (or in agenda).

5.       Objections, if any, to the sale of the Acquired Assets contemplated by the Asset Purchase Agreement, or the relief requested in the Motion (including with respect to cure amounts and adequate assurance) must: (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the Northern District of Florida, United States Bankruptcy Courthouse, 110 East Park Avenue, Suite 100, Tallahassee, FL 32301, (or filed electronically via CM/ECF), on or before the earlier of **three (3) days prior to the date of the Auction; (December 9, 2014)**, or such earlier date and time as the Debtor may agree and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon:  (i) counsel to the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL 32301, Attn: Brian G. Rich, Esq.; (ii) counsel to the Committee, if any; (iii) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: William E. Bond, Jr., Esq.; and (iv) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn: Jason H. Egan, Esq.

6.       The non-Debtor party to any Scheduled Contract(s) will have until the Sale Approval Hearing to object to the Prevailing Bidder's ability to perform under such Scheduled Contract(s).

7.       This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict and the Debtor encourages parties in interest to review such

3

documents in their entirety. **Copies of the Motion, the Asset Purchase Agreement (including exhibits thereto), the Bidding Procedures, and/or the Bidding Procedures Order may be obtained by request in writing, by telephone, or via email from counsel to the Debtor: Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL  32301, Attn: Brian G. Rich, Esq.; Tel. (850) 561-3010; email at <u>brich@bergersingerman.com</u>.  In addition, copies of the aforementioned pleadings may be found on the Pacer website, <u>http://ecf.flnb.uscourts.gov</u>.**

Dated: _____ __, 2014

Respectfully submitted,

BERGER SINGERMAN LLP
*Attorneys for Debtor*
125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013

By:  _/s/ Brian G. Rich_____
Brian G. Rich
Florida Bar No. 038229
*brich@bergersingerman.com*

4

# EXHIBIT 3 to the Bidding Procedures Order

**(Cure Notice)**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

IN RE:                                      Case No. 14-40483

ADAMS STREET LOFTS, LLC                     Chapter 11 Case

            Debtor.

_____/

## NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES[1]

**PLEASE TAKE NOTICE** that on October 15, 2014, the above-captioned debtor and debtor-in-possession (the "Debtor") filed a motion [ECF No. 46] (the "Sale Motion") with the United States Bankruptcy Court for the Northern District of Florida (the "Bankruptcy Court") which seeks approval of key dates, times and procedures related to the sale of substantially all of the Debtor's contemplated by form the Asset Purchase Agreement (the "Acquired Assets"). On October _____, 2014, the Bankruptcy Court approved the Bidding Procedures. On December 16, 2014, the Debtor intends to seek approval of, among other things, the sale of the Acquired Assets, including the assumption and assignment of certain executory contracts and unexpired leases. To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH THE DEBTOR AS SET FORTH ON EXHIBIT A ATTACHED HERETO.[2]**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

[2] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is not an admission by the Debtor that such contract or lease is executory or unexpired.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bidding Procedures, the Debtor **may** assume and assign to the Prevailing Bidder the executory contract(s) or unexpired lease(s) listed on Exhibit A attached hereto (each, an "Scheduled Contract") to which you are a counterparty.  The Debtor has conducted a review of its books and records and has determined that the cure amount for unpaid monetary obligations under such Scheduled Contract is as set forth on Exhibit A attached hereto (the "Cure Amount").  **If you disagree with the proposed Cure Amount, you must file an objection with the Bankruptcy Court no later than 4:00 p.m. (prevailing Eastern Time) on December 9, 2014, (the "Objection Deadline") and serve such objection on (a) the Debtor, Adams Street Lofts, LLC, 420 North Adams, Street, Attn: Jonathan Leoni, Manager; (b) counsel for the Debtor, Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL  32301, Attn: Brian G. Rich, Esq.; Tel. (850) 561-3010; (c) counsel to the Committee, if any; (d) counsel to Centennial Bank, Clark Partington Hart Larry Bond & Stackhouse, 125 West Romana Street, Suite 800, Pensacola, FL 32502, Attn: William E. Bond, Jr., Esq.; and (e) the Office of the United States Trustee, 110 East Park Avenue, Suite 128, Tallahassee, FL 32301, Attn: Jason H. Egan, Esq., so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on December 9, 2014.**

PLEASE TAKE FURTHER NOTICE that the Debtor proposes that if no objection to the Cure Amount(s), (i) you will be deemed to have stipulated that the Cure Amount(s) as determined by the Debtors is correct, and (ii) you shall be forever barred, estopped and enjoined from asserting any additional cure amount under the Scheduled Contract(s).

PLEASE TAKE FURTHER NOTICE that any counterparty to a Scheduled Contract shall have the right to object to the Prevailing Bidder's ability to perform on or before the Sale Approval Hearing scheduled for **December 16, 2014 at 1:30 p.m. (prevailing Eastern Time)**.

2

To the extent such counterparty does not object in accordance herewith, the Bankruptcy Court may enter an order forever barring such counterparty to a Scheduled Contract from objecting to the adequate assurance of the Prevailing Bidder's ability to perform.

**PLEASE TAKE FURTHER NOTICE** that with respect to any Scheduled Contract assumed and assigned to the Prevailing Bidder, all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after Bankruptcy Court approval of the sale of the Acquired Assets to the Prevailing Bidder or on such other terms as the parties to each such Scheduled Contract may otherwise agree without any further notice to or action, order or approval of the Bankruptcy Court.  In addition, the assumption of each such Scheduled Contract may be conditioned upon the disposition of all issues with respect to such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, with respect to any Scheduled Contract, in the event of a dispute regarding: (a) the amount of any Cure Amount; (b) the ability of the Prevailing Bidder  to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as reasonably practicable following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtor, with the consent of the Prevailing Bidder, may settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder without any further notice to or action, order or approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT** notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection or termination of the Scheduled Contracts.  Moreover, the Debtor explicitly reserves its rights, in its sole discretion, to reject or assume each Scheduled Contract pursuant to section 365(a) of the Bankruptcy Code and

nothing herein (a) alters in any way the prepetition nature of the Scheduled Contracts or the validity, priority or amount of any claims of a counterparty to an Scheduled Contract against the Debtor that may arise under such Scheduled Contract; (b) creates a postpetition contract or agreement or (c) elevates to administrative expense priority any claims of an counterparty to an Scheduled Contract against the Debtor that may arise under such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE THAT** this Notice is subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order, the Asset Purchase Agreement and the Bidding Procedures, which shall control in the event of any conflict and the Debtor encourage parties in interest to review such documents in their entirety.  Copies of the Motion, the Asset Purchase Agreement, the Bidding Procedures, and/or the Bidding Procedures Order may be obtained by request in writing, by telephone, or via email from counsel to the Debtor: Berger Singerman LLP, 125 South Gadsden Street, Suite 300, Tallahassee, FL  32301, Attn: Brian G. Rich, Esq.; Tel. (850) 561-3010; email at brich@bergersingerman.com.  In addition, copies of the aforementioned pleadings may be found on the Pacer website, http://ecf.flnb.uscourts.gov.

Dated: October  __, 2014

Respectfully submitted,

BERGER SINGERMAN LLP
Attorneys for Debtor
125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013

By:   _/s/ Brian G. Rich_____
     Brian G. Rich
     Florida Bar No. 038229
     _brich@bergersingerman.com_

4

EXHIBIT A

| [Counterparty Name] | [Contract/Lease] | Cure Amount |
| --- | --- | --- |

# EXHIBIT 4 to the Bidding Procedures Order
**(Assumption Notice)**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

IN RE:                                    Case No. 14-40483

ADAMS STREET LOFTS, LLC                   Chapter 11 Case

            Debtor.

_____/

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACT OR UNEXPIRED LEASE

**PLEASE TAKE NOTICE THAT**:

1.        A hearing (the "Sale Approval Hearing")[7] was held at 1:30 p.m. on December 16, 2014 before the Honorable Karen K. Specie, United States Bankruptcy Judge, in the Bankruptcy Court, 2nd Floor Courtroom, U.S. Bankruptcy Court, 110 East Park Avenue, Tallahassee, Florida. At the Sale Approval Hearing, the Bankruptcy Court entered an order (the "Sale Order") (a) approving the sale of the Acquired Assets to _____ (the "Purchaser") in accordance with the Asset Purchase Agreement, and (b) authorizing, among other things, the Debtor, pursuant to the terms of the Asset Purchase Agreement, to assume and assign certain executory contracts and unexpired leases to the Purchaser.

---

[7] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

2.      The Purchaser has elected to take assignment of the executory contracts and unexpired leases as set forth on <u>Exhibit A</u> hereto.

Dated: _____ __, 2014               Respectfully submitted,

BERGER SINGERMAN LLP
Attorneys for Debtor
125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013

By:  <u> /s/ Brian G. Rich          </u>
           Brian G. Rich
           Florida Bar No. 038229
           *brich@bergersingerman.com*

**EXHIBIT A**

[Counterparty Name/Address]    [Contract/Lease]                Cure Amount